# EXHIBIT 1

6TH JUDICIAL DISTRICT
LUNA COUNTY NM
FILED IN MY OFFICE
8/27/2026 8:40 AM
MARGARITA GOMEZ
DISTRICT COURT CLERK
Liberty Gigante

**STATE OF NEW MEXICO**
**COUNTY OF LUNA**
**SIXTH JUDICIAL DISTRICT COURT**

**ELIZABETH ANDERSON, P.E.**, New Mexico State Engineer,

Plaintiff,

**v.**
**UNITED STATES OF AMERICA**,

Defendant.

**No.** D-619-CV-2026-00332
Water Region 2

**BARNARD CONSTRUCTION COMPANY, INC.**,

Defendant.

**WYATT DRILLING ARIZONA, LLC;** and **VINCENT WYATT**, aka **VINNIE WYATT**, **DBA: H.E. BEEMAN WELL DRILLING**, **BEEMAN DRILLING CO.**, **BEEMAN DRILLING**, **BEEMAN WELL DRILLING**, **WYATT DRILLING**, and **WYATT DRILLING, INC.**,

Defendant.

**CASCADE DRILLING, LP**; and **ANDREW WHITSELL, DBA: CASCADE ENVIRONMENTAL, LLC, CASCADE ENVIRONMENTAL, CASCADE DRILLING,**

Defendant.

**COMPLAINT TO ENJOIN THE ILLEGAL DIVERSION AND USE OF WATER AND FOR PAYBACK OF ILLEGALLY APPROPRIATED WATER**

Elizabeth Anderson, the State Engineer of New Mexico ("The State Engineer"), by and through undersigned counsel, files this Complaint to Enjoin the Illegal Diversion and Use of Water and for Payback of Illegally Appropriated Water against Defendants United States of America,

Barnard Construction Company, Inc. ("Barnard"), Wyatt Drilling Arizona, LLC ("Wyatt Drilling"), Vincent Wyatt, Cascade Drilling, LP ("Cascade"), and Andrew Whitsell. In support thereof, the State Engineer states as follows:

## INTRODUCTION

1. The groundwater resources of New Mexico are finite, and the livelihoods of New Mexicans depend upon their continued access to clean water.

2. Citizens rely on the New Mexico's groundwater supplies for agriculture, ranching, domestic use, and other activities essential to human life and the continued economic vitality of the State. Thus, careful management of these underground supplies is essential to the State's and its residents' economic and personal well-being. In Hidalgo and Luna Counties, groundwater accounts for 88% and 99% of all water use, respectively.[1]

3. For almost a hundred years, groundwater in New Mexico has been managed and overseen by the New Mexico Office of the State Engineer ("OSE") to ensure that New Mexicans have clearly delineated rights and predictable access to water for domestic use, irrigation, farming, manufacturing, and other uses. *See* NMSA 1978, §§ 72-1-1 to 72-20-103 ("New Mexico Water Code"); *Lion's Gate Water v. D'Antonio*, 2009-NMSC-057, ¶ 24, 147 N.M. 523 (describing the purpose of the State Engineer's powers as "to employ his or her expertise in hydrology and to manage . . . applications through an exclusive and comprehensive administrative process that maximizes resources through its efficiency, while seeking to protect the rights and interests of water rights applicants").

4. The OSE administers a comprehensive regulatory framework pursuant to which groundwater is appropriated through a permitting process administered by the agency.

---

[1] Valdez, Julie, et al., New Mexico Water Use by Categories 2020, New Mexico Office of the State Engineer Technical Report 56, *available at* ose.nm.gov/WUC/wuc_waterUseData.php (last visited August 21, 2026).

5. It is illegal to drill a well and appropriate water without first applying for and being granted a permit from OSE, and permittees must abide by the Water Code, associated regulations, and the terms of their permit. *See, e.g.*, NMSA 1978, § 72-5-39 (1965) ("No person shall divert water or apply water to land without having a valid water right to do so, or apply it to purposes for which no valid water right exists."); *id.* § 72-12-3(A) (requiring a permit prior to appropriation of groundwater); *id.* § 72-12-15 ("No person shall produce water from an underground source through any well drilled in violation of this act.").

6. From the earliest days of the settlement of the American West, it has been a longstanding principle that the appropriation and use of water is controlled by the states, and the federal government must abide by state law in its diversion and use of this limited natural resource. *See, e.g.*, *California Oregon Power Co. v. Beaver Portland Cement Co.*, 295 U.S. 142, 163–64 (1935) (describing waters as being "subject to the plenary control of the designated states"); *California v. United States*, 438 U.S. 645, 662 (1978) (similar).

7. In contravention of this established legal obligation, and in reckless disregard of existing water rights holders, the United States Customs and Border Protection ("CBP") and private well drillers operating pursuant to contracts with the CBP have recently drilled numerous wells in OSE-declared underground water basins along the United States-Mexico international boundary, without going through the OSE's mandatory permitting process.

8. In addition, CBP and its contractors have evaded the State's metering and plugging requirements, undermining OSE's ability to regulate the shared water resources in the region and creating the potential for serious aquifer contamination which puts human health at risk.

9. Absent the oversight provided for by OSE's permitting process, CBP and its contractors' unauthorized well drilling and illegal depletion of limited groundwater resources

presents serious risks to existing water rights holders in the State of New Mexico, to New Mexico's interstate compact obligations, and to the health and sustainability of New Mexico's aquifers. Indeed, OSE has received numerous complaints from current water rights holders in the region who are concerned that their water rights will be impaired by CBP's unpermitted wells.

10. Rather than utilizing available legal mechanisms to obtain water for construction, CBP and its contractors have disregarded New Mexico's Water Code and OSE's role in protecting this resource. OSE therefore seeks injunctive relief and repayment of illegally diverted water to prevent further damage to the state's already constrained water supply.

**JURISDICTION, VENUE, AND PARTIES**

11. Plaintiff Elizabeth Anderson, in her official capacity as the New Mexico State Engineer, "has general supervision of waters of the state and of the measurement, appropriation, [and] distribution thereof," NMSA 1978, § 72-2-1 (1907), and specific "supervision of the apportionment of water in this state according to licenses issued by him and his predecessors and the adjudications of the courts," *id.* § 72-2-9 (1907).

12. The State Engineer is authorized to file actions in state district court to enjoin illegal appropriations of groundwater and unauthorized well drilling activity. *Id.* § 72-12-15.

13. United States Customs and Border Protection is a subdivision of the Department of Homeland Security which is an executive agency of the United States Government.

14. The United States has waived sovereign immunity for suits related to water rights administration. The 1952 McCarran Amendment explicitly waives sovereign immunity and gives consent to sue "(1) for the adjudication of rights to the use of water of a river system or other source, ***or*** (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by

purchase, by exchange, or otherwise. . . ." 43 U.S.C. § 666(a) (emphasis added). *See also discussion infra* ¶¶ 31-41.

15. "In the administration of and the adjudication of water rights under State laws the State courts are vested with the jurisdiction necessary for the proper and efficient disposition thereof, and by reason of the interlocking of adjudicated rights on any stream system, any order or action affecting one right affects all such rights." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 810–11 (1976) (quoting S. Rep. No.755, 82d Cong., 1st Sess., 4-5 (1951)).

16. CBP is currently constructing a border barrier between the United States and Mexico on the Roosevelt Reservation, a federal reservation of lands consisting of a 60-foot strip parallel to the international boundary between the United States and Mexico.

17. This construction stretches across 179 miles of land in Luna, Hidalgo, and Dona Ana Counties within the state of New Mexico. *Project Update: Secondary Barrier System Construction – Dona Ana, Luna and Hidalgo Counties, New Mexico – July 2026*, U.S. Customs and Border Protection, https://www.cbp.gov/document/environmental-assessments/project-update-secondary-barrier-system-construction-do-ana-luna.

18. To construct the border wall, CBP has employed various contractors who act at the direction of CBP. With regard to the drilling of wells and appropriation and use of water in New Mexico, CBP has directed its contractors to proceed without following state law surrounding licensing and permitting for water appropriation and use, including the drilling of new water wells.

19. This Court has personal jurisdiction over the CBP because it has field offices in multiple cities within the State, such as Deming, Las Cruces, Alamogordo, Truth or Consequences,

and Albuquerque, and operates ports of entry in Santa Teresa, Columbus, and Antelope Wells, New Mexico

20. Defendant Barnard Construction Co. ("Barnard") is a corporate entity based in Bozeman, MT that provides construction engineering services. Barnard has been engaged in border wall construction in New Mexico pursuant to a federal contract award, including at all times relevant to the instant action.

21. As part of its federal contract and/or instructions from CBP, Barnard has been engaged in and has overseen the drilling of wells and appropriation and use of water without completing the mandatory licensing and permitting procedures of the State.

22. Defendant Wyatt Drilling Arizona, LLC ("Wyatt Drilling") is a corporate entity based in Wilcox, AZ that provides water well drilling, utility system construction, and heavy engineering support services. Wyatt Drilling has been engaged in border wall construction in New Mexico pursuant to a subcontract with Defendant Barnard, including at all times relevant to the instant action.

23. Defendant Vincent Wyatt is the licensed driller on file for Wyatt Drilling in the State of New Mexico.

24. Upon information and belief, and as further set forth below, Defendants Vincent Wyatt and Wyatt Drilling have drilled numerous wells at the direction of CBP and/or Barnard for the construction of the border wall, including wells within Luna County.

25. Defendant Cascade Drilling LP ("Cascade Drilling") is a corporate entity based in Peoria, AZ that provides services for environmental, mining and construction projects, including major drilling. Cascade Drilling has been engaged in border wall construction in New Mexico

pursuant to a subcontract with Defendant Barnard, including at all times relevant to the instant action.

26. Defendant Andrew Whitsell is the licensed driller on file for Cascade in the State of New Mexico.

27. Upon information and belief, and as further set forth below, Defendants Andrew Whitsell and Cascade have drilled numerous wells at the direction of CBP and/or Barnard for the construction of the border wall, including wells within Luna County.

28. As further set forth below, a substantial part of the Defendants' actions giving rise to this claim occurred in Luna County, New Mexico.

29. This Court has personal jurisdiction over Defendants Barnard, Wyatt Drilling, and Cascade Drilling (collectively, "Corporate Defendants") because each of these defendants conducts business in the State of New Mexico for purposes of NMSA 1978, Section 38-1-16 and has sufficient minimum contacts with the State to satisfy constitutional due process requirements.

30. Multiple wells drilled by or at the direction of CBP and the Corporate Defendants (collectively, "Defendants") without going through the OSE licensing and permitting process and that are at issue in this action are located in Luna County. Venue for this action therefore lies in Luna County pursuant to NMSA 1978, Section 38-3-1 (1988).

## THE MCCARRAN AMENDMENT ALLOWS NEW MEXICO TO SUE TO ENFORCE THE ADMINISTRATION OF WATER RIGHTS IN NEW MEXICO

31. The longstanding policy of federal deference to state water law in the American West is embodied in the McCarran Amendment. Enacted in 1952, the McCarran Amendment sought to integrate federal water rights into state systems of adjudication and administration.

32. The McCarran Amendment "has . . . often been relied upon as evidence of congressional recognition of the primacy of the western states' interests in regulating and

administering water rights." *United States v. City & Cnty. of Denver, By & Through Bd. of Water Comm'rs*, 656 P.2d 1, 9 (Colo. 1982).

33. Indeed, the Senate Report on the McCarran Amendment states:

> In the arid Western States, for more than 80 years, the law has been that the water above and beneath the surface of the ground belongs to the public, and the right to the use thereof is to be acquired from the State in which it is found, which State is vested with the primary control thereof.... Since it is clear that the States have the control of water within their boundaries, it is essential that each and every owner along a given water course, including the United States, must be amenable to the law of the State, if there is to be a proper administration of the water law as it has developed over the years.

*Id.* (quoting S.Rep. No. 755, 82d Cong., 1st Sess. 3, 6 (1951)). Thus, "Congress recognized that the western states have a legitimate interest in and responsibility for the allocation of water resources within their borders, including the determination and adjudication of the water rights claimed by the United States." *Id.*

34. To accomplish this purpose, the McCarran Amendment provides that:

> Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) ***for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit.***

43 U.S.C. § 666(a) (emphasis added). In other words, the McCarran Amendment waives the federal government's sovereign immunity not only as to joinder in a suit to ***adjudicate*** water rights, but also litigation regarding the ***administration*** of such water rights. *Id.* § 666(a)(2).

35. The McCarran Amendment further provides that, when the United States is party to an action covered by its provisions, it "shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of

its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction" *Id.* at § 666(a).

36. The McCarren Amendment applies in the instant action primarily because the federal government has directed and required Corporate Defendants to engage in activities covered by the administration prong and because this suit seeks to administer the "rights to use the water of a river system or other source." *Id.*

37. Defendants have drilled wells and utilized the water produced from them for border wall construction. Such conduct establishes that the federal government "is in the process of acquiring water rights…" 43 U.S.C. § 666(a). Drilling wells and utilizing the resulting water within a declared underground basin constitutes an "appropriation" for purposes of § 666(a) and requires a permit under state law. *See, e.g., Hanson v. Turney*, 2004-NMCA-069, ¶ 2, 136 N.M. 1, 2 ("Because the Estancia Basin is a declared basin, Plaintiff, who wished to appropriate water from this basin, had to apply for a permit to appropriate water."); *State Engineer v. Diamond K Bar Ranch, LLC*, 2016-NMSC-036, ¶ 16, 4 385 P.3d 626; NMSA 1978, § 72-5-39 (1965) ("No person shall divert water or apply water to land without having a valid water right to do so, or apply it to purposes for which no valid water right exists.").

38. The State Engineer's ability to approve or deny applications for new appropriations of groundwater, as well as the State Engineer's ability to regulate the drilling and use of these wells pursuant to state law and the permit terms, are fundamental aspects of the administration of groundwater rights. *See, e.g., Stokes v. Morgan*, 1984-NMSC-032, ¶ 9, 101 N.M. 195, 199 ("The State Engineer has developed a system of administration for the Basin which is intended to provide a reasonable measure of protection to existing water rights without unduly restricting the full economic utilization of existing water supplies in the Basin . . . Decisions as to whether to allow

additional appropriations are based on the life expectancy of the administrative block and immediately surrounding blocks.”).

39. The McCarren Amendment also applies here because Defendants’ conduct involves the administration of rights that were established in a comprehensive basin-wide adjudication involving the United States and the protection of such rights from unauthorized diversions, known as the Mimbres Adjudication.

40. Multiple unpermitted wells at issue in this suit are located within the Mimbres Underground Water Basin. The Mimbres Basin has been fully adjudicated since 1993 when a final order was entered. **Exhibit 1**, *Final Decree, Mimbres River Stream System & Mimbres Underground Water Basin*, No. 6326 (N.M. Dist. Ct., Sixth Jud. Dist., Luna Cnty. Jan. 14, 1993).

41. Notably, the United States was a party to the Mimbres adjudication, which included groundwater, and at no time did the United States raise a claim as to water rights associated with the recently-drilled unpermitted wells. *See United States v. New Mexico*, 438 U.S. 696 (1978).

## WELL ESTABLISHED LEGAL PRINCIPLES AND FEDERAL STATUTES ARE CLEAR THAT THE FEDERAL GOVERNMENT IS SUBJECT TO A STATE’S REGULATORY AUTHORITY REGARDING THE APPROPRIATION OF WATER

42. Federal deference to state regulation of the appropriation and use of water has been legislated through the Mining Act of 1866, the 1870 Amendments, and the Desert Land Act of 1877.

43. The Supreme Court of the United States has been clear regarding the combined effects of these various congressional acts. “What we hold is that following the act of 1877, if not before, all nonnavigable waters then a part of the public domain became publici juris, ***subject to the plenary control of the designated states***, including those since created out of the territories named[.]” *California Oregon Power Co.*, 295 U.S., at 163–64 (emphasis added). In other words,

"all nonnavigable waters . . . should be reserved for the use of the public under the laws of the states and territories named." *Id.* at 162.

44. The Mining Act of 1866 provides that "[w]henever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same[.]" *California Oregon Power Co. v. Beaver Portland Cement Co.*, 295 U.S. 142, 154–55 (1935) (quoting the Act of July 26, 1866, c. 262, § 9, 14 Stat. 251, 253).

45. The 1870 Amendments to the Mining Act further provides that "[a]ll patents granted, or preemption or homesteads allowed, shall be subject to any vested and accrued water rights, or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired under or recognized by [Section 9 of the Mining Act of 1866]." *Id.* at 155 (quoting the Act of July 9, 1870, c. 235, § 17, 16 Stat. 217, 218).

46. As the United States Supreme Court has stated: "The effect of these acts is not limited to rights acquired before 1866. They reach into the future as well, and approve and confirm the policy of appropriation for a beneficial use, as recognized by local rules and customs, and the legislation and judicial decisions of the arid land states, as the test and measure of private rights in and to the nonnavigable waters on the public domain." *Id.* at 155; *see also California v. United States*, 438 U.S. 645, 656 (1978) ("Congress intended 'to recognize as valid the customary law with respect to the use of water which had grown up among the occupants of the public land under the peculiar necessities of their condition.'" (quoting *Basey v. Gallagher,* 87 U.S. 670, 684 (1875))).

47. The combined effect of the Mining Act of 1866, the 1870 Amendments, the Desert Land Act of 1877, and the McCarran Amendment has been that, "except where the reserved rights or navigation servitude of the United States are invoked, the State has total authority over its internal waters." *California*, 438 U.S. at 662; *see also United States v. New Mexico*, 438 U.S. 696, 702 (1978) ("Where Congress has expressly addressed the question of whether federal entities must abide by state water law, it has almost invariably deferred to the state law."). This proposition, dating back to the earliest days of the settlement of the West, forms the foundation of western water law.

**THE STATE ENGINEER IS RESPONSIBLE FOR ADMINISTERING WATER RIGHTS IN NEW MEXICO PURSUANT TO THE WATER CODE**

48. The New Mexico Constitution provides that "[t]he public waters of the state are subject to appropriation through beneficial use, which is "the basis, the measure and the limit of the right to the use of water." N.M. Const. art. XVI, §§ 2, 3.

49. The legislature has codified this relationship between state government and public waters as well. "All natural waters flowing in streams and watercourses, whether such be perennial, or torrential, within the limits of the state of New Mexico, belong to the public and are subject to appropriation for beneficial use." NMSA 1978, § 72-1-1 (1907). Likewise, "[t]he water of underground streams, channels, artesian basins, reservoirs or lakes, having reasonably ascertainable boundaries, is declared to belong to the public and is subject to appropriation for beneficial use." *Id.* § 72-12-1.

50. To implement these principles, the Legislature has delegated broad authority to the State Engineer to manage the state's water resources. *See Lion's Gate Water v. D'Antonio*, 2009-NMSC-057, ¶ 24, 147 N.M. 523. Thus, the State Engineer exercises general authority under the

Water Code to authorize and administer new appropriations of surface and ground water. *See* NMSA 1978, § 72-2-1.

51. The State Engineer's duties include "general supervision of [the] waters of the state and of the measurement, appropriation, [and] distribution thereof and such other duties as required." *Id.* This includes issuing licenses and conducting adjudications to apportion water rights in the State. *Id.* § 72-2- 9 (1907).

52. New Mexico's regulatory scheme is based on the doctrine of prior appropriation, which can be described as "first in time, first in right." *Elephant Butte Irr. Dist. v. Regents of New Mexico State Univ.*, 1993-NMCA-009, ¶ 14, 115 N.M. 229, 232, 849 P.2d 372, 375. The Water Code, as administered by the State Engineer, "provide[s] a complete and exclusive means to acquire water rights" in New Mexico, including by requiring individuals seeking to appropriate water to obtain a permit. *Lion's Gate Water*, 2009-NMSC-057, ¶ 24. This comprehensive permitting scheme ensures that the existing water rights of other appropriators are not impaired, *see City of Roswell v. Berry*, 1969-NMSC-033, ¶ 5, 80 N.M. 110, 112, 452 P.2d 179, 181, and has provisions to ensure the conservation of water within the state, *see Aquifer Sci., LLC v. Verhines*, 2023-NMCA-020, ¶ 44, and to protect the public welfare of the state, *see Lion's Gate*, 2009-NMSC-057, ¶ 11.

53. Thus, "[t]he diversion or application of water to lands in New Mexico absent a valid water right or permit is unlawful." *State Engineer v. Diamond K Bar Ranch, LLC*, 2016-NMSC-036, ¶ 16, 4 385 P.3d 626; § 72-5-39 (1965) ("No person shall divert water or apply water to land without having a valid water right to do so, or apply it to purposes for which no valid water right exists.").

54. As relevant here, Section 72-12-3 of the Water Code requires persons seeking a new appropriation of groundwater to first obtain a permit from the State Engineer. To do so, such persons must submit an application with information such as the beneficial use of the water, location of the well, and amount of water applied for. NMSA 1978, § 72-12-3(A). In determining whether to grant a permit, the State Engineer must consider whether the proposed appropriation would "impair existing water rights from the source, is not contrary to conservation of water within the state and is not detrimental to the public welfare of the state." *Id.* § 72-12-3(E).

55. Failure to obtain a permit from the State Engineer prior to commencing the drilling of a well and using groundwater constitutes an illegal diversion. *Id.* § 72-12-15 ("No person shall produce water from an underground source through any well drilled in violation of this act."); *see also Diamond K Bar Ranch*, 2016-NMSC-016, ¶ 16.

56. State Engineer regulations implement the Water Code and further govern well drilling. They require, among other things, annular seals, 19.27.4.30(C) NMAC, and proper plugging of the well after failure or discontinuance pursuant to a plugging plan of operations approved by the State Engineer, 19.27.4.30(C) NMAC. These regulations protect aquifers from contaminants that could enter groundwater through unsealed or unplugged wells.

57. Additionally, water users must comply with the terms of their permit. Permit conditions may include the installation of a totalizing meter, submission of meter readings, the acquisition of offsets, or other conditions. These conditions of approval are designed to further ensure that the exercise of the water right does not impair existing rights, ensure the conservation of water, and assist in the protection of the public welfare.

58. Section 72-12-15 of the Water Code authorizes the State Engineer to file actions in state district court to enjoin illegal appropriations of groundwater and unauthorized well drilling activity as follows:

> The state engineer may apply for and obtain an injunction, in the district court of the county in which any well or land affected is situated, against any person, firm or corporation who shall drill or begin the drilling of a well in violation of the provisions of this act, or who shall cause, allow or permit the drilling of a well by a person other than a licensed well driller upon land owned or controlled by him, or who shall produce water from any well drilled in violation of this act, or who shall apply water from an underground source, as hereinabove defined, to lands having no valid water right for the purpose to which applied. These provisions shall in no way be construed to affect the existing right of a court of equity in the exercise of its general equity powers to grant relief to the state of New Mexico by injunction or otherwise.

## THE FEDERAL GOVERNMENT HAS RECOGNIZED THE STATE'S AUTHORITY TO ADMINISTER WATER RIGHTS THROUGH PAST COMPLIANCE WITH NEW MEXICO WATER LAW AND ADJUDICATION

59. The federal government has historically recognized its legal obligation to abide by western state water law. In the past, the federal government has applied for, and the OSE has issued, permits for border wall construction. *See* **Exhibit 2** (MR-6 2019 Permit Application), **Exhibit 3** (MR-6 2023 Application), **Exhibit 4** (MR-10 Application), **Exhibit 5** (MR-12 Application). As a result, the federal government was permitted to construct and use wells on federal land to obtain water for dust control and other purposes in constructing the border wall at various times from 2019 through 2025. Those wells were constructed to standards necessary to protect groundwater from contamination and waste, and the depletions associated with those wells could be accounted for in administering all groundwater uses in the basin.

60. In addition, numerous water rights holders have filed applications to change the purpose of use of existent rights to allow for commercial sales so that they may supply the border wall project. *See, e.g.*, **Exhibit 6** (PL-00014 Application).

61. As stated previously, *see supra* ¶¶ 40-41, the Mimbres Adjudication is long closed, and the United States was a party to that matter with numerous intensively litigated claims. The extensive participation of the United States in the Mimbres Adjudication also demonstrates that the federal government has long recognized the primacy of state law in the area of water rights.

**DEFENDANTS NOW CONTEND THAT THE FEDERAL GOVERNMENT IS NOT SUBJECT TO STATE LAW GOVERNING WATER APPROPRIATION & USE, DESPITE CLEARLY ESTABLISHED LAW TO THE CONTRARY**

62. Despite OSE's authority to regulate the appropriation, diversion, and use of water, the Defendants recently started drilling numerous wells along the southern border without any corresponding application or permit, in open disregard of OSE's regulatory authority.

63. On March 17, 2026, OSE staff received a call from a rancher and water rights owner in the Hachita Underground Water Basin advising that federal contractors were developing a well near the border wall. OSE staff made in-person contact with the drilling contractor and learned that the contractor had reached a depth of approximately 540 feet and intended to drill to 1000 feet. The well had an 8" casing. The contractor asserted that no permit from the OSE was required because the well was being drilled on federal lands.[2] **Exhibit 7** (March 17, 2026, Field Inspection Report, Jake Vega and Karl E. Frisch).

64. During the March 17, 2026, site visit, the drilling contractor identified himself as Defendant Vincent Wyatt and was doing business as Defendant Wyatt Drilling. *Id.*

65. The drill rig present was marked Beeman Drilling. Wyatt Drilling and Beeman Drilling are the same company. The Arizona Department of Water Resources, United States Department of Transportation, and Better Business Bureau all list Wyatt Drilling and Beeman Drilling as alternative names for the same enterprise. **Exhibits 8, 9, 10** (Wyatt and Beeman Drilling

[2] Approximate location 31° 47' 1.93" N -108° 9' 18.66" W.

documents with AZDWR, DOT, and BBB). In addition, Wyatt Drilling's Facebook page shows photographs of a drill rig labeled Beeman Drilling and lists a website for Beeman Drilling. **Exhibit 11**.

66. During the March 17, 2026, site visit, Defendant Barnard agreed to file an application for an exploratory well permit within 24 hours, and agreed that no water could be diverted from the well without a valid water right. *Id.*

67. The following day, March 18, 2026, Defendant Barnard, the lead contractor for the border wall project, filed an application for permit for an exploratory well and an application under Section 72-12-1.3 for a temporary public works construction permit for the well in question. **Exhibit 12** (Temporary Public Works Construction Application), **Exhibit 13** (Exploratory Well Application).

68. In addition, Defendant Barnard filed for a second temporary public works construction permit for a different well for the border wall project, also in the Hachita Basin. **Exhibit 14** (Temporary Public Works Construction Application).

69. However, on March 24, 2026, Defendant Barnard withdrew all permit applications related to border wall construction, stating that CBP had instructed them to proceed with drilling wells on federal land in the absence of OSE permits. **Exhibit 15** (Email from Jeff Pinto to Jake Vega).

70. On March 24, 2026, CBP Director of Infrastructure Portfolio, Paul Enriquez, sent a letter to OSE District III personnel Jake Vega explaining that CBP is "executing a border barrier system project known as El Paso 2, which involves the construction of approximately 98.3 miles of barrier systems in Luna and Hidalgo Counties, New Mexico." **Exhibit 16** (CBP's March 24, 2026 Letter to Jake Vega).

71. Enriquez further explained that CBP's contractor, Defendant Barnard, had drilled four wells to date and expected to drill additional wells to complete the project. *Id.*

72. In that letter, CBP asserted that the wells at issue "are on federal property. Because they are on federal property, they are immune from state permitting requirements." *Id.*

73. However, this proposition is directly contrary to the New Mexico Constitution, clearly established prior appropriation law, and the Water Code, whereby water rights are based on beneficial use rather than the location of land. *Hydro Res. Corp. v. Gray*, 2007-NMSC-061, ¶ 20, 143 N.M. 142, 148, 173 P.3d 749, 755 ("Our law expressly disavows connecting water rights to land . . . Established water law principles reach the opposite conclusion: water rights are separate from the surrounding land and may be owned separately from the land"); N.M. Const. art. XVI, § 3, ("Beneficial use shall be the basis, the measure and the limit of the right to the use of water.")

74. OSE's General Counsel responded to CBP on March 31, 2026, outlining various legal provisions related to the Western States' rights to regulate water. *See* **Exhibit 17** (March 31, 2026, Letter from Nathaniel Chakeres to CBP).

75. On April 1, 2026, CBP again wrote to the OSE maintaining the position that the federal statutes cited by OSE do not apply and that CBP was not required to obtain any permits to drill wells and/or appropriate water on federal land. *See* **Exhibit 18** (Letter from CBP to Nathaniel Chakeres dated April 1, 2026).

## OSE FIELD VISITS REVEAL MULTIPLE DEFENDANTS DRILLING AND OPERATING UNPERMITTED WELLS

76. Since April, OSE field staff have observed seven illegally drilled wells within the boundaries of the district. **Exhibit 19** (Map of Illegal Wells in OSE District III), all within declared underground water basins (Mimbres, Hachita, and Lower Rio Grande) where a permit is necessary for any new appropriations of water. Some were missing annular seals which are required to

prevent contamination of the surrounding soil and water. Others had seals but no means of determining whether they met state standards or were unable to be verified as having been sealed at all.

77. During these visits, OSE staff also observed unpermitted diversions from a livestock well, switching of meters in violation of permit conditions, well-plugging in the absence of a legally mandated plugging plan, and collapsed boreholes that were either plugged without a plugging plan or left exposed.

***April 2026 OSE Field Checks Revealed Improper Use of and Tampering with Meters on Previously Permitted CBP Wells***

78. On April 28, 2026, OSE staff conducted a field check on a different well with OSE File No. MR-00012 that had been previously permitted to CBP for temporary public works construction purposes on December 12, 2025. *See* **Exhibit 20** (MR-00012 Permit). The conditions of approval for this permit required the installation of a totalizing meter and imposed a diversion limit of three acre-feet per annum (approximately 977,553 gallons). *Id.*

79. The diversion limit is the amount of water that may be appropriated under the permit, and the totalizing meter allows OSE to track the total amount of water diverted throughout the year to ensure that the permittee does not appropriate more than the limit. If a permittee goes over the limit, they are in violation of their permit.

80. During the April 28, 2026, field check, the totalizing meter observed was a Flomec TM Series digital meter with a reading of 115,476 gallons pumped. *See* **Exhibit 21** (MR-00012 Field Inspection Report).

81. On June 18, 2026, OSE staff performed a subsequent field check on the MR-00012 well. At the time of this field check, OSE staff discovered that a different meter had been installed

on the well. *Id.* The new meter was a non-digital McCrometer meter with a reading of 130 gallons pumped. *Id.*

82. On July 16, 2026, OSE staff performed another field check on the MR-00012 well and discovered that the meter had been switched back to the same Flomec TM Series digital model first observed in April, and it had a reading of 360,819 gallons pumped. *Id.*

83. The conditions of approval for well MR-00012 require that OSE be advised of the make, model, serial number, date of installation, and initial reading of the meter prior to diversion of water. **Exhibit 20** at 17-5A.

84. Because the meter was switched, OSE is unable to determine the actual amount of water diverted, and therefore is unable to determine whether CBP has pumped within its permit terms. Switching meters is suggestive of an attempt to disguise overdiversions of a water right.

***Subsequent OSE Field Checks Identified New Unpermitted Drilling by Defendants, Including a Borehole Collapse, in the Mimbres and Hachita Basins***

85. On July 16, 2026, OSE staff observed unpermitted drilling activities within the Roosevelt Reservation, along the border area in Luna County and within the Mimbres Declared Underground Water Basin.[3] **Exhibit 22** (July 16, 2026, Field Inspection Report).

86. The Mimbres Basin was the first underground water basin declared in New Mexico, in 1931, and it has been fully adjudicated since 1993. **Exhibit 23** (Deming-Columbus Administrative Area Guidelines for Review of Water Right Applications); Final Decree, Mimbres River Stream System & Mimbres Underground Water Basin, No. 6326 (N.M. Dist. Ct., Sixth Jud. Dist., Luna Cnty. Jan. 14, 1993). Portions of the Mimbres Basin have been closed since 1945 and continue to be under a Critical Management Area restriction. **Exhibit 24** (Index of State Engineer

[3] Approximate location 31° 47’ 01.61” N, -107° 25’ 03.59” W.

Orders). The longstanding restrictions in the Mimbres Basin are the result of very limited groundwater supplies in the area.

87. OSE staff located two rigs on site, neither of which were operating pursuant to any permit from OSE. **Exhibit 22**. The drillers identified themselves as being employees of Defendant Cascade Drilling and stated that one rig was inoperable due to a borehole collapsing during the drilling process. *Id.*

88. A borehole collapse is considered a failed well drilling attempt and must be properly plugged in accordance with a plugging plan submitted to OSE under 19.27.4.30(C) NMAC. There is a significant risk of contamination if underground wells are not plugged in accordance with all applicable standards and regulations.

89. OSE staff were unable to obtain any additional information regarding plugging plans due to lack of cooperation from personnel on site and extensive construction in the area. **Exhibit 22**.

90. On July 23, 2025, OSE staff returned to the site and observed a Cascade Drilling rig with its mast up in the act of drilling. **Exhibit 25** (July 23, 2026, Field Inspection Report). Staff photographed and observed the drilling activities from a distance. *Id.*

91. On July 21, 2026, OSE staff returned to the site of initial contact with Defendant Wyatt Drilling for a field inspection of the well in the Hachita Basin. **Exhibit 26** (July 21, 2026, Field Inspection Report). Upon inspection, the well was found to be plugged. *Id.* No plugging plan had been submitted to OSE, and it is therefore unknown whether the plugging was accomplished according to applicable regulations.

92. Also on July 21, 2026, WRD staff observed two rigs belonging to Wyatt Drilling at a location where unauthorized drilling activity was taking place within the Mimbres

Underground Water Basin in Luna County.[4] **Exhibit 27** (July 23, 2026, Field Inspection Report). One rig was clearly marked as belonging to Beeman Drilling. This was the same drill rig OSE staff had previously observed being operated by Vincent Wyatt on March 17, 2026. Because of heavy rainfall the previous night, no active drilling was in progress.

93. On July 23, 2026, staff returned to the location and observed and photographed active drilling activities. *Id.*

***Separate OSE Field Checks Uncover More Unpermitted Wells, Some Lacking State-Mandated Annular Seals***

94. On July 22, 2026, OSE staff performed a sweep of the bootheel area of New Mexico to ascertain what well drilling operations were in progress and how many wells had already been drilled without a permit. On that date, OSE staff observed four illegally drilled wells in the Hachita and Playas Underground Water Basins.[5] **Exhibits 28, 29, 30, 31** (July 21, 2026, and July 22, 2026, Field Inspection Reports). Two wells were located approximately 50 feet from the border wall, one well was located approximately 500 feet from the border wall, and an additional well was located approximately 3.25 miles from the border wall. *Id.*

95. Of the four wells observed, two did not have an annular seal, which is required under 19.27.4.30(A) NMAC. *Id.*

96. In the absence of an annular seal, contaminants such as sewage, septic discharge, oil, or other unsanitary and contaminated surface water can infiltrate potable aquifers. During monsoon season, large amounts of surface water can wash across significant distances over any exposed wellheads. This surface water can carry contaminants which pose immediate and serious

---

[4] Approximate location 31° 47' 01.87" N, -107° 55' 12.28" W.

[5] Approximate locations 31° 32' 41" N -108° 12' 36" W, 31° 37' 14"N -108° 15' 50"W, 31° 37' 8" N -108° 12' 31" W, and 31° 47' 2"N -108° 3' 20"W.

risks to the health of humans and livestock. It is therefore imperative that exposed wellheads be properly plugged prior to monsoon rains so as to avoid hazardous impacts on those who rely on these aquifers for drinking water, livestock watering, and farming, especially as we are currently in the midst of monsoon season which runs from June 15 to September 30. *2026 Monsoon Drought Status Update for the Southwest U.S.*, National Integrated Drought Information System, https://www.drought.gov/drought-status-updates/2026-monsoon-drought-status-update-southwest-us-2026-06-18.

97. Complaints from ranchers in the area of these drilling activities have also raised concerns regarding the impact of unauthorized drilling on Corrizalillo Spring. **Exhibit 32** (Email from Russell Johnston to OSE). Ranchers have stated that this historic spring has documented use dating back at least to the 1800s and is a longstanding and important water source in the area. *Id.* Because springs are highly dependent on underground pressure and fracture systems, there is serious concern among area residents that changes in groundwater conditions could significantly reduce or eliminate flow to the spring. *Id.* Border wall construction has permanently reduced pressure at springs in other areas of heavy pumping and construction. Sarah Henry, *Border Wall Construction Threatens Groundwater, Fragile Springs in San Rafael Valley*, Arizona Republic, November 20, 2025.

***OSE Field Staff Also Observed Unpermitted Drilling in the Rio Grande Underground Water Basin and Received a Map showing Defendants' Plans for Continued Unpermitted Water Appropriation and Use***

98. In addition, on July 24, 2026, OSE District IV staff conducted an investigation and observed unpermitted drilling activity at a location in Dona Ana County within the Lower Rio Grande Underground Water Basin. **Exhibit 33** (July 24, 2026, Field Inspection Report).

99. OSE staff had previously received a map of locations at which Defendant Barnard planned to drill wells to supply construction for the section of the border wall being built between Columbus, NM and Sunland Park, NM. *Id.* The map was produced by Defendant Barnard as the lead contractor for the project. The Barnard map does not include the locations of wells drilled in the areas between the Arizona state line and Columbus, NM.

100. The goal of the July 24, 2026, investigation was to examine the areas on the Barnard map where OSE was aware that CBP planned to drill additional wells and ascertain whether drilling had commenced in these areas. *Id.*

101. OSE staff observed Defendant Cascade Drilling engaged in active drilling activities at a location designated on the Barnard map as "BP #3."[6] *Id.*

102. On information and belief, this well is designated as such because Defendants CBP and Barnard plan to utilize the well for a cement batch plant for border wall construction.

103. OSE staff observed the clearing of native vegetation from approximately 10-15 acres of land north of the drill site, which appeared to be preparation for the construction of the cement batch plant. *Id.*

104. The BP #3 well is located within the Mesilla Valley Administrative Area ("MVAA"). *Id.*; **Exhibit 34** (MVAA Guidelines).

[6] Approximate location 31°47'2.11"N, 106°57'30.80"W.

105. The MVAA Guidelines require offsets for all groundwater appropriations which impact surface waters beyond acceptable depletions. *Id.*

106. Surface water impacts on the Rio Grande risk imperiling New Mexico's deliveries of water to Texas under the Rio Grande Compact. On May 26, 2026, the Supreme Court of the United States approved a settlement ending 13 years of litigation, between, *inter alia*, New Mexico, Texas, and the United States regarding New Mexico's groundwater pumping and alleged violations of the Rio Grande Compact. *U.S. Supreme Court Approves Rio Grande Compact Settlement – Agreement Ends 13-Year Interstate Dispute*, Office of the Governor, https://www.governor.state.nm.us/2026/05/28/u-s-supreme-court-approves-rio-grande-compact-settlement-agreement-ends-13-year-interstate-dispute/, (May 28, 2026).

107. Unpermitted well drilling in the MVAA could affect New Mexico's ability to deliver water to Texas under the States' Compact Decree. The Compact Decree requires New Mexico, beginning in 2027, to meet water delivery obligations at the El Paso state line. Compact Decree § II.B, *available* at https://www.ose.nm.gov/ISC/texas_v_nm_settlement.php. In addition, the United States has agreed to a Groundwater Settlement Agreement with New Mexico requiring New Mexico to maintain aquifer levels at specified levels, and ensure that surface water deliveries to Texas are not lost to excessive groundwater pumping. Groundwater Settlement Agreement § IV, *available at* https://www.ose.nm.gov/ISC/texas_v_nm_settlement.php. The proposed pumping of groundwater in the MVAA risks immediately imperiling these recently executed settlement agreements, one of which is signed by the United States.

108. The Barnard map illustrates plans to drill numerous additional wells within the MVAA. These unpermitted wells may have additional impacts on surface water bodies in the area, including the Rio Grande.

***CBP Publicly Claims to Have Ceased Illegal Well Drilling, but Makes No Commitments to OSE***

109. On August 6, 2026, a CBP spokesperson stated in the media that CBP had instructed contractors to cease drilling further wells for border wall construction. Mikella Schuettler, *Contractors Building Border Wall Ordered to Stop Drilling Wells in Drought-Stricken New Mexico*, Associated Press, August 6, 2026, https://apnews.com/article/border-wall-wells-water-ranch-new-mexico-5ad8fcbcbef112381a6cc56ba3566002. However, the CBP spokesperson did not comment on whether the agency would continue to pump the illegally drilled wells already in existence. Nor did the CBP spokesperson express any intent for CBP to properly plug wells and boreholes, repay illegally diverted water, or source water for future construction needs from lawful sources.

110. Furthermore, despite ongoing communication between OSE and the federal government, OSE has not received any communication from CBP regarding even the limited concessions made in the media. As of the date of this filing, CBP has made no commitments whatsoever to OSE regarding the cessation of illegal drilling, plugging of illegally drilled wells and boreholes, repayment of illegally diverted water, or sourcing of all water needed for future construction from lawful sources.

***Drillers Cap but Do Not Properly Plug Certain Wells and Illegal Diversions Continue***

111. On August 4, 2026, OSE sent administrative Notices of Violation to Wyatt Drilling and Cascade under NMSA 1978, Section 72-2-18 regarding the unauthorized drilling of certain wells associated with each driller. Wyatt Drilling received a Notice of Violation regarding one active well and one improperly plugged well, and Cascade received a Notice of Violation regarding two active wells. The Notices of Violation stated that the wells must be properly plugged in

accordance with a State Engineer approved plugging plan within 30 days, or that administrative penalties including fines and license revocation may follow.

112. On August 20, 2026, OSE District III staff conducted a field check of all known illegally drilled wells within the district. OSE staff observed that the three active wells listed in the Notices of Violation were capped with welded plates. The pumps, equipment, fill stations, and generators had been removed. However, OSE regulations require that a discontinued well be plugged in accordance with 19.27.4.30(C) NMAC. These regulations require that the entire well be filled from the bottom upwards to ground surface with cement or other sealant, and that a plugging plan first be approved by the State Engineer to ensure that the plugging method will adequately protect the aquifer from contamination. *Id.* A surface layer cap in the absence of an approved plugging plan does not adequately protect the aquifer and may allow for the infiltration of contaminants. Moreover, a welded cap may easily be removed and the wells can quickly be re-equipped and operational.

113. The remaining illegally drilled wells within District III remained operational. OSE observed three unauthorized wells in the bootheel area which were equipped and appeared to still be in use. One of the wells was in operation and water trucks were actively filling at the site. In addition, OSE staff observed continued unauthorized diversions from the PL-1167-POD1 livestock well for construction purposes. PL-1167-POD1 was actively pumping and numerous cement trucks were on site.

114. CBP therefore appears to have capped but not properly plugged only the wells on which Notices of Violation were issued to well drillers, while continuing to illegally appropriate from other sources.

## **Count I**

**UNAUTHORIZED DIVERSION OF GROUNDWATER**
(NMSA 1978, § 72-12-3, NMSA 1978, § 72-12-15)

115. The State Engineer incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

116. The Water Code requires all new appropriations of groundwater to be permitted by OSE. NMSA 1978, § 72-12-3(A). It is illegal to produce water from a well that is not permitted or otherwise is not drilled in compliance with the Water Code. NMSA 1978, § 72-12-15.

117. NMSA 1978, Section 72-12-15 states that "No person shall produce water from an underground source through any well drilled in violation of this act," and that the State Engineer has the right to obtain equitable relief "by injunction or otherwise."

118. Defendant United States has appropriated underground waters without a permit, in violation of the Water Code, NMSA 1978, Sections 72-12-3(A), 72-12-15.

119. Defendants Barnard, Wyatt Drilling, Wyatt, Cascade, and Whitsell have participated and assisted in this violation of the Water Code at the direction of Defendant United States by drilling unauthorized wells and utilizing the water produced from these wells in construction.

## **Count II**

**IMPROPER WELL CONSTRUCTION AND DRILLING**
(19.27.4.30 NMAC, 19.27.4.21 NMAC)

120. The State Engineer incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

121. 19.27.4.30(A) NMAC requires that wells be completed with an annular seal surrounding the outermost casing to prevent the entry of contaminants into the borehole.

122. 19.27.4.21(D) NMAC states that it is a violation to drill a well in any declared underground water basin without a permit.

123. Defendants Wyatt Drilling, Wyatt, Cascade, and Whitsell, at the direction of Defendant United States, have improperly drilled wells in declared underground basins without a permit.

124. Multiple unpermitted wells drilled at the direction of Defendant United States are improperly constructed and lack an annular seal.

**Count III**

**UNAUTHORIZED PLUGGING**
(19.27.4.30 NMAC)

125. The State Engineer incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

126. 19.27.4.30(C) NMAC states that a well-plugging plan of operations must be approved by the State Engineer prior to plugging a well.

127. 19.27.4.30(C) NMAC states that a failed drilling attempt shall be plugged.

128. Defendants Wyatt Drilling and Wyatt, at the direction of Defendant United States, have improperly plugged a well borehole without submitting any plugging plan to the State Engineer.

129. Defendants Cascade and Whitsell, at the direction of Defendant United States, have either improperly plugged a collapsed borehole in the absence of a plugging plan or have left the results of this failed attempt unplugged and exposed.

## Count IV

**TAMPERING WITH TOTALIZING METER**
(Permit Terms, NMSA 1978, § 72-12-1.3)

130. The State Engineer incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

131. "[T]he State Engineer has the power to develop regulations and impose conditions on groundwater applications . . . in order to prevent impairment of existing rights." *Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 14, 141 N.M. 21, 26.

132. NMSA 1978, § 72-12-1.3 allows for temporary permits for the use of underground waters for the construction of public works in an amount not to exceed three acre feet per annum.

133. The conditions of approval of OSE File No. MR-00012 require that OSE be advised of the make, model, serial number, date of installation, and initial reading of the meter prior to appropriation of water.

134. In contravention of this permit condition, Defendant Barnard, at the direction of Defendant United States, has replaced meters on well MR-00012 without notice to the State Engineer while continuing to appropriate water.

**PRAYER FOR RELIEF**

**WHEREFORE**, the State Engineer respectfully requests the following relief:

135. An Order of the Court enjoining Defendants from drilling any additional wells in the absence of a permit or diverting any water in the absence of a valid water right unless and until Defendants obtain a permit from the Office of the State Engineer to do so;

136. An Order of the Court directing Defendants to immediately submit proper plugging plans for all boreholes and proper remediation plans for all improperly constructed wells;

137. An order of the Court directing Defendants to comply with conditions of approval on all existent permits;

138. An Order of the Court directing Defendants to account for all illegally diverted water;

139. An Order of the Court ordering Defendants to effectuate double repayment of all illegally diverted water; and

140. Any other appropriate relief deemed proper by the Court.

Respectfully submitted,

Elizabeth Anderson, P.E.
NEW MEXICO STATE ENGINEER

*/s/Marshall J. Ray*
Marshall J. Ray
Special Assistant Attorney General
514 Marble Ave NW
Albuquerque, NM 87102
505-312-7598
mray@nmraylaw.com

*/s/ Gordon Lazar*
Gordon Lazar
A Nathaniel Chakeres
Special Assistant Attorneys General
Office of the State Engineer
P.O. Box 25102
Santa Fe, NM 87504-5102
2905 Rodeo Park Drive East, Building 5
Santa Fe, New Mexico 87505
505-469-9667
505-231-4459
Gordon.Lazar@ose.nm.gov
Nathaniel.Chakeres@ose.nm.gov

6TH JUDICIAL DISTRICT
LUNA COUNTY NM
FILED IN MY OFFICE
8/27/2026 8:40 AM
MARGARITA GOMEZ
DISTRICT COURT CLERK
Liberty Gigante

**STATE OF NEW MEXICO**
**COUNTY OF LUNA**
**SIXTH JUDICIAL DISTRICT COURT**

**ELIZABETH ANDERSON, P.E.**, New Mexico State Engineer,

Plaintiff,

**v.**

No. D-619-CV-2026-00332
Water Region 2

**UNITED STATES OF AMERICA,**

Defendant.

**BARNARD CONSTRUCTION COMPANY, INC.,**

Defendant.

**WYATT DRILLING ARIZONA, LLC;** and **VINCENT WYATT**, aka **VINNIE WYATT**, **DBA: H.E. BEEMAN WELL DRILLING, BEEMAN DRILLING CO., BEEMAN DRILLING, BEEMAN WELL DRILLING, WYATT DRILLING**, and **WYATT DRILLING, INC.,**

Defendant.

**CASCADE DRILLING, LP**; and **ANDREW WHITSELL, DBA: CASCADE ENVIRONMENTAL, LLC, CASCADE ENVIRONMENTAL, CASCADE DRILLING,**

Defendant.

**<u>EXHIBITS – 1 THROUGH 3</u>**

**<u>PART 1 OF 5</u>**

**COMPLAINT TO ENJOIN THE ILLEGAL DIVERSION AND USE OF WATER AND FOR PAYBACK OF ILLEGALLY APPROPRIATED WATER**

IN THE DISTRICT COURT OF THE SIXTH JUDICIAL DISTRICT
LUNA COUNTY, NEW MEXICO

'93 JAN 14
Kay Hull

MIMBRES VALLEY IRRIGATION CO.,
plaintiff,

-vs.-

No. 6326

TONY SALOPEK, et al.,
defendants,

STATE OF NEW MEXICO, ex rel.
S. E. REYNOLDS, State Engineer,
plaintiff-in-intervention.

'93 MAY 26 PM 2 09
STATE ENGINEER OFFICE
DEMING NEW MEXICO

# FINAL DECREE

## MIMBRES RIVER STREAM SYSTEM AND MIMBRES UNDERGROUND WATER BASIN

THIS MATTER having come on for consideration at the hearing on inter se objections in this cause and by Motion of the plaintiff-in-intervention and the Court having considered the pleadings and orders previously filed or entered and being fully advised of the premises, FINDS:

1. The Court has jurisdiction over the parties and the subject matter herein.

2. All water rights which have been adjudicated by orders in this case have as their source of water the public surface or underground waters of the Mimbres River Stream System or Mimbres Underground Water Basin.

3. The plaintiff-in-intervention, State of New Mexico on the relation of S. E. Reynolds, State Engineer, has served process on all known water rights claimants as can be discovered by reasonable diligence and who are claiming the right to divert or use the

public waters of the Mimbres River Stream System or Mimbres Underground Water Basin, except for those using underground water exclusively for domestic or stock watering purposes. A request for unknown claimants to come forward has also been published.

4. The plaintiff-in-intervention has mailed notice of inter se hearing and request for final decree to all attorneys of record and all pro se defendants at their last known address. Additionally, plaintiff-in-intervention has caused to be published notice of said hearing in newspapers of general circulation in Grant and Luna counties once a week for two (2) successive weeks with the date of the last publication being at least ten (10) days prior to the hearing date.

5. This notice stated that any water right owner in the Mimbres River Stream System or Mimbres Underground Water Basin named as a party defendant could object in writing to any water right adjudicated to any other party in said stream system or underground basin, provided that the objection was filed with the Court and notice served upon the adverse party and the plaintiff-in-intervention ten (10) days prior to the hearing.

6. Nine (9) volumes of computerized "record file" representing the sub-files in this adjudication have been generated and are available at the Court Clerk's Office, Luna County Courthouse and the District 3 Office, New Mexico State Engineer Office, Deming, New Mexico and the New Mexico State Engineer Office, Santa Fe, New Mexico. These are compilations of the court orders in each sub-file in this adjudication.

7. In addition to the final decree that should issue, a water master should be appointed by the Court to administer the rights existing under the decree itself.

THEREFORE IT IS ORDERED, ADJUDGED AND DECREED:

1. The orders adjudicating the water rights of each and every defendant in this case as against the State of New Mexico are expressly approved and confirmed.

2. All adjudication orders, are expressly approved and confirmed inter se, between and among any or all of the defendants in this case, in all respects.

3. Claims to the right to divert or use the public waters of the Mimbres River Stream System and Mimbres Underground Water Basin not heretofore filed with the Court, shall not be adjudicated by the Court except as may be necessary for the correction of mistakes or omissions.

4. All defendants, their successors, assigns, lessees and any other person having actual or constructive knowledge of this decree are permanently enjoined from any diversion or use of the public waters of the Mimbres River Stream System and Mimbres Underground Water Basin, except in accordance with the adjudication orders and this decree.

5. The Court will appoint a water master, as recommended by the plaintiff-in-intervention, for performance of the duty of administering the orders within this decree.

6. The Court retains jurisdiction of this case for the purposes of enforcing its adjudication orders and the provisions of this decree; for entering such orders as may be necessary for the correction of mistakes or omissions in the adjudication of water rights; for the dismissal of improper parties, and for the administration of this Final Decree, including the appointment of a water master as described in paragraph 5 directly above.

Norman Hodges
District Court Judge
Pro Tempore

#1

File No. MR-0006

# NEW MEXICO OFFICE OF THE STATE ENGINEER

Office of the State Engineer — Interstate Stream Commission

***APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS IN ACCORDANCE WITH SECTIONS 72-12-1.1, 72-12-1.2, OR 72-12-1.3 NEW MEXICO STATUTES***

Great Seal of the State of New Mexico 1912

5-
3-22955

For fees, see State Engineer website: http://www.ose.state.nm.us/

**1. APPLICANT(S)**

| | |
|---|---|
| Name: SLSCO, Ltd - Fed Services Div | Name: |
| Contact or Agent: Chris Lankford - Div President — check here if Agent ☐ | Contact or Agent: — check here if Agent ☐ |
| Mailing Address: PO Box 17017 | Mailing Address: |
| City: Galveston | City: |
| State: TX — Zip Code: 77552 | State: — Zip Code: |
| Phone: 713-204-2070 ☐ Home ☒ Cell<br>Phone (Work): 713.880.8411 | Phone: ☐ Home ☐ Cell<br>Phone (Work): |
| E-mail (optional): clankford@slsco.com or bfrabotta@slsco.com | E-mail (optional): |

☐ Check here if existing well. Enter OSE File No. ____________

**2. WELL LOCATION Required: Coordinate location must be New Mexico State Plane (NAD 83), UTM (NAD 83), or Lat/Long (WGS84). District II (Roswell) and District VII (Cimarron) customers, provide a PLSS location in addition to above.**

| | | | | | | |
|---|---|---|---|---|---|---|
| NM State Plane (NAD83) - in feet | NM West Zone ☐<br>NM Central Zone ☐<br>NM East Zone ☐ | X (in feet):<br>Y (in feet): | | | | |
| UTM (NAD83) - in meters | UTM Zone 13N ☐<br>UTM Zone 12N ☐ | Easting (in meters):<br>Northing (in meters): | | | | |
| Lat/Long (WGS84) - To 1/10th of second<br>☐ Check if seconds are decimal format | Lat: 31 | deg | 47 | min | 03 | sec |
| | Long: 107 | deg | 10 | min | 35 | sec |

| | | | |
|---|---|---|---|
| Other Location Information (complete the below, if applicable):<br>PLSS Quarters or Halves: part of Govt Lot 4 | Section: 17 | Township: 29 South | Range: 3 West |
| County: Dona Ana County | | | |
| Land Grant Name (if applicable): | | | |
| Lot No: | Block No: | Unit/Tract: | Subdivision: |
| Hydrographic Survey: | | Map: | Tract: |
| Other description relating well to common landmarks, streets, or other:<br>Located a couple hundred yards east of Co Rd AR-411, south of NM Hwy 9, a few hundred yards north of border | | | |
| Well is on Land Owned by (Required): Federal Government | | | |

FOR OSE INTERNAL USE — Application for Permit, Form wr-01, Rev 6/30/17

| | | |
|---|---|---|
| File No.: MR-0006 | Trn. No.: 659086 | Receipt No.: 3-22955 |
| Well Tag ID No. (if applicable): 659086 | Sub-Basin: MR | Log Due Date: 09/30/2020 |



2019 SEP 23 AM 9:08

EXHIBIT 2

**3. PURPOSE OF USE**

- ☐ Domestic use for one household
- ☐ Livestock watering
- ☐ Domestic use for more than one household. Number of households _____ Note: List each lot and owner contact information.
- ☐ Drinking and sanitary uses that are incidental to the operations of a governmental, commercial, or non-profit facility
- ☐ Prospecting, mining or drilling operations to discover or develop natural resources
- ■ Construction of public works, highways and roads
- ☐ Domestic use for one household and livestock watering
- ☐ Domestic use for multiple households and livestock watering
- ☐ Domestic well to accompany a house or other dwelling unit constructed for sale
- ☐ New well (with new purpose)
- ☐ Amend purpose of use on existing well
- ☐ No change in purpose

**4. WELL INFORMATION: CHECK THOSE THAT APPLY** ☐ Existing Well ☐ Known Artesian

File Information: (If existing well, provide OSE no. & indicate below if well is to be replacement, repaired or deepened, or supplemental. If new well, leave blank, as OSE must assign no.)

| | |
|---|---|
| OSE Well No.(If Existing) | New Well No. (provided by OSE) MR-0006-POD1 |
| Well Driller Name: D & J PUMP AND WELL SERVICE LLC | Well Driller License Number: WD-782 |
| Approximate Depth of Well (feet): 450 | Outside Diameter of Well Casing (inches): 5.6 |

| | | |
|---|---|---|
| ☐ Replacement well<br>(List all existing wells if more than one): | ☐ Repair or Deepen:<br>☐ Clean out well to original depth<br>☐ Deepen well from _____ to _____ ft.<br>☐ Other (Explain): | ☐ Supplemental well<br>(List OSE No. for all wells this will supplement): |

**5. ADDITIONAL STATEMENTS OR EXPLANATIONS (Use additional sheets if necessary)**

Well will be used to fill water trucks for dust control and various other construction purposes for the border barrier project. USACE contract number W912PP19C0018

**ACKNOWLEDGEMENT**

I, We (name of applicant(s)), SLSCO, Ltd - Chris Lankford
Print Name(s)

affirm that the foregoing statements are true to the best of (my, our) knowledge and belief.

[signature]
Applicant Signature

Applicant Signature

**ACTION OF THE OFFICE OF THE STATE ENGINEER (FOR OSE USE ONLY)**

This application is approved subject to the attached general and specific conditions of approval.

Witness my hand and seal this 23rd day of September 20 19 , for the New Mexico State Engineer,

By: [signature] Ben Young/Domestic Well Technician
Signature Print

FOR OSE INTERNAL USE

Well Tag ID Issued? ☒ Yes ☐ No

Application for Permit, Form wr-01, Rev 6/30/17

| | | |
|---|---|---|
| File No.: MR-0006 | Trn No.: 659086 | Well ID Tag No.: 3015C |

Page 2 of 2

2019 SEP 23 AM 9:00
STATE ENGINEER OFFICE
SANTA FE, NEW MEXICO

# NEW MEXICO STATE ENGINEER OFFICE
# APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS
# IN ACCORDANCE WITH SECTION 72-12-1 NEW MEXICO STATUTES

## GENERAL CONDITIONS OF APPROVAL (A thru R)

17-A The maximum combined diversion of all wells that may be appropriated under this permit is 3.000 acre-feet in any year (One acre-foot equals 325,851 gallons).

17-B The well shall be drilled by a driller licensed in the State of New Mexico in accordance with 72-12-12 NMSA 1978. A licensed driller shall not be required for the construction of a well driven without the use of a drill rig; provided that the casing shall not exceed two and three-eighths (2 3/8) inches outside diameter.

17-C The well driller must file the well record with the State Engineer and the applicant within 30 days after the well is drilled or driven. It is the well owner's responsibility to ensure that the well driller files the well record. The well driller may obtain the well record form from any District Office or the Office of the State Engineer website.

17-D The production casing shall not exceed 7 inches outside diameter except under specific conditions in which reasons satisfactory to the State Engineer are shown.

17-E To request a change to the purpose of use of water authorized under this permit, the permittee shall file an application with the State Engineer.

17-F An application for a new 72-12-1.1 NMSA 2003 domestic well permit where the proposed point of diversion is to be located on the same legal lot of record as an operational 72-12-1.1 NMSA domestic well shall be treated as an application for a supplemental well and the combined diversion may not exceed the maximum annual diversion permitted.

17-G If artesian water is encountered, the well driller shall comply with all rules and regulations pertaining to the drilling and casing of artesian wells.

17-H The drilling of the well and amount and uses of water permitted are subject to such limitations as may be imposed by a court or by lawful municipal or county ordinance which are more restrictive than the conditions of this permit and applicable State Engineer regulations.

**NEW MEXICO STATE ENGINEER OFFICE**
**APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS**
**IN ACCORDANCE WITH SECTION 72-12-1 NEW MEXICO STATUTES**

**GENERAL CONDITIONS OF APPROVAL (Continued)**

17-I The permittee shall utilize the highest and best technology available to ensure conservation of water to the maximum extent practical.

17-J The well shall be set back a minimum of 50 ft. from an existing well of other ownership unless a variance has been granted by the State Engineer. The State Engineer may grant a variance for a replacement well or to allow for maximum spacing of the well from a source of groundwater contamination. The well shall be set back from potential sources of contamination in accordance with federal, state, and local requirements.

17-K Pursuant to section 72-8-1 NMSA 1978, the permittee shall allow the State Engineer and OSE representatives entry upon private property for the performance of their respective duties, including access to the ditch or acequia to measure flow and also to the well for meter reading and water level measurement.

17-L The permit is subject to cancellation for non-compliance with the conditions of approval or if otherwise not exercised in accordance with the terms of the permit.

17-M The right to divert water under this permit is subject to curtailment by priority administration as implemented by the State Engineer or a court.

17-N In the event of any change of ownership to this permit the new owner shall file a change of ownership form with the State Engineer in accordance with Section 72-1-2.1 NMSA 1978.

17-O This well permit shall automatically expire unless the well is completed and the well record is filed with the State Engineer within one year of the date of issuance of the permit.

17-P The well shall be constructed, maintained, and operated to prevent inter-aquifer exchange of water and to prevent loss of hydraulic head between hydrogeologic zones.

17-Q The State Engineer retains jurisdiction over this permit.

**NEW MEXICO STATE ENGINEER OFFICE**
**APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS**
**IN ACCORDANCE WITH SECTION 72-12-1 NEW MEXICO STATUTES**

**GENERAL CONDITIONS OF APPROVAL (Continued)**

17-R The State Engineer shall supply a well identification tag for the well driller to firmly affix to the well casing or cap with a steel band upon completion in accordance with Subsection M of 19.27.4.29 NMAC.
The permit holder is responsible for maintaining the well identification tag.

Well Tag(s) associated with this permit:
3015C

**SPECIFIC CONDITIONS OF APPROVAL**

17-5A The well owner shall cause to be installed, a totalizing meter before the first branch of the discharge line from the well and the installation shall be acceptable to the State Engineer; the Engineer shall be advised of the make, model, serial number, date of installation, and initial reading of the meter prior to appropriation of water; pumping records shall be submitted to the District Supervisor for each calendar month on or before the 10th day of the following month.

17-10 Total diversion from all wells under this permit number shall not exceed 3.000 acre-feet per annum.

17-15 This permit authorizes the temporary diversion and use of water for prospecting, mining or construction of public works, highways and roads or drilling operations designed to discover or develop the natural mineral resources of the state. The total diversion of water under this permit shall not exceed 3.000 acre-feet per year. Diversion and use of water under this permit shall not exceed a period of one year from the date of approval.

LOG This permit will automatically expire unless the well MR 00006 POD1 is completed and the well record filed on or before 09/30/2020.

**NEW MEXICO STATE ENGINEER OFFICE**
**APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS**
**IN ACCORDANCE WITH SECTION 72-12-1 NEW MEXICO STATUTES**

## ACTION OF STATE ENGINEER

This application is approved for the use indicated, subject to all general conditions and to specific conditions listed above.

Witness my hand and seal this 23 day of Sep A.D., 2019

John R. D Antonio, Jr., P.E. , State Engineer

By: [signature]
Ben Young
Domestic Well Technician
Mount Riley Basin



EXHIBIT 2

**DEPARTMENT OF THE ARMY**
U.S. ARMY ENGINEER DISTRICT, SACRAMENTO
CORPS OF ENGINEERS
1325 J STREET
SACRAMENTO, CALIFORNIA, 95814-2922

CESPK-RE 18 Sep 2019

MEMORANDUM FOR THE CONTRACTING OFFICER

SUBJECT: Real Estate Certification for Construction - El Paso 1 46 Mile Project

The purpose of this memo is to recertify real estate availability for construction. This certification only covers federal lands in and adjacent to the project areas and is based upon attached memo and maps and construction site plan provided by SLSCO LTD contractors as well as the environmental waiver published in the Federal Register on 24 April 2019. A more detailed set of maps depicting the limits of federal ownership has been provided to the Project Managers and project team. SLSCO LTD may be authorized to drill two water wells on the lands being certified as depicted in the construction site plan.

Adam B. Olson
Chief of Real Estate
Real Estate Contracting Officer

2019 SEP 23 AM 9:06
ENGINEERS OFFICE
DEMING, NEW MEXICO

EXHIBIT 2

**Bridget Frabotta**

| | |
|---|---|
| **From:** | Chris Lankford |
| **Sent:** | Friday, September 20, 2019 1:22 PM |
| **To:** | Bridget Frabotta |
| **Subject:** | FW: W912PP19C0018 46 Miles - Real Estate Certification |
| **Attachments:** | Memo - RE Certification - El Paso 46 mile - 20190918SPK-RE2.pdf |

2019 SEP 23 PM 2:48

Thanks,
Chris Lankford
713-204-2070

-----Original Message-----
From: Benitez, Karla H CIV USARMY CESPA (USA) <Karla.Benitez@usace.army.mil>
Sent: Wednesday, September 18, 2019 3:54 PM
To: William Sullivan <wsullivan@slsco.com>; Chris Lankford <clankford@slsco.com>; Matt Hetzler <mhetzler@slsco.com>
Cc: Molina, Leslie M CIV USARMY CESPA (USA) <Leslie.M.Molina@usace.army.mil>; Provencio, Guillermo CIV USARMY CESPA (USA) <Guillermo.Provencio2@usace.army.mil>; Otman, Kamal K CIV (USA) <Kamal.K.Otman@usace.army.mil>; Gutierrez, Baltazar A CIV USARMY CESPA (USA) <Baltazar.A.Gutierrez@usace.army.mil>; Aranda, Arthur CIV USARMY USACE (USA) <Arthur.Aranda@usace.army.mil>; Huls, William D CIV USARMY CESPD (USA) <William.D.Huls@usace.army.mil>; West, Jackie A JR A21 <Jackie.A.West@usace.army.mil>; Paez, Adrian <adrianp@Huitt-Zollars.com>; Fregoso, Gabriel <gfregoso@Huitt-Zollars.com>; Gronewold, Bernadette L CIV USARMY CESPA (USA) <Bernadette.L.Gronewold@usace.army.mil>; White, Paul C CPT USARMY CESPA (USA) <Paul.C.White@usace.army.mil>
Subject: W912PP19C0018 46 Miles - Real Estate Certification

Mr. Sullivan,

Please see attached Real Estate Certification authorizing SLSCO to drill two water wells as depicted in the current construction site plan (Rev 5).

Thank you,

Karla Benitez
El Paso Resident Office
US Army Corps of Engineers
O 915-771-0109
C 505-235-3476

************ This information is For Official Use Only. The contents of this email, including any attachments, must not be disclosed, directly or indirectly, to any person not authorized by the agency to receive such information. Unauthorized disclosure of such information may subject the individual making the release to civil and criminal penalties. See, e.g., 18 U.S.C. § 641; 5 C.F.R. § 2635.703. ************

U.S. Customs and Border Protection

US Army Corps of Engineers®

**Project:** El Paso Project 1 - FY19 Pedestrian and Vehicle Fence Replacement Project (46 Miles)

**Contract #:** W912PP-19-C0018

# Construction Site Plan and Traffic Control Plan – Rev5

# (For Real Estate)

**Submittal ID Number:** 28

**Submittal Type:** SD-01 Preconstruction Submittal

**Section:** 01 50 00 **Item #:** 1

**Submittal Date:** 8/30/2019

**Prime Contractor**

SLSCO LTD
6702 Broadway
Galveston, TX 77550

SLS

2019 SEP 23 AM 9:09
DEMING, NEW MEXICO

SLS

# Project Overview

The El Paso Project 1 - FY19 Pedestrian and Vehicle Fence Replacement Project (NM-46) is divided into 6 Segments (A through F), shown in ***Exhibit A***. The project is centered around the Port of Entry (POE) located in Columbus New Mexico with Segments A, B, and C located to the East of the POE and Segments D, E, and F to the West.

The primary construction yard is located to the immediate East of the Columbus POE and will consist of a fabrication yard, a concrete batch plant, construction trailers, vehicle parking and equipment storage. A secondary laydown yard, referred to as Yard A, will be located at the far Eastern extent of the project in Segment A. Auxiliary laydown yards, referred to as Yards B through E, may be required at a later date.

2019 SEP 23 AM 9:09
STATE ENGINEERS OFFICE
DEMING, NEW MEXICO

# Construction Site Plan

## Primary Site - Columbus POE Yard

The primary construction yard will be located in the vicinity of the Columbus POE. The Columbus POE Yard will have the following features:

- Construction Trailers for SLS and USACE.
- Vehicle Parking and Equipment Storage located adjacent to the Construction Trailers.
- A Fabrication Yard, including storage for raw materials and completed panels.
- A Concrete Batch Plant

***Exhibit B*** illustrates the location and layout of the Columbus POE Yards features.

Raw material will be received and stored at the fabrication area. Panel fabrication will occur in the fabrication area. Once panels have been fabricated they will be transported to the jobsite via the highlighted routes shown in ***Exhibit I***. They will be staged to the north of the patrol road, within the Roosevelt Easement, in stacks of 8 panels spaced 64 feet apart. All equipment required for panel fabrication will be stored in the fabrication area at night and on weekends. ***Exhibit C*** outlines the intended general layout of the Fabrication Yard.

The Batch Plant will be used to produce the concrete used during the construction process. All material used for concrete production will be delivered to the Batch Plant. Equipment used for the production and delivery of concrete will be stored at the batch plant at night and on weekends.

On-site personnel will operate out of the Construction Trailers located at the Columbus POE Yard. Vehicle parking for on-site personnel will be provided adjacent to the

SLS

Construction Trailers. Construction equipment will be stored to the North of the patrol road in a location, deemed secure by the contractor, close to the active construction area

## Secondary Site - Yard A

***Exhibit D*** shows the intended location of Yard A. Presently, the intended use of Yard A is for construction crew vehicle parking. There is a potential that Yard A will be used for other construction purposes, in the future, including but not limited to panel fabrication, panel storage, and/or concrete production. The ultimate function of Yard A will be determined by SLS to meet construction requirements of the project.

## Secondary Site - Yard B

***Exhibit E*** shows the proposed location for Yard B. SLS plans to establish a water well on the East side of Yard B. Currently, the water well is planned to be located on the eastern side of Yard B, shown in ***Exhibit E.*** If needed in the future, Yard B usage may be expanded for construction activity including but not limited to panel fabrication, panel storage, and/or concrete production.

## Secondary Site – Yard C

***Exhibit F*** shows the proposed location for Yard C. Currently, there is not planned use for Yard C. If needed in the future, Yard C may be used for construction activity including but not limited to panel fabrication, panel storage, and/or concrete production.

2019 SEP 23 AM 9:09

STATE ENGINEERS OFFICE
DEMING, NEW MEXICO

## Secondary Site – Yard D

***Exhibit G*** shows the proposed location for Yard D. Currently, there is not planned use for Yard D. If needed in the future, Yard D may be used for construction activity including but not limited to panel fabrication, panel storage, and/or concrete production.

## Secondary Site – Yard E

***Exhibit H*** shows the proposed location for Yard E. Currently, there is not planned use for Yard E. If needed in the future, Yard E may be used for construction activity including but not limited to panel fabrication, panel storage, and/or concrete production.

SLS

## Secondary Site – Yard F

***Exhibit I*** shows the proposed location for Yard F. SLS plans to establish a water well within the boundaries of Yard F. If needed in the future, Yard F usage may be expanded for construction activity including but not limited to panel fabrication, panel storage, and/or concrete production.

# Construction Traffic

***Exhibit J*** outlines the primary routes, highlighted in Blue, and secondary routes, highlighted in Red, that will be used to gain access to the project site. Construction traffic will mostly utilize Highway 11 (running North to South from Deming to Columbus), Highway 9 (running East to West along the border), and the Border Patrol Road (running East to West immediately North of the border).

## Primary Site - Columbus POE Yard

The Primary Construction Yard located at the Columbus POE can be accessed by taking Highway 11 South and turning left onto the Job Site Access Road shown in ***Exhibit K.***

Once construction traffic enters the POE Yard they it will follow the designated routes outlined in ***Exhibit L.*** All traffic will initially enter the Site via the Job Site Access Road. Personnel Traffic will be limited to the road immediately to the North of the Construction Trailers. Steel and Concrete Material Deliveries will follow the highlighted routes in and out of the Site. Concrete and Panel Delivery vehicles will exit the Site onto the Border Patrol Road via the highlighted routes.

2019 SEP 23 AM 9:09
STATE ENGINEERS OFFICE
DEMING, NEW MEXICO

## Secondary Site - Yard A

Yard A can be accessed by taking Highway 11 South and exiting to Highway 9 East. Once on Highway 9 continue East for roughly 37 miles and take a right onto County Road A006. County Road A006 intersects with the Border Patrol Road. Yard A is located just North of this intersection. This route is shown in ***Exhibit M.*** If Yard A is utilized for anything other than construction crew vehicle parking in the future, a detailed traffic plan will be established.

## Secondary Site - Yard B

Yard B can be accessed by taking Highway 11 South and exiting to Highway 9 East. Once on Highway 9 continue East for roughly 29 miles and take a right onto AR-411. Yard

SLS

B would be located where AR-411 intersects with the Border Patrol Road. This route is shown in ***Exhibit N***. Currently, Yard B has no intended use, other than housing a water well. If Yard B is utilized in the future, a detailed traffic plan will be developed.

## Secondary Site – Yard C

Yard C can be accessed by taking Highway 11 South and exiting to Highway 9 East. Once on Highway 9 continue East for roughly 24 miles and take a right onto County Road A001. Yard C would be located at the intersection of County Road A001 and Highway 9. This route is shown in ***Exhibit O***. Currently, Yard C has no intended use. If Yard C is utilized in the future, a detailed traffic plan will be developed.

## Secondary Site - Yard D

Yard D can be accessed by taking Highway 11 South and exiting to Highway 9 East. Once on Highway 9 continue East for roughly 14 miles and take a right onto AR-6. Yard D would be located where AR-6 intersects with the Border Patrol Road. This route is shown in ***Exhibit P***. Currently, Yard D has no intended use. If Yard D is utilized in the future, a detailed traffic plan will be developed.

## Secondary Site - Yard E

Yard E can be accessed by taking Highway 11 South and exiting to Highway 9 East. Once on Highway 9 continue East for roughly 8.5 miles and take a right onto AR-5. Yard E would be located where AR-5 intersects with the Border Patrol Road. This route is shown in ***Exhibit Q***. Currently, Yard E has no intended use. If Yard E is utilized in the future, a detailed traffic plan will be developed.

## Secondary Site – Yard F

Yard F can be accessed by taking Highway 11 South and exiting to Highway 9 East. Once on Highway 9 continue East for roughly 24 miles and take a right onto County Road A001. Yard F will be located along the western fork of County Road A001. This route is shown in ***Exhibit R***. Currently, Yard F has no intended use, other than housing a water well. If Yard F is utilized in the future, a detailed traffic plan will be developed.

2019 SEP 23 AM 9:09
STATE ENGINEER'S OFFICE
DEMING, NEW MEXICO

SLS

Note:

1. All work will be done on federal lands and adjacent to the project area.
2. Presently, there are no known utility conflicts within the project area.
3. Contractor will secure all necessary well drilling permits and permissions from appropriate state, and local agencies and private parties who may hold water rights.
4. Currently, at the start of the project, there is the need for two water wells, one in Yard B (shown in ***Exhibit E***) and one in Yard F (shown in ***Exhibit I***) but as the project moves forward the need for more water wells may also be desired. Contractor will contact USACE to confirm any additional water well locations are acceptable prior to drilling/usage.
5. Contractor will be responsible for closing and securing water well once operations and work requiring water no longer exist for this specific project.
6. The Government will not be responsible for providing access to any private land or securing land leases that the contractor may desire for use. Contractor is solely responsible for negotiating and executing leases of private land, such as that shown in ***Exhibit B.***

2019 SEP 23 AM 9: 09
E ENGINEERS OFFICE
DEMING, NEW MEXICO




STATE ENGINEERS OFFICE
DEMING, NEW MEXICO
2019 SEP 23 AM 9:09

EXHIBIT 2




STATE ENGINEERS OFFICE DEMING, NEW MEXICO

2019 SEP 23 AM 9:09

STATE ENGINEERS OFFICE DEMING, NEW MEXICO

EXHIBIT 2




2019 SEP 23 AM 9:09

STATE ENGINEERS OFFICE
DEMING, NEW MEXICO

EXHIBIT 2




TATE ENGINEERS OFFICE
DEMING, NEW MEXICO
2019 SEP 23 AM 9:10

EXHIBIT 2




ATE ENGINEERS OFFICE
DEMING, NEW MEXICO
2019 SEP 23 AM 9:10

EXHIBIT 2




ATE ENGINEERS OFFICE
DEMING, NEW MEXICO
2019 SEP 23 AM 9: 10

EXHIBIT 2




ATE ENGINEERS OFFICE
DEMING, NEW MEXICO
2019 SEP 23 AM 9:10

EXHIBIT 2




ATE ENGINEERS OFFICE
DEMING, NEW MEXICO
2019 SEP 23 AM 9: 10

ATE ENGINEERS OFFICE
DEMING, NEW MEXICO
2019 SEP 23 AM 9: 10

EXHIBIT 2




STATE ENGINEERS OFFICE
DEMING, NEW MEXICO
2019 SEP 23 AM 9:10

EXHIBIT 2




STATE ENGINEERS OFFICE
DEMING, NEW MEXICO

EXHIBIT 2




DEMING, NEW MEXICO
2019 SEP 23 AM 9: 10

EXHIBIT 2




STATE ENGINEERS OFFICE
DEMING, NEW MEXICO
2019 SEP 23 AM 9:44

EXHIBIT 2




STATE ENGINEERS OFFICE
DEMING, NEW MEXICO

EXHIBIT 2




STATE ENGINEERS OFFICE
DEMING, NEW MEXICO
2019 SEP 23 AM 9:10

EXHIBIT 2




TATE ENGINEERS OFFICE
DEMING, NEW MEXICO
2019 SEP 23 AM 9:10

EXHIBIT 2




STATE ENGINEERS OFFICE
DEMING, NEW MEXICO
2019 SEP 23 AM 9: 10

EXHIBIT 2




STATE ENGINEERS OFFICE
DEMING, NEW MEXICO

EXHIBIT 2




ATE ENGINEERS OFFICE
DEMING, NEW MEXICO
2019 SEP 23 AM 9:11

MR-00006

1300 Pennsylvania Avenue NW
Washington, DC 20229

U.S. Customs and
Border Protection

August 5, 2020

Lloyd Valentine
New Mexico Office of the State Engineer Interstate Stream Commission
321 W Spruce St
Deming, NM 88031

STATE ENGINEERS OFFICE
DEMING, NEW MEXICO
AUG 10 2020

**SUBJECT:** Additional Bollard Wall and Gates in El Paso, Texas

Dear Mr. Valentine:

U.S. Customs and Border Protection (CBP) proposes to design and construct new border wall system in El Paso, Texas. The proposed action includes the construction of an additional 0.09 miles of 18-foot bollard wall and associated gates in El Paso, Texas, to support U.S. Border Patrol (USBP) operations. Currently, a gap exists between where the border wall ends, southwest of the Leon Wasteway Spillway, and the existing wire mesh fence begins (see enclosed Maps). The proposed action would close the gap between the border wall and legacy fence while providing access through three gates that would improve security for the El Paso area. Due to the proximity to homes and businesses, illegal crossings are difficult to detect in this area.

CBP will be conducting an analysis of the proposed action pursuant to National Environmental Policy Act (NEPA) of 1969, 42 United States Code (U.S.C.) 4321 et seq. CBP is soliciting your input and comments concerning the potential impacts of the proposed action, including potential impacts to the environment, culture, commerce, and quality of life. In order to be considered, comments must be received by Friday, September 4, 2020.

Comments can be emailed to CBP at ElPasoComments@cbp.dhs.gov. Please include "El Paso Border Wall and Gates" in the subject of your email. Comments received in response to this letter, including names and addresses of those who comment, will become a part of the public record.

We appreciate your feedback and help with evaluating the potential impacts of these projects.

Sincerely,

Paul Enriquez

STATE ENGINEERS OFFICE
DEMING, NEW MEXICO
AUG 10 2020

EXHIBIT 2

# Border Barrier Map

*El Paso County*




## LEGEND

**Existing Barrier**

Existing Pedestrian Barrier

**Planned Projects**

New Primary Border Wall System

**Other Ongoing Projects**

New Border Barrier* (funded FY20)

*In place of dilapidated or outdated designs

*If sheet measures less than 11x17" it is a reduced print. Reduce scale accordingly.

1 in = 0.1 mi 1:6,4




AREA ENLARGED

Map Request 647

August

EXHIBIT 2

U.S. Customs and
Border Protection

1300 PENNSYLVANIA AVE, NW,
WASHINGTON, DC 20229-

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300

CERTIFIED MAIL®

7019 2970 0001 0035 9856

FIRST-CLASS

PITNEY BOWES
US POSTAGE
$ 004.05⁰
02 7H
0001270615 AUG 05 2020
MAILED FROM ZIP CODE 22102

C4

880308367S C004

EXHIBIT 2

# STATE OF NEW MEXICO
## *OFFICE OF THE STATE ENGINEER*
*District 3 Office, Deming, NM*

John R. D'Antonio, Jr., P.E.,
State Engineer

321 W. Spruce Street
Deming, New Mexico 88030
PHONE: (575) 546-2851
FAX: (575) 546-2290

April 08, 2021

FILE: MR-00006

McPherson Land & Cattle Co.
c/o Steve McPherson
620 FM 97
Lockney, TX 79241

Greetings:

Enclosed for your records is a copy of the Permit for Construction of Public Works, Highways and Roads, MR-00006-POD1 by SLSCO, Ltd. Please note Specific Condition of Approval 17-15 mentioning the diversion and use of water under this permit shall not exceed a period of one year from the date of approval. The date of approval of this particular permit was September 23, 2019.

Sincerely,

Caitlyn L. Boucher
Water Resource Professional II

EXHIBIT 2




**Coordinates**

UTM - NAD 83 (m) - Zone 13

Easting 293927.040

Northing 3518574.150

State Plane - NAD 83 (f) - Zone C

Easting 1352576.555

Northing 286448.861

Degrees Minutes Seconds

Latitude 31 : 47 : 3.000000

Longitude -107 : 10 : 35.000000

Location pulled from Coordinate Search

NEW MEXICO OFFICE
OF THE
STATE ENGINEER

N

1:4,514

ft

0 90 180 360

Image Info
Source: DigitalGlobe
Date: 10/6/2016
Resolution (m):0.31
Accuracy (m): 4

**Spatial Information**

OSE Administrative Area: Doña Ana
County: Doña Ana
Groundwater Basin: Mount Riley
Abstract Area: Mount Riley

Sub-Basin: Mimbres

Land Grant: Not in Land Grant

Restrictions:
NA

PLSS Description

Part of Gov't Lot 4 of Sec 17 of 29S 3W

Derived from Projected PLSS- Qtr Sec. locations are calculated and are only approximations

Coord Search Location

MEX_Country

Recently Edited PODs

OSE District Boundary

SiteBoundaries

**Sample Locations**

Well

Abandoned Well

Oil, Gas Well

Abandoned Oil, Gas Well

Surface

Surface/Sedi...

Sediment

Precipitation Gauge

Abandoned Precipitation Gauge

Air Particulate

Abandoned Air Particulate

Treatment System

Abandoned Treatment System

Labels - Sample Locations

**POD Information**

Owner: SLSCO, Ltd
File Number: MR-0006-POD1
POD Status: NoData
Permit Status: NoData
Permit Use: NoData
Purpose: Public Works Permit

Ben Young 9/23/20

EXHIBIT 2

# STATE OF NEW MEXICO
## *OFFICE OF THE STATE ENGINEER*
*District 3 Office, Deming, NM*

John R. D'Antonio Jr. P.E
State Engineer

321 W. Spruce St.
Deming, New Mexico 88030
PHONE: (575) 546-2851
FAX: (575) 546-2290

September 24, 2019

FILE: MR-0006

SLSCO, Ltd
Attn: Chris Lankford
PO Box 17017
Galveston, TX 77553

Greetings:

Enclosed is your copy of Permit for Construction of Public Works, Highways and Roads, MR-0006-POD1, which has been approved.

Your attention is called to the Condition of Approval under Permit MR-0006-POD1, which state as follows:

5a. The well owner shall cause to be installed, a totalizing meter before the first branch of the discharge line from the well and the installation shall be acceptable to the State Engineer; the Engineer shall be advised of the make, model, serial number, date of installation, and initial reading of the meter prior to appropriation of water; pumping records shall be submitted to the District Supervisor for each calendar month on or before the 10th day of the following month.

10 Total diversion from all wells under this permit number shall not exceed 3 acre-feet per annum.

15 This permit authorizes the temporary diversion and use of water for prospecting, mining or construction of public works, highways and roads or drilling operations designed to discover or develop the natural mineral resources of the state. The total diversion of water under this permit shall not exceed approved div acre-feet per year. Diversion and use of water under this permit shall not exceed a period of one year from the date of approval.

This permit will expire September 30, 2020, unless the well is drilled and the well record filed on or before that date.

Sincerely,

Lloyd R. Valentine III
District 3 Manager

By: for Ben Young
Ben Young
Domestic Well Technician
Mount Riley Basin

BY:by
Encl: Approved Permit
Metering Installation Form
cc: State Engineer
D&J Well and Pump

EXHIBIT 2

File No. MR-06

# NEW MEXICO OFFICE OF THE STATE ENGINEER

***APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS IN ACCORDANCE WITH SECTIONS 72-12-1.1, 72-12-1.2, OR 72-12-1.3 NEW MEXICO STATUTES***

For fees, see State Engineer website: http://www.ose.state.nm.us/

EXPIRED

STATE ENGINEERS OFFICE DEMING, NEW MEXICO MAR 24 2023

## 1. APPLICANT(S)

| | |
|---|---|
| Name: Fisher Sand & Gravel | Name: |
| Contact or Agent: check here if Agent ☐ Derek Schoonover | Contact or Agent: check here if Agent ☐ |
| Mailing Address: 1302 West Drivers Way | Mailing Address: |
| City: Tempe | City: |
| State: Arizona Zip Code: 85284 | State: Zip Code: |
| Phone: 602-619-0325 ☐ Home ■ Cell<br>Phone (Work): 480-730-1033 Office # | Phone: ☐ Home ☐ Cell<br>Phone (Work): |
| E-mail (optional): Dereks@fisherind.com | E-mail (optional): |

☒ Check here if existing well. Enter OSE File No. ~~3015c~~ MR-06-POD1

**2. WELL LOCATION Required: Coordinate location must be New Mexico State Plane (NAD 83), UTM (NAD 83), or Lat/Long (WGS84). District II (Roswell) and District VII (Cimarron) customers, provide a PLSS location in addition to above.**

| | | | | | | |
|---|---|---|---|---|---|---|
| NM State Plane (NAD83) - In feet | NM West Zone ☐<br>NM Central Zone ☐<br>NM East Zone ☐ | X (in feet):<br>Y (in feet): | | | | |
| UTM (NAD83) - In meters | UTM Zone 13N ☐<br>UTM Zone 12N ☐ | Easting (in meters):<br>Northing (in meters): | | | | |
| Lat/Long (WGS84) - To 1/10th of second<br>☐ Check if seconds are decimal format | Lat: 31 | deg | 47 | min | 06 | sec |
| | Long: 107 | deg | 10 | min | 34 | sec |

| |
|---|
| Other Location Information (complete the below, if applicable):<br>PLSS Quarters or Halves: Part of Government lot 4 Section: 17 Township: 29 South Range: 3 West |
| County: Dona Ana County |
| Land Grant Name (if applicable): |
| Lot No: Block No: Unit/Tract: Subdivision: |
| Hydrographic Survey: Map: Tract: |
| Other description relating well to common landmarks, streets, or other:<br>Located a couple hundred yards east of Co Rd AR-411, south of NM Hwy 9, a few hundred yards north of the border. |
| **Well is on Land Owned by (Required):** |

FOR OSE INTERNAL USE

Application for Permit, Form wr-01, Rev 10/29/2020

| | | |
|---|---|---|
| File No.: MR-06 | Trn. No.: 744911 | Receipt No.: 3-24673 $5 |
| Well Tag ID No. (if applicable): 3015C | Sub-Basin: MR | Log Due Date: NA |



EXHIBIT 3

## 3. PURPOSE OF USE

- ☐ Domestic use for one household
- ☐ Livestock watering
- ☐ Domestic use for more than one household. Number of households ____ Complete and attach form WR-01m "MULTIPLE home-owner info"
- ☐ Drinking and sanitary uses that are incidental to the operations of a governmental, commercial, or non-profit facility
- ☐ Prospecting, mining or drilling operations to discover or develop natural resources
- ☒ Construction of public works, highways and roads
- ☐ Domestic use for one household and livestock watering
- ☐ Domestic use for multiple households and livestock watering ____ Complete and attach form WR-01m "MULTIPLE home-owner info"
- ☐ Domestic well to accompany a house or other dwelling unit constructed for sale
- ☐ New well (with new purpose)
- ☐ Amend purpose of use on existing well
- ☐ No change in purpose

EXPIRED

## 4. WELL INFORMATION: CHECK THOSE THAT APPLY ☒ Existing Well ☐ Known Artesian

File Information: (If existing well, provide OSE no. & indicate below if well is to be replacement, repaired or deepened, or supplemental. If new well, leave blank, as OSE must assign no.)

| | |
|---|---|
| OSE Well No.(If Existing) 3015c MR-06-POD1 | New Well No. (provided by OSE) |
| **Well Driller Name:** D&J Pump & Well Service | **Well Driller License Number:** 782 |
| Approximate Depth of Well (feet): 440 | Outside Diameter of Well Casing (inches): 5.6 |

| | | |
|---|---|---|
| ☐ Replacement well<br>(List all existing wells if more than one): | ☐ Repair or Deepen:<br>☐ Clean out well to original depth<br>☐ Deepen well from ____ to ____ ft.<br>☐ Other (Explain): | ☐ Supplemental well<br>(List OSE No. for all wells this will supplement): |

## 5. ADDITIONAL STATEMENTS OR EXPLANATIONS (Use additional sheets if necessary)

Well will be used to fill water trucks for dust control and various other construction purposes for the border barrier project.

STATE ENGINEERS OFFICE
DEMING, NEW MEXICO
MAR 24 2023

### ACKNOWLEDGEMENT

I, We (name of applicant(s)), Derek Schoonover
Print Name(s)

affirm that the foregoing statements are true to the best of (my, our) knowledge and belief.

[signature] Derek Schoonover
Applicant Signature

Applicant Signature

### ACTION OF THE OFFICE OF THE STATE ENGINEER (FOR OSE USE ONLY)

This application is approved subject to the attached general and specific conditions of approval.

Witness my hand and seal this 27th day of March 20 23, for the New Mexico State Engineer,

By: [signature] Jennifer Galindo
Signature

Jennifer Galindo / Water Resources Manager I
Print

FOR OSE INTERNAL USE

Well Tag ID Issued? ☒ Yes ☐ No

Application for Permit, Form wr-01, Rev 10/29/2020

| | | |
|---|---|---|
| File No.: MR-06 | Trn No.: 744911 | Well ID Tag No.: ~~NA~~ 3015C |



EXHIBIT 3

**NEW MEXICO STATE ENGINEER OFFICE**
**APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS**
**IN ACCORDANCE WITH SECTION 72-12-1 NEW MEXICO STATUTES**

**GENERAL CONDITIONS OF APPROVAL (A thru S)**

17-A The maximum combined diversion of all wells that may be appropriated under this permit is 3.000 acre-feet in any year (One acre-foot equals 325,851 gallons).

17-B The well shall be drilled by a driller licensed in the State of New Mexico in accordance with 72-12-12 NMSA 1978. A licensed driller shall not be required for the construction of a well driven without the use of a drill rig; provided that the casing shall not exceed two and three-eighths (2 3/8) inches outside diameter.

EXPIRED

17-C The well driller must file the well record with the State Engineer and the applicant within 30 days after the well is drilled or driven. It is the well owner's responsibility to ensure that the well driller files the well record. The well driller may obtain the well record form from any District Office or the Office of the State Engineer website.

17-D The production casing shall not exceed 7 inches outside diameter except under specific conditions in which reasons satisfactory to the State Engineer are shown.

17-E To request a change to the purpose of use of water authorized under this permit, the permittee shall file an application with the State Engineer.

17-F An application for a new 72-12-1.1 NMSA 2003 domestic well permit where the proposed point of diversion is to be located on the same legal lot of record as an operational 72-12-1.1 NMSA domestic well shall be treated as an application for a supplemental well and the combined diversion may not exceed the maximum annual diversion permitted.

17-G If artesian water is encountered, the well driller shall comply with all rules and regulations pertaining to the drilling and casing of artesian wells.

17-H The drilling of the well and amount and uses of water permitted are subject to such limitations as may be imposed by a court or by lawful municipal or county ordinance which are more restrictive than the conditions of this permit and applicable State Engineer regulations.

**NEW MEXICO STATE ENGINEER OFFICE**
**APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS**
**IN ACCORDANCE WITH SECTION 72-12-1 NEW MEXICO STATUTES**

EXPIRED

**GENERAL CONDITIONS OF APPROVAL (Continued)**

17-I The permittee shall utilize the highest and best technology available to ensure conservation of water to the maximum extent practical.

17-J The well shall be set back a minimum of 50 ft. from an existing well of other ownership unless a variance has been granted by the State Engineer. The State Engineer may grant a variance for a replacement well or to allow for maximum spacing of the well from a source of groundwater contamination. The well shall be set back from potential sources of contamination in accordance with federal, state, and local requirements.

17-K Pursuant to section 72-8-1 NMSA 1978, the permittee shall allow the State Engineer and OSE representatives entry upon private property for the performance of their respective duties, including access to the ditch or acequia to measure flow and also to the well for meter reading and water level measurement.

17-L The permit is subject to cancellation for non-compliance with the conditions of approval or if otherwise not exercised in accordance with the terms of the permit.

17-M The right to divert water under this permit is subject to curtailment by priority administration as implemented by the State Engineer or a court.

17-N In the event of any change of ownership to this permit the new owner shall file a change of ownership form with the State Engineer in accordance with Section 72-1-2.1 NMSA 1978.

17-O This well permit shall automatically expire unless the well is completed and the well record is filed with the State Engineer within one year of the date of issuance of the permit.

17-P The well shall be constructed, maintained, and operated to prevent inter-aquifer exchange of water and to prevent loss of hydraulic head between hydrogeologic zones.

17-Q The State Engineer retains jurisdiction over this permit.

Trn Desc: MR 00006 PUBLIC WORKS File Number: MR 00006
Log Due Date: Trn Number: 744911
Form: wr-01



EXHIBIT 3

**NEW MEXICO STATE ENGINEER OFFICE**
**APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS**
**IN ACCORDANCE WITH SECTION 72-12-1 NEW MEXICO STATUTES**

**GENERAL CONDITIONS OF APPROVAL (Continued)**

17-R The State Engineer shall supply a well identification tag for the well driller to firmly affix to the well casing or cap with a steel band upon completion in accordance with Subsection M of 19.27.4.29 NMAC.
The permit holder is responsible for maintaining the well identification tag.

Well Tag(s) associated with this permit:
3015C

EXPIRED

**GENERAL CONDITIONS OF APPROVAL (A thru S)**

17-S Construction of a water well by anyone without a valid New Mexico Well Driller License is illegal, and the landowner shall bear the cost of plugging the well by a licensed New Mexico well driller. This does not apply to driven wells, the casing of which does not exceed two and three-eighths inches outside diameter.

**SPECIFIC CONDITIONS OF APPROVAL**

17-5A The well owner shall cause to be installed, a totalizing meter before the first branch of the discharge line from the well and the installation shall be acceptable to the State Engineer; the Engineer shall be advised of the make, model, serial number, date of installation, and initial reading of the meter prior to appropriation of water; pumping records shall be submitted to the District Supervisor for each calendar month on or before the 10th day of the following month.

17-10 Total diversion from all wells under this permit number shall not exceed 3.000 acre-feet per annum.

17-15 This permit authorizes the temporary diversion and use of water for prospecting, mining or construction of public works, highways and roads or drilling operations designed to discover or develop the natural mineral resources of the state. The total diversion of water under this permit shall not exceed 3.000 acre-feet per year. Diversion and use of water under this permit shall not exceed a period of one year from the date of approval.

**NEW MEXICO STATE ENGINEER OFFICE**
**APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS**
**IN ACCORDANCE WITH SECTION 72-12-1 NEW MEXICO STATUTES**

**ACTION OF STATE ENGINEER**

This application is approved for the use indicated, subject to all general conditions and to specific conditions listed above.

Witness my hand and seal this 27 day of Mar A.D., 2023

Mike A. Hamman, P.E., State Engineer

By: [signature]
JENNIFER GALINDO

EXPIRED




**Coordinates**

**UTM - NAD 83 (m) - Zone 13**

Easting 293902.100

Northing 3518556.700

**State Plane - NAD 83 (f) - Zone C**

Easting 1352495.407

Northing 286390.680

**Degrees Minutes Seconds**

Latitude 31 : 47 : 2.417425

Longitude -107 : 10 : 35.934351

Location pulled from POD Search

NEW MEXICO OFFICE OF THE STATE ENGINEER

1:4,514

ft

0 90 180 360

N

Image Info
Source: Maxar
Date: 12/1/2020
Resolution (m):0.5
Accuracy (m): 5

**Spatial Information**

OSE Administrative Area: Doña Ana
County: Doña Ana
Groundwater Basin: Mount Riley
Abstract Area: Mount Riley
Sub-Basin: Mimbres
Land Grant: Not in Land Grant
Restrictions:
NA

**PLSS Description**

SW SW SW SW Qtr of Sec 17 of 29S 3W

Derived from Projected PLSS- Qtr Sec locations are calculated and are only approximations

**POD Information**

Owner: Fisher Sand & Gravel
File Number: MR-00006-POD1
POD Status: ACT
Permit Status: PMT
Permit Use: PUBLIC WORKS
Purpose: PUBLIC WORKS

Selected POD
Estados Unidos Mexicanos
GIS WATERS PODs
Active
OSE District Boundary
Bernalillo County Parcels 2022
Catron County Parcels 2022
Chaves County Parcels 2022
Cibola County Parcels 2022
Colfax County Parcels 2022
Curry County Parcels 2022
De Baca County Parcels 2022
Doña Ana County Parcels 2022
Eddy County Parcels 2022
Harding County Parcels 2022
Hidalgo County Parcels 2022
Grant County Parcels 2022
Guadalupe County Parcels 2022
Lea County Parcels 2022
Lincoln County Parcels 2022
Los Alamos County Parcels 2022
Luna County Parcels 2022
McKinley County Parcels 2022
Mora County Parcels 2022
Otero County Parcels 2022
Quay County Parcels 2022
Rio Arriba County Parcels 2022
Roosevelt County Parcels 2022
Sandoval County Parcels 2022
San Juan County Parcels 2022
San Miguel County Parcels 2022
Santa Fe County Parcels 2022
Sierra County Parcels 2022
Socorro County Parcels 2022
Taos County Parcels 2022
Torrance County Parcels 2022
Union County Parcels 2022

3/27/2023

EXHIBIT 3

| SOLICITATION, OFFER, AND AWARD (Construction, Alteration, or Repair) | 1. SOLICITATION NUMBER | 2. TYPE OF SOLICITATION | 3. DATE ISSUED | PAGE OF PAGES |
|---|---|---|---|---|
| | 70B01C22Q00000111 | ☐ SEALED BID (IFB) ☒ NEGOTIATED (RFP) | 06/27/2022 | 1 of 2 |

**IMPORTANT** - The "offer" section on the reverse must be fully completed by offeror.

| 4. CONTRACT NUMBER | 5. REQUISITION/PURCHASE REQUEST NUMBER | 6. PROJECT NUMBER |
|---|---|---|
| 70B01C22F00000952/HSBP1017D00019 | 20132541 | |

| 7. ISSUED BY CODE | 8. ADDRESS OFFER TO |
|---|---|
| Customs and Border Protection (CBP)<br>John Callahan<br>6650 Telecom Drive, Ste. 100<br>Indianapolis, IN 46078 | Customs and Border Protection (CBP)<br>John Callahan<br>6650 Telecom Drive, Ste. 100<br>Indianapolis, IN 46078 |

| 9. FOR INFORMATION EMAIL: | a. NAME | b. EMAIL ADDRESS: |
|---|---|---|
| | John Callahan | john.p.callahan@cbp.dhs.gov |

## SOLICITATION

NOTE: In sealed bid solicitations "offer" and "offeror" mean "bid and "bidder".

10. THE GOVERNMENT REQUIRES PERFORMANCE OF THE WORK DESCRIBED IN THESE DOCUMENTS *(Title, identifying number, date)*

**SEE 70B01C22Q00000111 RFQ SOLICITATION DOCUMENTS FOR THE EL PASO INFRASTRUCTURE COMPLETION DESIGN-BUILD CONSTRUCTION PROJECT ISSUED UNDER THE IDIQ CONTRACTS AWARDED UNDER HSBP1017R0022.**

1. **Proposals shall be sent by email to: john.p.callahan@cbp.dhs.gov.**
2. **The Bid Bond will be submitted with contractor quote, by email and not mailed in.**

STATE ENGINEERS OFFICE
DEMING, NEW MEXICO
MAR 24 2023

11. The contractor shall begin performance within 1 calendar days and complete it within * calendar days after receiving ☐ award, ☒ notice to proceed. This performance period is ☒ mandatory ☐ negotiable. *(See* * See "Continuation of Standard Form 1442"

| 12a. THE CONTRACTOR MUST FURNISH ANY REQUIRED PERFORMANCE AND PAYMENT BONDS? *(If "YES", indicate within how many calendar days after award in Item 12b.)* | 12b. CALENDAR DAYS |
|---|---|
| ☒ YES ☐ NO | 10 |

13. ADDITIONAL SOLICITATION REQUIREMENTS:

a. Sealed offers in original and ________ copies to perform the work required are due at the place specified in Item 8 by ____________ *(hour)* local time ____________ (date). If this is a sealed bid solicitation, offers will be publicly opened at that time. Sealed envelopes containing offers shall be marked to show the offeror's name and address, the solicitation number, and the date and time offers are due.

b. An offer guarantee ☒ is, ☐ is not required.

c. All offers are subject to the (1) work requirements, and (2) other provisions and clauses incorporated in the solicitation in full text or by reference.

d. Offers providing less than 120 calendar days for Government acceptance after the date offers are due will not be considered and will be rejected.

**OFFER *(Must be fully completed by offeror)***

14. NAME AND ADDRESS OF OFFEROR *(Include ZIP Code)*

Fisher Sand and Gravel Co. (Fisher)
1302 W Drivers Way
Tempe, AZ 85284
UEI: DGT8NKKG9NR3
DUNS & Tax ID 03-181-0617 / 45-0308561

15. TELEPHONE NUMBER *(Include area code)*

(480) 730-1033

16. REMITTANCE ADDRESS *(Include only if different than Item 14.)*

CODE | FACILITY CODE

17. The offeror agrees to perform the work required at the prices specified below in strict accordance with the terms of this solicitation, if this offer is accepted by the Government in writing within__________calendar days after the date offers are due. *(Insert any number equal to or greater than the minimum requirement stated in Item 13d. Failure to insert any number means the offeror accepts the minimum in Item 13d.)*

AMOUNTS ▶ SEE ATTACHMENT #1 - PRICING SCHEDULE

STATE ENGINEERS OFFICE
DEMING, NEW MEXICO
MAR 24 2023

18. The offeror agrees to furnish any required performance and payment bonds.

19. ACKNOWLEDGMENT OF AMENDMENTS
*(The offeror acknowledges receipt of amendments to the solicitation -- give number and date of each)*

| AMENDMENT NUMBER | 01 | 02 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| DATE | 7/25/22 | 7/28/22 | | | | | | | | |

20a. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN OFFER *(Type or print)*

Tommy Fisher, President

20b. SIGNATURE

[signature]

20c. OFFER DATE

8/1/2022

**AWARD *(To be completed by Government)***

21. ITEMS ACCEPTED:

All line items (001-003, and 1001-1002) on Attachment #1 - Pricing Schedule are awarded.

22. AMOUNT

$94,000,000.00

23. ACCOUNTING AND APPROPRIATION DATA

See Attachment A

24. SUBMIT INVOICES TO ADDRESS SHOWN IN *(4 copies unless otherwise specified)* ▶ ITEM SEE IPP

25. OTHER THAN FULL AND OPEN COMPETITION PURSUANT TO

☐ 10 U.S.C. 2304(c) ( ) ☐ 41 U.S.C. 3304(a) ( )

26. ADMINISTERED BY

See Block 7

27. PAYMENT WILL BE MADE BY

See Payment and IPP clauses

*CONTRACTING OFFICER WILL COMPLETE ITEM 28 OR 29 AS APPLICABLE*

☐ 28. NEGOTIATED AGREEMENT *(Contractor is required to sign this document and return________copies to issuing office.)* Contractor agrees to furnish and deliver all items or perform all work requirements identified on this form and any continuation sheets for the consideration stated in this contract. The rights and obligations of the parties to this contract shall be governed by (a) this contract award, (b) the solicitation, and (c) the clauses, representations, certifications, and specifications incorporated by reference in or attached to this contract.

☒ 29. AWARD *(Contractor is not required to sign this document.)* Your offer on this solicitation is hereby accepted as to the items listed. This award consummates the contract, which consists of (a) the Government solicitation and your offer, and (b) this contract award. No further contractual document is necessary.

30a. NAME AND TITLE OF CONTRACTOR OR PERSON AUTHORIZED TO SIGN *(Type or print)*

31a. NAME OF CONTRACTING OFFICER *(Type or print)*

Jacob J. Burns

30b. SIGNATURE

30c. DATE

31b. UNITED STATES OF AMERICA

JACOB J BURNS Digitally signed by JACOB J BURNS Date: 2022.08.30 10:58:14 -04'00'

BY

31c. DATE

08/30/2022

**STANDARD FORM 1442** (REV. 8/2014) **BACK**



EXHIBIT 3

0

# STATE OF NEW MEXICO

*OFFICE OF THE STATE ENGINEER*

*District 3 Office, Deming, NM*

Mike A. Hamman, P.E.,
State Engineer

321 W. Spruce Street
Deming, New Mexico 88030
PHONE: (575) 546-2851
FAX: (575) 546-2290

May 21, 2024

FILE: MR-06

Fisher Sand & Gravel
Attention: Derek Schoonover
1302 West Drivers Way
Temp, Arizona 85284

Greetings:

Permit for Construction of public works, Highways and Roads Well MR-06-POD1, expired effective March 31, 2024.

Sincerely,

Lloyd R. Valentine III
District 3 Manager

By:
Ben Young
Domestic Well Technician II
Mount Riley Basin

BY: by
105

EXHIBIT 3

7021 0950 0000 9312 0386

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*®.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
- ☐ Return Receipt (hardcopy) $
- ☐ Return Receipt (electronic) $
- ☐ Certified Mail Restricted Delivery $
- ☐ Adult Signature Required $
- ☐ Adult Signature Restricted Delivery $

Postage
$

Total Postage and Fees
$

Postmark Here

DEMING, NM 88030
OCT 10 2023
USPS

Sent To FISHER SAND & GRAVEL c/o DEREK SCHOONOVER

Street and Apt. No., or PO Box No. 1302 WEST DRIVERS WAY

City, State, ZIP+4® TEMPE, AZ 85284

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Fisher Sand & Gravel
c/o Derek Schoonover
1302 West Drivers Way
Tempe, AZ 85284

MR-6

9590 9402 7165 1251 2940 43

2. Article Number (Transfer from service label)

7021 0950 0000 9312 0386

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature
X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)* GARCIA

C. Date of Delivery 10-13-23

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

STATE ENGINEER'S OFFICE
DEMING, NEW MEXICO
OCT 17 2023

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☐ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- Mail
- Mail Restricted Delivery
- (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

EXHIBIT 3

# STATE OF NEW MEXICO
## *OFFICE OF THE STATE ENGINEER*
*District 3 Office, Deming, NM*

Mike A. Hamman, P.E.
State Engineer

321 W. Spruce St.
Deming, New Mexico 88030
PHONE: (575) 546-2851
FAX: (575) 546-2290

October 10, 2023

FILE: MR-6

**CERTIFIED RETURN RECEIPT**
#7021 0950 0000 9312 0386

Fisher Sand & Gravel
c/o Derek Schoonover
1302 West Drivers Way
Tempe, AZ 85284

Greetings:

Review of meter records for MR-6 indicate that 3.4187 acre-feet of water was diverted from your well. Your permit allows for the diversion of 3.0 acre-feet per annum.

Records indicate that you have exceeded your annual permitted diversion by 0.4187 acre-feet.

Be advised any diversion of water made in excess of the permitted amount shall be repaid by acquiring or leasing a valid, existing consumptive use water right in an amount equal to the repayment amount and filing an application with the State Engineer for consideration.

The above-mentioned individual(s) are hereby notified to cease any further use of water without a valid water right and that any further use not permitted for this purpose will result in further compliance action.

Please inform this office within 30 days of receipt of this letter as to your intent regarding this matter to avoid further compliance action.

Sincerely,

Lloyd R. Valentine, III
District 3 Manager

By: Jennifer Galindo
Jennifer Galindo
Water Resources Manager I

EXHIBIT 3

# STATE OF NEW MEXICO
## OFFICE OF THE STATE ENGINEER
District 3 Office, Deming, NM

Mike A. Hamman, P.E.
State Engineer

321 W. Spruce St.
Deming, New Mexico 88030
PHONE: (575) 546-2851
FAX: (575) 546-2290

March 27, 2023

File: MR-00006

Fisher Sand & Gravel
c/o Derek Schoonover
1302 West Drivers Way
Tempe, AZ 85284

Greetings:

Enclosed is your copy of Construction of Public Works, Highways and Roads Permit MR-00006-POD1, which has been approved.

Your attention is called to specific conditions of approval under permit MR-00006-POD1, which state as follows:

5a. The well owner shall cause to be installed, a totalizing meter before the first branch of the discharge line from the well and the installation shall be acceptable to the State Engineer; the Engineer shall be advised of the make, model, serial number, date of installation, and initial reading of the meter prior to appropriation of water; pumping records shall be submitted to the District Supervisor for each calendar month on or before the 10th day of the following month.

10. Total diversion from all wells under this permit number shall not exceed 3 acre-feet per annum.

15. This permit authorizes the temporary diversion and use of water for prospecting, mining or construction of public works, highways and roads or drilling operations designed to discover or develop the natural mineral resources of the state. The total diversion of water under this permit shall not exceed 3 acre-feet per year. Diversion and use of water under this permit shall not exceed a period of one year from the date of approval.

This permit will expire March 31, 2024.

Sincerely,

Lloyd R. Valentine III
District 3 Manager

By: Jennifer Galindo
Jennifer Galindo
Water Resources Manager I

JG:jg
Encl: Approved permit
Meter Installation Forms
cc: State Engineer

EXHIBIT 3

6TH JUDICIAL DISTRICT
LUNA COUNTY NM
FILED IN MY OFFICE
8/27/2026 8:40 AM
MARGARITA GOMEZ
DISTRICT COURT CLERK
Liberty Gigante

**STATE OF NEW MEXICO**
**COUNTY OF LUNA**
**SIXTH JUDICIAL DISTRICT COURT**

**ELIZABETH ANDERSON, P.E.**, New Mexico State Engineer,

Plaintiff,

**v.**

**No.** D-619-CV-2026-00332
Water Region 2

**UNITED STATES OF AMERICA**,

Defendant.

**BARNARD CONSTRUCTION COMPANY, INC.**,

Defendant.

**WYATT DRILLING ARIZONA, LLC;** and **VINCENT WYATT**, aka **VINNIE WYATT**, **DBA: H.E. BEEMAN WELL DRILLING**, **BEEMAN DRILLING CO.**, **BEEMAN DRILLING**, **BEEMAN WELL DRILLING**, **WYATT DRILLING**, and **WYATT DRILLING, INC.**,

Defendant.

**CASCADE DRILLING, LP**; and **ANDREW WHITSELL, DBA: CASCADE ENVIRONMENTAL, LLC, CASCADE ENVIRONMENTAL, CASCADE DRILLING,**

Defendant.

**<u>EXHIBITS – 4 THROUGH 5</u>**

**<u>PART 2 OF 5</u>**

**COMPLAINT TO ENJOIN THE ILLEGAL DIVERSION AND USE OF WATER AND FOR PAYBACK OF ILLEGALLY APPROPRIATED WATER**

File No. MR-00010

# NEW MEXICO OFFICE OF THE STATE ENGINEER

Office of the State Engineer · Interstate Stream Commission

***APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS IN ACCORDANCE WITH SECTIONS 72-12-1.1, 72-12-1.2, OR 72-12-1.3 NEW MEXICO STATUTES***

Great Seal of the State of New Mexico 1912

5-

3-23391

For fees, see State Engineer website: http://www.ose.state.nm.us/

**1. APPLICANT(S)**

| | |
|---|---|
| Name: SLSCO, Ltd - Fed Services Div | Name: |
| Contact or Agent: check here if Agent ☐ Matthew Hetzler - Div Vice President | Contact or Agent: check here if Agent ☐ |
| Mailing Address: Po Box 17017 | Mailing Address: |
| City: Galveston | City: |
| State: Texas Zip Code: 77552 | State: Zip Code: |
| Phone: 713-204-2070 ☐ Home ■ Cell<br>Phone (Work): | Phone: ☐ Home ☐ Cell<br>Phone (Work): |
| E-mail (optional): clankford@sisco.com or bfrabotta@slsco.com | E-mail (optional): |

☒ Check here if existing well. Enter OSE File No. MR-00006-POD1

**2. WELL LOCATION Required: Coordinate location must be New Mexico State Plane (NAD 83), UTM (NAD 83), <u>or</u> Lat/Long (WGS84). District II (Roswell) and District VII (Cimarron) customers, provide a PLSS location in addition to above.**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| NM State Plane (NAD83) - In feet | NM West Zone ☐<br>NM Central Zone ☐<br>NM East Zone ☐ | X (in feet):<br>Y (in feet): | | | | | |
| UTM (NAD83) - In meters | UTM Zone 13N ☐<br>UTM Zone 12N ☐ | Easting (in meters):<br>Northing (in meters): | | | | | |
| Lat/Long (WGS84) - To 1/10th of second<br>☐ Check if seconds are decimal format | Lat: | 31 | deg | 47 | min | 2.40 | sec |
| | Long: | 107 | deg | 10 | min | 35.90 | sec |

STATE ENGINEERS OFFICE DEMING, NEW MEXICO SEP 17 2020

| |
|---|
| Other Location Information (complete the below, if applicable):<br>PLSS Quarters or Halves: Part of Gov't Lot 4 Section: 17 Township: 29S Range: 03W |
| County: Dona Ana |
| Land Grant Name (if applicable): |
| Lot No: Block No: Unit/Tract: Subdivision: |
| Hydrographic Survey: Map: Tract: |
| Other description relating well to common landmarks, streets, or other: |
| **Well is on Land Owned by (Required):** Federal Government |

FOR OSE INTERNAL USE

Application for Permit, Form wr-01, Rev 6/30/17

| | | |
|---|---|---|
| File No.: MR-00010 | Trn. No.: 678796 | Receipt No.: |
| Well Tag ID No. (if applicable): 3015C | Sub-Basin: MR | Log Due Date: |



EXHIBIT 4

**3. PURPOSE OF USE**

- ☐ Domestic use for one household
- ☐ Livestock watering
- ☐ Domestic use for more than one household. Number of households _____ Note: List each lot and owner contact information.
- ☐ Drinking and sanitary uses that are incidental to the operations of a governmental, commercial, or non-profit facility
- ☐ Prospecting, mining or drilling operations to discover or develop natural resources
- ■ Construction of public works, highways and roads
- ☐ Domestic use for one household and livestock watering
- ☐ Domestic use for multiple households and livestock watering
- ☐ Domestic well to accompany a house or other dwelling unit constructed for sale
- ☐ New well (with new purpose)
- ☐ Amend purpose of use on existing well
- ☐ No change in purpose

**4. WELL INFORMATION: CHECK THOSE THAT APPLY** ☒ Existing Well ☐ Known Artesian

| | | |
|---|---|---|
| File Information: (If existing well, provide OSE no. & indicate below if well is to be replacement, repaired or deepened, or supplemental. If new well, leave blank, as OSE must assign no.) | | |
| OSE Well No.(If Existing) MR-00006-POD1 | New Well No. (provided by OSE) | |
| **Well Driller Name:** Javier Diaz | **Well Driller License Number:** WD-0782 | |
| Approximate Depth of Well (feet): 440 | Outside Diameter of Well Casing (inches): 6.00 | |
| ☐ Replacement well<br>(List all existing wells if more than one): | ☐ Repair or Deepen:<br>☐ Clean out well to original depth<br>☐ Deepen well from _____ to _____ ft.<br>☐ Other (Explain): | ☐ Supplemental well<br>(List OSE No. for all wells this will supplement): |

**5. ADDITIONAL STATEMENTS OR EXPLANATIONS (Use additional sheets if necessary)**

WELL WILL BE USED TO FILL TRUCKS FOR DUST CONTROL AND VARIOUS OTHER CONSTRUCTION PURPOSES FOR THE BORDER BARRIER PROJECT. USACE CONTRACT NUMBER W912PP19C0018.

STATE ENGINEERS OFFICE
DEMING, NEW MEXICO
SEP 17 2020

**ACKNOWLEDGEMENT**

I, We (name of applicant(s)), SLSCO, Ltd - Matthew Hetzler
Print Name(s)

affirm that the foregoing statements are true to the best of (my, our) knowledge and belief.

Leslie Soto [signature] on behalf of Matthew Hetzler

Applicant Signature Applicant Signature

**ACTION OF THE OFFICE OF THE STATE ENGINEER (FOR OSE USE ONLY)**

This application is approved subject to the attached general and specific conditions of approval.

Witness my hand and seal this 18th day of Septmeber 20 20 , for the New Mexico State Engineer,

By: [signature] Teresa Montellano/Domestic Well Technician
Signature Print

FOR OSE INTERNAL USE

Well Tag ID Issued? ☐ Yes ☐ No

Application for Permit, Form wr-01, Rev 6/30/17

| | | |
|---|---|---|
| File No.: MR-00010 | Trn No.: 678796 | Well ID Tag No.: 3015C |



EXHIBIT 4

**NEW MEXICO STATE ENGINEER OFFICE**
**APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS**
**IN ACCORDANCE WITH SECTION 72-12-1 NEW MEXICO STATUTES**

**GENERAL CONDITIONS OF APPROVAL (A thru R)**

17-A The maximum combined diversion of all wells that may be appropriated under this permit is 3.000 acre-feet in any year (One acre-foot equals 325,851 gallons).

17-B The well shall be drilled by a driller licensed in the State of New Mexico in accordance with 72-12-12 NMSA 1978. A licensed driller shall not be required for the construction of a well driven without the use of a drill rig; provided that the casing shall not exceed two and three-eighths (2 3/8) inches outside diameter.

17-C The well driller must file the well record with the State Engineer and the applicant within 30 days after the well is drilled or driven. It is the well owner's responsibility to ensure that the well driller files the well record. The well driller may obtain the well record form from any District Office or the Office of the State Engineer website.

17-D The production casing shall not exceed 7 inches outside diameter except under specific conditions in which reasons satisfactory to the State Engineer are shown.

17-E To request a change to the purpose of use of water authorized under this permit, the permittee shall file an application with the State Engineer.

17-F An application for a new 72-12-1.1 NMSA 2003 domestic well permit where the proposed point of diversion is to be located on the same legal lot of record as an operational 72-12-1.1 NMSA domestic well shall be treated as an application for a supplemental well and the combined diversion may not exceed the maximum annual diversion permitted.

17-G If artesian water is encountered, the well driller shall comply with all rules and regulations pertaining to the drilling and casing of artesian wells.

17-H The drilling of the well and amount and uses of water permitted are subject to such limitations as may be imposed by a court or by lawful municipal or county ordinance which are more restrictive than the conditions of this permit and applicable State Engineer regulations.

Trn Desc: MR 00010 PUBLIC WORKS File Number: MR 00010
Log Due Date: ________ Trn Number: 678796
Form: wr-01 

EXHIBIT 4

**NEW MEXICO STATE ENGINEER OFFICE**
**APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS**
**IN ACCORDANCE WITH SECTION 72-12-1 NEW MEXICO STATUTES**

**GENERAL CONDITIONS OF APPROVAL (Continued)**

17-I The permittee shall utilize the highest and best technology available to ensure conservation of water to the maximum extent practical.

17-J The well shall be set back a minimum of 50 ft. from an existing well of other ownership unless a variance has been granted by the State Engineer. The State Engineer may grant a variance for a replacement well or to allow for maximum spacing of the well from a source of groundwater contamination. The well shall be set back from potential sources of contamination in accordance with federal, state, and local requirements.

17-K Pursuant to section 72-8-1 NMSA 1978, the permittee shall allow the State Engineer and OSE representatives entry upon private property for the performance of their respective duties, including access to the ditch or acequia to measure flow and also to the well for meter reading and water level measurement.

17-L The permit is subject to cancellation for non-compliance with the conditions of approval or if otherwise not exercised in accordance with the terms of the permit.

17-M The right to divert water under this permit is subject to curtailment by priority administration as implemented by the State Engineer or a court.

17-N In the event of any change of ownership to this permit the new owner shall file a change of ownership form with the State Engineer in accordance with Section 72-1-2.1 NMSA 1978.

17-O This well permit shall automatically expire unless the well is completed and the well record is filed with the State Engineer within one year of the date of issuance of the permit.

17-P The well shall be constructed, maintained, and operated to prevent inter-aquifer exchange of water and to prevent loss of hydraulic head between hydrogeologic zones.

17-Q The State Engineer retains jurisdiction over this permit.

**NEW MEXICO STATE ENGINEER OFFICE**
**APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS**
**IN ACCORDANCE WITH SECTION 72-12-1 NEW MEXICO STATUTES**

**GENERAL CONDITIONS OF APPROVAL (Continued)**

17-R The State Engineer shall supply a well identification tag for the well driller to firmly affix to the well casing or cap with a steel band upon completion in accordance with Subsection M of 19.27.4.29 NMAC.
The permit holder is responsible for maintaining the well identification tag.

Well Tag(s) associated with this permit:
3015C

**SPECIFIC CONDITIONS OF APPROVAL**

17-5A The well owner shall cause to be installed, a totalizing meter before the first branch of the discharge line from the well and the installation shall be acceptable to the State Engineer; the Engineer shall be advised of the make, model, serial number, date of installation, and initial reading of the meter prior to appropriation of water; pumping records shall be submitted to the District Supervisor for each calendar month on or before the 10th day of the following month.

17-10 Total diversion from all wells under this permit number shall not exceed 3.000 acre-feet per annum.

17-15 This permit authorizes the temporary diversion and use of water for prospecting, mining or construction of public works, highways and roads or drilling operations designed to discover or develop the natural mineral resources of the state. The total diversion of water under this permit shall not exceed 3.000 acre-feet per year. Diversion and use of water under this permit shall not exceed a period of one year from the date of approval.

**NEW MEXICO STATE ENGINEER OFFICE**
**APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS**
**IN ACCORDANCE WITH SECTION 72-12-1 NEW MEXICO STATUTES**

## ACTION OF STATE ENGINEER

This application is approved for the use indicated, subject to all general conditions and to specific conditions listed above.

Witness my hand and seal this 18 day of Sep A.D., 2020

John R. D Antonio, Jr., P.E. , State Engineer

By: [signature]
Teresa Montellano
Domestic Well Technician
Mount Riley Basin

Trn Desc: MR 00010 PUBLIC WORKS
Log Due Date: ________
Form: wr-01

File Number: MR 00010
Trn Number: 678796



EXHIBIT 4

SLS

Construction Trailers. Construction equipment will be stored to the North of the patrol road in a location, deemed secure by the contractor, close to the active construction area

## Secondary Site - Yard A

***Exhibit D*** shows the intended location of Yard A. Presently, the intended use of Yard A is for construction crew vehicle parking. There is a potential that Yard A will be used for other construction purposes, in the future, including but not limited to panel fabrication, panel storage, and/or concrete production. The ultimate function of Yard A will be determined by SLS to meet construction requirements of the project.

## Secondary Site - Yard B

***Exhibit E*** shows the proposed location for Yard B. SLS plans to establish a water well on the East side of Yard B. Currently, the water well is planned to be located on the eastern side of Yard B, shown in ***Exhibit E.*** If needed in the future, Yard B usage may be expanded for construction activity including but not limited to panel fabrication, panel storage, and/or concrete production.

## Secondary Site – Yard C

***Exhibit F*** shows the proposed location for Yard C. Currently, there is not planned use for Yard C. If needed in the future, Yard C may be used for construction activity including but not limited to panel fabrication, panel storage, and/or concrete production.

## Secondary Site – Yard D

***Exhibit G*** shows the proposed location for Yard D. Currently, there is not planned use for Yard D. If needed in the future, Yard D may be used for construction activity including but not limited to panel fabrication, panel storage, and/or concrete production.

## Secondary Site – Yard E

***Exhibit H*** shows the proposed location for Yard E. Currently, there is not planned use for Yard E. If needed in the future, Yard E may be used for construction activity including but not limited to panel fabrication, panel storage, and/or concrete production.

2019 SEP 20 PM 4:26

SLS

## Secondary Site – Yard F

***Exhibit I*** shows the proposed location for Yard F. SLS plans to establish a water well within the boundaries of Yard F. If needed in the future, Yard F usage may be expanded for construction activity including but not limited to panel fabrication, panel storage, and/or concrete production.

# Construction Traffic

***Exhibit J*** outlines the primary routes, highlighted in Blue, and secondary routes, highlighted in Red, that will be used to gain access to the project site. Construction traffic will mostly utilize Highway 11 (running North to South from Deming to Columbus), Highway 9 (running East to West along the border), and the Border Patrol Road (running East to West immediately North of the border).

## Primary Site - Columbus POE Yard

The Primary Construction Yard located at the Columbus POE can be accessed by taking Highway 11 South and turning left onto the Job Site Access Road shown in ***Exhibit K***.

Once construction traffic enters the POE Yard they it will follow the designated routes outlined in ***Exhibit L***. All traffic will initially enter the Site via the Job Site Access Road. Personnel Traffic will be limited to the road immediately to the North of the Construction Trailers. Steel and Concrete Material Deliveries will follow the highlighted routes in and out of the Site. Concrete and Panel Delivery vehicles will exit the Site onto the Border Patrol Road via the highlighted routes.

## Secondary Site - Yard A

Yard A can be accessed by taking Highway 11 South and exiting to Highway 9 East. Once on Highway 9 continue East for roughly 37 miles and take a right onto County Road A006. County Road A006 intersects with the Border Patrol Road. Yard A is located just North of this intersection. This route is shown in ***Exhibit M***. If Yard A is utilized for anything other than construction crew vehicle parking in the future, a detailed traffic plan will be established.

## Secondary Site - Yard B

Yard B can be accessed by taking Highway 11 South and exiting to Highway 9 East. Once on Highway 9 continue East for roughly 29 miles and take a right onto AR-411. Yard

2019 SEP 20 PM

SLS

B would be located where AR-411 intersects with the Border Patrol Road. This route is shown in ***Exhibit N.*** Currently, Yard B has no intended use, other than housing a water well. If Yard B is utilized in the future, a detailed traffic plan will be developed.

## Secondary Site – Yard C

Yard C can be accessed by taking Highway 11 South and exiting to Highway 9 East. Once on Highway 9 continue East for roughly 24 miles and take a right onto County Road A001. Yard C would be located at the intersection of County Road A001 and Highway 9. This route is shown in ***Exhibit O.*** Currently, Yard C has no intended use. If Yard C is utilized in the future, a detailed traffic plan will be developed.

## Secondary Site - Yard D

Yard D can be accessed by taking Highway 11 South and exiting to Highway 9 East. Once on Highway 9 continue East for roughly 14 miles and take a right onto AR-6. Yard D would be located where AR-6 intersects with the Border Patrol Road. This route is shown in ***Exhibit P.*** Currently, Yard D has no intended use. If Yard D is utilized in the future, a detailed traffic plan will be developed.

## Secondary Site - Yard E

Yard E can be accessed by taking Highway 11 South and exiting to Highway 9 East. Once on Highway 9 continue East for roughly 8.5 miles and take a right onto AR-5. Yard E would be located where AR-5 intersects with the Border Patrol Road. This route is shown in ***Exhibit Q.*** Currently, Yard E has no intended use. If Yard E is utilized in the future, a detailed traffic plan will be developed.

## Secondary Site – Yard F

Yard F can be accessed by taking Highway 11 South and exiting to Highway 9 East. Once on Highway 9 continue East for roughly 24 miles and take a right onto County Road A001. Yard F will be located along the western fork of County Road A001. This route is shown in ***Exhibit R.*** Currently, Yard F has no intended use, other than housing a water well. If Yard F is utilized in the future, a detailed traffic plan will be developed.

SEP 20 PM 4:20

SLS

Note:

1. All work will be done on federal lands and adjacent to the project area.
2. Presently, there are no known utility conflicts within the project area.
3. Contractor will secure all necessary well drilling permits and permissions from appropriate state, and local agencies and private parties who may hold water rights.
4. Currently, at the start of the project, there is the need for two water wells, one in Yard B (shown in ***Exhibit E***) and one in Yard F (shown in ***Exhibit I***) but as the project moves forward the need for more water wells may also be desired. Contractor will contact USACE to confirm any additional water well locations are acceptable prior to drilling/usage.
5. Contractor will be responsible for closing and securing water well once operations and work requiring water no longer exist for this specific project.
6. The Government will not be responsible for providing access to any private land or securing land leases that the contractor may desire for use. Contractor is solely responsible for negotiating and executing leases of private land, such as that shown in ***Exhibit B***.

2019 SEP 20 PM 4:20

U.S. Customs and Border Protection

US Army Corps of Engineers®

**Project:** El Paso Project 1 - FY19 Pedestrian and Vehicle Fence Replacement Project (46 Miles)

**Contract #:** W912PP-19-C0018

# Construction Site Plan and Traffic Control Plan – Rev5

# (For Real Estate)

**Submittal ID Number:** 28

**Submittal Type:** SD-01 Preconstruction Submittal

**Section:** 01 50 00 **Item #:** 1

**Submittal Date:** 8/30/2019

**Prime Contractor**

SLSCO LTD
6702 Broadway
Galveston, TX 77550

SLS

SEP 20 PM 4:28

SLS

## Project Overview

The El Paso Project 1 - FY19 Pedestrian and Vehicle Fence Replacement Project (NM-46) is divided into 6 Segments (A through F), shown in ***Exhibit A.*** The project is centered around the Port of Entry (POE) located in Columbus New Mexico with Segments A, B, and C located to the East of the POE and Segments D, E, and F to the West.

The primary construction yard is located to the immediate East of the Columbus POE and will consist of a fabrication yard, a concrete batch plant, construction trailers, vehicle parking and equipment storage. A secondary laydown yard, referred to as Yard A, will be located at the far Eastern extent of the project in Segment A. Auxiliary laydown yards, referred to as Yards B through E, may be required at a later date.

## Construction Site Plan

### Primary Site - Columbus POE Yard

The primary construction yard will be located in the vicinity of the Columbus POE. The Columbus POE Yard will have the following features:

- Construction Trailers for SLS and USACE.
- Vehicle Parking and Equipment Storage located adjacent to the Construction Trailers.
- A Fabrication Yard, including storage for raw materials and completed panels.
- A Concrete Batch Plant

***Exhibit B*** illustrates the location and layout of the Columbus POE Yards features.

Raw material will be received and stored at the fabrication area. Panel fabrication will occur in the fabrication area. Once panels have been fabricated they will be transported to the jobsite via the highlighted routes shown in ***Exhibit I.*** They will be staged to the north of the patrol road, within the Roosevelt Easement, in stacks of 8 panels spaced 64 feet apart. All equipment required for panel fabrication will be stored in the fabrication area at night and on weekends. ***Exhibit C*** outlines the intended general layout of the Fabrication Yard.

The Batch Plant will be used to produce the concrete used during the construction process. All material used for concrete production will be delivered to the Batch Plant. Equipment used for the production and delivery of concrete will be stored at the batch plant at night and on weekends.

On-site personnel will operate out of the Construction Trailers located at the Columbus POE Yard. Vehicle parking for on-site personnel will be provided adjacent to the

2019 SEP 20 PM 4:20


Untitled Map
Write a description for your map.
Exhibit A
Segment F (1.1 mi)
Segment E
Segment D (5.5 mi)
Columbus POE Yard
Puerto Palomas
Yard E
Yard D
Segment C (9.2 mi)
Segment B (9.32 mi)
Yard C
Yard F
Yard B
Segment A (13.8 mi)
Yard A
Casas Grandes
Legend
Puerto Palomas
Yard
Google Earth
10 mi

EXHIBIT 4


Untitled Map
Write a description for your map.
Exhibit B
*All lands shown in this Exhibit are private property, leasing of these properties is solely the responsibility of the contractor.
Vehicle Parking + Equipment Storage
Construction Trailers
Laydown/Fabrication Area Vehicle Parking + Equipment Storage
Batch Plant Vehicle Parking + Equipment Storage
Legend
Google Earth
700 ft

EXHIBIT 4


Exhibit C
LAYDOWN YARD LOCATION MAP
LAYDOWN YARD SATELLITE MAP VIEW
POINT OF EGRESS FROM CONTENTO AVENUE
POINT OF EGRESS FROM PLATA AVENUE AREA
POINT OF EGRESS DIRT ROAD
LAYDOWN YARD AREA
POINT OF EGRESS TO DIRT ROAD
READY TO WELD
PANEL STORAGE
ROAD WAY
CUT BOLLARDS
PLAN VIEW
LAYDOWN YARD AREA
AND EQUIPMENT LOCATION PLAN
N
EL PASO PROJECT 1
FY19 PEDESTRIAN AND VEHICLE FENCE
REPLACEMENT COLUMBUS NEW MEXICO
LAYDOWN YARD GENERAL PLAN


Untitled Map
Write a description for your map.
Exhibit D
Yard A
Laydown Area
Twp 29S, R 2W, Sec 15
Legend
Google Earth

EXHIBIT 4




2019 SEP 20 PM 4:25

EXHIBIT 4


Untitled Map
Write a description for your map.
Yard C
Potential Laydown Area
Twp 29S, R 4W, Sec 9
A002
Exhibit F
Legend
Google Earth


Untitled Map
Write a description for your map.
Yard D
Potential Laydown Area
Exhibit G
Legend
Google Earth

EXHIBIT 4


Untitled Map
Write a description for your map.
Yard E
Potential Laydown Area
Twp 29S, R 6W, Sec 18
Exhibit H
Google Earth
Legend

EXHIBIT 4


Untitled Map
Write a description for your map.
Exhibit I
Approximate Planned
Water Well Location
Yard F
Potential Laydown Area
Twp 29S, R 4W, Sec 18
Legend
Puerto Palomas
Yard
Google Earth

EXHIBIT 4


Untitled Map
Write a description for your map.
Exhibit J
County Road 4A
Highway 11
Highway 9
County Road 7
Columbus POE Yard
Puerto Palomas
Yard E
Yard D
AR-5
AR-6
Casas Grandes
Yard C
Yard F
AR-411
Yard B
Border Patrol Road
County Road A006
Yard A
Legend
Puerto Palomas
Yard
Google Earth


Untitled Map
Write a description for your map.
Exhibit K
Highway 11
Job Site Access Road
Columbus POE Yard
Border Patrol Road
Highway 9
Puerto Palomas
Columbus
Google Earth
Legend

EXHIBIT 4


Untitled Map
Write a description for your map.
Legend
Personnel Traffic
Steel Material Deliveries
Concrete Material Deliveries
Concrete Deliveries to Site
Panel Delivery to Site
Exhibit C
Google Earth

EXHIBIT 4


Untitled Map
Write a description for your map.
Exhibit M
Highway 9
Border Patrol Road
County Road A006
Yard A
Legend
Google Earth

EXHIBIT 4


Untitled Map
Write a description for your map.
Highway 9
Border Patrol Road
Yard B
AR-411
Exhibit N
Legend
Google Earth

EXHIBIT 4


Untitled Map
Write a description for your map.
Highway 9
Exhibit O
Yard C
A001 County Rd
County Road A001
Border Patrol Road
Google Earth
Legend

EXHIBIT 4


Untitled Map
Write a description for your map.
Highway 9
Border Patrol Road
Yard D
AR-6
Exhibit P
9
Google Earth
Legend

EXHIBIT 4


Untitled Map
Write a description for your map.
Border Patrol Road
Highway 9
Yard E
AR-5
Exhibit Q
Google Earth
Legend

EXHIBIT 4


Untitled Map
Write a description for your map.
B002
Yard F
Highway 9
Exhibit R
County Road A001
Border Patrol Road
Legend
Puerto Palomas
Yard
Google Earth
4000 ft

EXHIBIT 4

# STATE OF NEW MEXICO
## OFFICE OF THE STATE ENGINEER
*District 3 Office, Deming, NM*

John R. D'Antonio Jr. P.E
State Engineer

321 W. Spruce St.
Deming, New Mexico 88030
PHONE: (575) 546-2851
FAX: (575) 546-2290

September 18, 2020

FILE: MR-00010

SLSCO, Ltd
Attn: Matthew Hetzier
PO Box 17017
Galveston, TX 77553

Greetings:

Enclosed is your copy of Permit for Construction of Public Works, Highways and Roads, MR-00010-POD-MR-00006-POD1, which has been approved.

Your attention is called to the Condition of Approval under Permit MR-00010, which state as follows:

5a. The well owner shall cause to be installed, a totalizing meter before the first branch of the discharge line from the well and the installation shall be acceptable to the State Engineer; the Engineer shall be advised of the make, model, serial number, date of installation, and initial reading of the meter prior to appropriation of water; pumping records shall be submitted to the District Supervisor for each calendar month on or before the 10th day of the following month.

10 Total diversion from all wells under this permit number shall not exceed 3 acre-feet per annum.

15 This permit authorizes the temporary diversion and use of water for prospecting, mining or construction of public works, highways and roads or drilling operations designed to discover or develop the natural mineral resources of the state. The total diversion of water under this permit shall not exceed approved div acre-feet per year. Diversion and use of water under this permit shall not exceed a period of one year from the date of approval.

Sincerely,

Lloyd R. Valentine III
District 3 Manager

By: [signature]
Teresa Montellano
Domestic Well Technician
Mount Riley Basin

TM:tm
Encl: Approved Permit
Metering Installation Form
cc: State Engineer

EXHIBIT 4

File No. MR-12

# NEW MEXICO OFFICE OF THE STATE ENGINEER

Office of the State Engineer — NM Interstate Stream Commission

## APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS IN ACCORDANCE WITH SECTIONS 72-12-1.1, 72-12-1.2, OR 72-12-1.3 NEW MEXICO STATUTES

The Great Seal of the State of New Mexico 1912

For fees, see State Engineer website: http://www.ose.state.nm.us/

### 1. APPLICANT(S)

| | |
|---|---|
| Name: check if Owner ☐ check if User* ☑ CADDELL / BCCG JV | Name: check if Owner ☑ check if User* ☐ United States of America - U.S. Customs & Border Protection |
| Contact or Agent: check if Agent ☐ AURELIO PAEZ | Contact or Agent: check if Agent ☐ Joanne Peralez |
| Mailing Address: AURELIO.PAEZ@CADDELL | Mailing Address: 1300 Pennsylvania Avenue NW |
| City: 7616 HWY 28 ANTHONY NM | City: Washington |
| State: NM Zip Code: 88021 | State: DC Zip Code: 20229 |
| Phone: ☐ Home ☑ Cell<br>Phone (Work): 915 603 7499 | Phone: ☐ Home ☐ Cell<br>Phone (Work): 703 963 6210 |
| E-mail (optional): | E-mail (optional): |

RECEIVED DEC - 4 2025 Office of the State Engineer Deming, New Mexico

■ Check here if existing well. Enter OSE File No. MR-00006

Note: if there is known artesian conditions, contamination or high mineral content at the drilling location check box and attach form WD-09 to this form. ☐

### 2. WELL LOCATION

**Required:** Coordinate location must be New Mexico State Plane (NAD 83), UTM (NAD 83), or Lat/Long (WGS84). You may use a GPS, Google Earth or OSE POD Location maps to estimate location. District II (Roswell) and District VII (Cimarron) applicants must also provide PLSS!

| | | | | | | |
|---|---|---|---|---|---|---|
| NM State Plane (NAD83) - In feet | NM West Zone ☐<br>NM Central Zone ☐<br>NM East Zone ☐ | X (in feet):<br>Y (in feet): | | | | |
| UTM (NAD83) - In meters | UTM Zone 13N ☐<br>UTM Zone 12N ☐ | Easting (in meters):<br>Northing (in meters): | | | | |
| Lat/Long (WGS84) - To 1/10th of second<br>☐ Check if seconds are decimal format | Lat: 31 | deg | 47 | min | 6.00 | sec |
| | Long: 107 | deg | 10 | min | 34.00 | sec |

Other Location Information (complete the below, if applicable):

PLSS Quarters or Halves: Part of Gov't Lot 4 Section: 17 Township: 29 South Range: 03 West

County: Dona Ana

Land Grant Name (if applicable):

Lot No: Block No: Unit/Tract: Subdivision:

Hydrographic Survey: Map: Tract:

Other description relating well to common landmarks, streets, or other:

***Well is on Land Owned by (Required):** United States of America

*Any application for which the Applicant is not the landowner must be accompanied by a signed written consent of the land owner pursuant to 19.27.5.9(B) NMAC.

FOR OSE INTERNAL USE — Application for Permit, Form wr-01, Rev 1/30/2024

| | | |
|---|---|---|
| File No.: MR-00012 | Trn. No.: 794230 | Receipt No.: 3-25822 $5.00 |
| Well Tag ID No. (if applicable): 3015C | Sub-Basin: MR | Log Due Date: NA |



EXHIBIT 5

**3. PURPOSE OF USE: CHECK THOSE THAT APPLY**

- ☐ Domestic use for one household
- ☐ Livestock watering
- ☐ Domestic use for more than one household. Number of households ____ Complete and attach form WR-01m "MULTIPLE home-owner info"
- ☐ Drinking and sanitary uses that are incidental to the operations of a governmental, commercial, or non-profit facility
- ☐ Prospecting, mining or drilling operations to discover or develop natural resources
- ☒ Construction of public works, highways and roads
- ☐ Domestic use for one household and livestock watering
- ☐ Domestic use for multiple households and livestock watering ____ Complete and attach form WR-01m "MULTIPLE home-owner info"
- ☐ Domestic well to accompany a house or other dwelling unit constructed for sale
- ☐ New well (with new purpose)
- ☐ Amend purpose of use on existing well
- ☐ No change in purpose

RECEIVED
DEC - 4 2025
Office of the State Engineer
Deming, New Mexico

**4. WELL INFORMATION: CHECK THOSE THAT APPLY** ☒ Existing Well ☐ Known Artesian

File Information: (If existing well, provide OSE no. & indicate below if well is to be replacement, repaired or deepened, or supplemental. If new well, leave blank, as OSE must assign no.)

| | |
|---|---|
| OSE Well No.(If Existing) MR-00006-POD1 | New Well No. (provided by OSE) |
| **Well Driller Name:** D & J Pump & Well Service | **Well Driller License Number:** 782 |
| Approximate Depth of Well (feet): 440 | Outside Diameter of Well Casing (inches): 6.00 |

| | | |
|---|---|---|
| ☐ Replacement well<br>(List all existing wells if more than one): | ☐ Repair or Deepen:<br>☐ Clean out well to original depth<br>☐ Deepen well from ____ to ____ ft.<br>☐ Other (Explain): | ☐ Supplemental well<br>(List OSE No. for all wells this will supplement): |

**5. ADDITIONAL STATEMENTS OR EXPLANATIONS (Use additional sheets if necessary)**

Well will be used for road improvements and concrete work. Usage contract number: EPT I STN Vertical barrier & attributes: 70BD1C25F00000986

**ACKNOWLEDGEMENT**

I, We (name of applicant(s)), Aurelio Paez / CADDELL BCCG JV
Print Name(s)

affirm that the foregoing statements are true to the best of (my, our) knowledge and belief.

[signature] Applicant Signature

Applicant Signature

**ACTION OF THE OFFICE OF THE STATE ENGINEER (FOR OSE USE ONLY)**

This application is approved subject to the attached general and specific conditions of approval.

Witness my hand and seal this 12th day of December 20 25 , for the New Mexico State Engineer,

By: [signature] Signature

Jennifer Galindo/Supervisor Water Resources
Print

STATE ENGINEER · SEAL OF THE STATE OF NEW MEXICO

FOR OSE INTERNAL USE

Well Tag ID Issued? ☐ Yes ☒ No

Application for Permit, Form wr-01, Rev 1/30/2024

| | | |
|---|---|---|
| File No.: MR-00012 | Trn No.: 794230 | Well ID Tag No.: 3015C |



EXHIBIT 5

**NEW MEXICO STATE ENGINEER OFFICE**
**APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS**
**IN ACCORDANCE WITH SECTION 72-12-1 NEW MEXICO STATUTES**

17-A The maximum combined diversion of all wells that may be appropriated under this permit is 3.000 acre-feet in any year (One acre-foot equals 325,851 gallons).

17-B The well shall be drilled by a driller licensed in the State of New Mexico in accordance with 72-12-12 NMSA 1978. A licensed driller shall not be required for the construction of a well driven without the use of a drill rig; provided that the casing shall not exceed two and three-eighths (2 3/8) inches outside diameter.

17-C The well driller must file the well record with the State Engineer and the applicant within 30 days after the well is drilled or driven. It is the well owner's responsibility to ensure that the well driller files the well record. The well driller may obtain the well record form from any District Office or the Office of the State Engineer website.

17-D The production casing shall not exceed 7 inches outside diameter except under specific conditions in which reasons satisfactory to the State Engineer are shown.

17-E To request a change to the purpose of use of water authorized under this permit, the permittee shall file an application with the State Engineer.

17-F An application for a new 72-12-1.1 NMSA 2003 domestic well permit where the proposed point of diversion is to be located on the same legal lot of record as an operational 72-12-1.1 NMSA domestic well shall be treated as an application for a supplemental well and the combined diversion may not exceed the maximum annual diversion permitted.

17-G If artesian water is encountered, the well driller shall comply with all rules and regulations pertaining to the drilling and casing of artesian wells.

17-H The drilling of the well and amount and uses of water permitted are subject to such limitations as may be imposed by a court or by lawful municipal or county ordinance which are more restrictive than the conditions of this permit and applicable State Engineer regulations.

# NEW MEXICO STATE ENGINEER OFFICE
# APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS
# IN ACCORDANCE WITH SECTION 72-12-1 NEW MEXICO STATUTES

## GENERAL CONDITIONS OF APPROVAL (Continued)

17-I The permittee shall utilize the highest and best technology available to ensure conservation of water to the maximum extent practical.

17-J The well shall be set back a minimum of 50 ft. from an existing well of other ownership unless a variance has been granted by the State Engineer. The State Engineer may grant a variance for a replacement well or to allow for maximum spacing of the well from a source of groundwater contamination. The well shall be set back from potential sources of contamination in accordance with federal, state, and local requirements.

17-K Pursuant to section 72-8-1 NMSA 1978, the permittee shall allow the State Engineer and OSE representatives entry upon private property for the performance of their respective duties, including access to the ditch or acequia to measure flow and also to the well for meter reading and water level measurement.

17-L The permit is subject to cancellation for non-compliance with the conditions of approval or if otherwise not exercised in accordance with the terms of the permit.

17-M The right to divert water under this permit is subject to curtailment by priority administration as implemented by the State Engineer or a court.

17-N In the event of any change of ownership to this permit the new owner shall file a change of ownership form with the State Engineer in accordance with Section 72-1-2.1 NMSA 1978.

17-O This well permit shall automatically expire unless the well is completed and the well record is filed with the State Engineer within one year of the date of issuance of the permit.

17-P The well shall be constructed, maintained, and operated to prevent inter-aquifer exchange of water and to prevent loss of hydraulic head between hydrogeologic zones.

17-Q The State Engineer retains jurisdiction over this permit.

**NEW MEXICO STATE ENGINEER OFFICE**
**APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS**
**IN ACCORDANCE WITH SECTION 72-12-1 NEW MEXICO STATUTES**

## GENERAL CONDITIONS OF APPROVAL (Continued)

17-R The State Engineer shall supply a well identification tag for the well driller to firmly affix to the well casing or cap with a steel band upon completion in accordance with Subsection M of 19.27.4.29 NMAC.
The permit holder is responsible for maintaining the well identification tag.

Well Tag(s) associated with this permit:
3015C

17-S Construction of a water well by anyone without a valid New Mexico Well Driller License is illegal, and the landowner shall bear the cost of plugging the well by a licensed New Mexico well driller. This does not apply to driven wells, the casing of which does not exceed two and three-eighths inches outside diameter.

17-T You, the permittee, are required to email nm.driller@ose.nm.gov with the following information when the driller is enroute to the drilling site:
OSE File number, POD number, physical address, driller company and license number, and date/time driller is to be on site.

## SPECIFIC CONDITIONS OF APPROVAL

17-5A The well owner shall cause to be installed, a totalizing meter before the first branch of the discharge line from the well and the installation shall be acceptable to the State Engineer; the Engineer shall be advised of the make, model, serial number, date of installation, and initial reading of the meter prior to appropriation of water; pumping records shall be submitted to the District Supervisor for each calendar month on or before the 10th day of the following month.

17-10 Total diversion from all wells under this permit number shall not exceed 3.000 acre-feet per annum.

17-15 This permit authorizes the temporary diversion and use of water for prospecting, mining or construction of public works, highways and roads or drilling operations designed to discover or develop the natural mineral resources of the state. The total diversion of water under this permit shall not exceed 3.000 acre-feet per year. Diversion and use of water under this permit shall not exceed a period of one year from the date of approval.

**NEW MEXICO STATE ENGINEER OFFICE**
**APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS**
**IN ACCORDANCE WITH SECTION 72-12-1 NEW MEXICO STATUTES**

**ACTION OF STATE ENGINEER**

This application is approved for the use indicated, subject to all general conditions and to specific conditions listed above.

Witness my hand and seal this 12 day of Dec A.D., 2025

Elizabeth K. Anderson, P.E., State Engineer

By: [signature]
JENNIFER GALINDO

STATE ENGINEER STATE OF NEW MEXICO — GREAT SEAL OF THE STATE OF NEW MEXICO 1912

CADDELL
CONSTRUCTING WHAT MATTERS

**AURELIO PAEZ**
*Project Manager*

D: (334) 651.7824
E: aurelio.paez@caddell.com

445 Dexter Avenue, Suite 11000 | Montgomery, AL 36104 | 334.272.7723

EXHIBIT 5

1300 Pennsylvania Avenue NW
Washington, D.C. 20229

U.S. Customs and
Border Protection

December 2, 2025

Ms. Jennifer Galindo
Office of the State Engineer – District 3
321 West Spruce Street
Deming, New Mexico 88030
Transmitted by email to: *jennifer.galindo@ose.nm.gov*

Dear Ms. Galindo:

U.S. Customs and Border Protection (CBP) has awarded a contract to BCCG Joint Venture to construct border barrier in Santa Teresa, New Mexico, which requires the use of a water well. As part of the contract, CBP has authorized BCCG Joint Venture to apply for a permit use of a water well on behalf of the Government in order to "install both potable and non-potable water service and distribution piping in sizes and pressures adequate for construction and temporary facilities."

CBP authorizes Aurelio Paez from Caddell, of BCCG Joint Venture, to sign the Office of the State Engineer application for a permit to use underground waters on its behalf and all payments and coordination will be with BCCG Joint Venture. Should you have any questions or concerns, please contact Joanne Peralez (U.S. Border Patrol Program Management Office Directorate, Infrastructure Portfolio Program Manager) at (703) 963-6210.

Sincerely,

Paul Enriquez
Director
Infrastructure Portfolio
Program Management Office Directorate
U.S. Border Patrol
U.S. Customs and Border Protection

RECEIVED
DEC - 4 2025
Office of the State Engineer
Deming

EXHIBIT 5

**FIELD INSPECTION REPORT**
**Basin: MR** **MR-00012**

**FILE** MR-00012
**OWNER** Caddell BCCG Joint Venture & U.S. Customs and Border Protection
**SUBJECT** Meter Inspection for Well MR-00006
**PRIORITY** N/A
**DECREE** Subfile: N/A Cause: N/A Certificate & License: NA
**SOURCE** Mount Riley Water Basin
**USE** Construction of Public Works
**POD** MR-00006, Part of Government Lot 4 of Section 17, Township 29 South, Range 03 West, N.M.P.M. Latitude 31° 47' 6.00" North Longitude 107° 10' 34.00" West
**DATE** 6/22/2026
**BY** Lloyd Valentine

**DIRECTIONS** Starting in Columbus, NM, travel East on State Highway 9 for approximately 29 miles. Turn South on gravel road towards border wall for approximately ¼ mile. Well MR-00006 will be approximately 320 feet to the East. Approximate GPS location of MR-00006 is Latitude 31° 47' 6.00" North Longitude 107° 10' 34.00" West.

**REMARKS** On April 28, 2026, Lloyd Valentine, Justin Broomfield and Jake Vega performed a field inspection of well MR-00006 to see if it was equipped with a meter and to read the meter. The well was equipped with a Flomec TM Series digital meter with a reading of 115476. The meter read in gallons and did not include a multiplier.

On June 18, 2026, Lloyd Valentine and Teresa Montellano performed a field inspection to take a meter reading and discovered that a different meter has been installed. The well is now equipped with a McCrometer meter that meter that reads in gallons with a multiplier of 10. The reading read 000013.

**SEE ATTACHED PHOTOS**

April 28, 2026, Visit:







888-80-RENTS
FRB243








120/208 VOLTS

June 18, 2026, Visit:














EXHIBIT 5


CAT
613292



# STATE OF NEW MEXICO
## OFFICE OF THE STATE ENGINEER
*District 3 Office, Deming, NM*

Elizabeth K. Anderson, P.E.
State Engineer

321 W. Spruce St.
Deming, New Mexico 88030
PHONE: (575) 546-2851
FAX: (575) 546-2290

December 15, 2025

FILE: MR-00012

CADDELL BCCG JV
c/o Aurelio Paez
7616 Highway 28
Anthony, NM 88021

Greetings:

Enclosed is your copy of permit for Construction of Public Works, Highways and Roads for well MR-00006-POD1, which has been accepted for filing.

Your attention is called to Specific Conditions of Approval, which state as follows:

5A. The well owner shall cause to be installed, a totalizing meter before the first branch of the discharge line from the well and the installation shall be acceptable to the State Engineer; the Engineer shall be advised of the make, model, serial number, date of installation, and initial reading of the meter prior to appropriation of water; pumping records shall be submitted to the District Supervisor for each calendar month on or before the 10th day of the following month.

10. Total diversion from all wells under this permit number shall not exceed 3.0 acre-feet per annum.

15. This permit authorizes the temporary diversion and use of water for prospecting, mining or construction of public works, highways and roads or drilling operations designed to discover or develop the natural mineral resources of the state. The total diversion of water under this permit shall not exceed 3.0 acre-feet per year. Diversion and use of water under this permit shall not exceed a period of one year from the date of approval.

This permit expires December 31, 2026.

Sincerely,
Lloyd R. Valentine III
District 3 Manager

By: [signature]
Jennifer Galindo
Supervisor, Water Resources

JG:jg
Encl: Approved Permit
Meter installation and Inspection Form
cc: State Engineer

EXHIBIT 5

6TH JUDICIAL DISTRICT
LUNA COUNTY NM
FILED IN MY OFFICE
8/27/2026 8:40 AM
MARGARITA GOMEZ
DISTRICT COURT CLERK
Liberty Gigante

**STATE OF NEW MEXICO**
**COUNTY OF LUNA**
**SIXTH JUDICIAL DISTRICT COURT**

**ELIZABETH ANDERSON, P.E.**, New Mexico State Engineer,

Plaintiff,

**v.**

**No.** D-619-CV-2026-00332
Water Region 2

**UNITED STATES OF AMERICA**,

Defendant.

**BARNARD CONSTRUCTION COMPANY, INC.**,

Defendant.

**WYATT DRILLING ARIZONA, LLC;** and **VINCENT WYATT**, aka **VINNIE WYATT**, **DBA: H.E. BEEMAN WELL DRILLING**, **BEEMAN DRILLING CO.**, **BEEMAN DRILLING**, **BEEMAN WELL DRILLING**, **WYATT DRILLING**, and **WYATT DRILLING, INC.**,

Defendant.

**CASCADE DRILLING, LP**; and **ANDREW WHITSELL, DBA: CASCADE ENVIRONMENTAL, LLC, CASCADE ENVIRONMENTAL, CASCADE DRILLING,**

Defendant.

**<u>EXHIBITS – 6 THROUGH 15</u>**

**<u>PART 3 OF 5</u>**

**COMPLAINT TO ENJOIN THE ILLEGAL DIVERSION AND USE OF WATER AND FOR PAYBACK OF ILLEGALLY APPROPRIATED WATER**

File No. PL-00014

# NEW MEXICO OFFICE OF THE STATE ENGINEER

Office of the State Engineer — NM — Interstate Stream Commission

Great Seal of the State of New Mexico 1912

## APPLICATION FOR PERMIT TO CHANGE AN EXISTING WATER RIGHT

**(Non 72-12-1)** For fees, see State Engineer website: http://www.ose.state.nm.us/

(check applicable boxes):

☐ Check here if regionalizing pursuant to NMSA 1978, §§ 62-20-1 through 62-20-7 (Attach Articles of Incorporation and plats)

| | | |
|---|---|---|
| ■ Change Purpose of Use<br>■ Ground water ☐ Surface Water<br>■ Change Place of Use<br>■ Groundwater ☐ Surface Water | ■ Change Point of Diversion (POD):<br>From: ■ Groundwater ☐ Surface Water<br>To: ■ Groundwater ☐ Surface Water | ☐ Additional Groundwater Point of Diversion (POD)<br>☐ Additional Surface Water Point of Diversion (POD) |

☐ Temporary Change, NMSA 1978, § 72-12-7(B) Requested Start Date: Requested End Date:
(Not to Exceed 3 ac-ft in One Year)
☐ Water Use Lease, NMSA 1978, §§ 72-6-1 to-7 Requested Start Date: Requested End Date:
■ Temporary Change (other) Requested Start Date: 06/01/2026 Requested End Date: 05/31/2028
☐ Accounting Period Start Date:

RECEIVED
MAY 12 2026
Office of the State Engineer
Deming, New Mexico

### 1. APPLICANT(S) (Required) Note: water-right owner must be listed as an applicant.

| | |
|---|---|
| Name:<br>William C. Been | Name: |
| Contact or Agent: check here if Agent ☐ | Contact or Agent: check here if Agent ☐ |
| Mailing Address:<br>PO Box 72 | Mailing Address: |
| City:<br>Hachita | City: |
| State: NM Zip Code: 88040 | State: Zip Code: |
| Phone: 575 430 3548 ☐ Home ☐ Cell<br>Phone (Work): | Phone: ☐ Home ☐ Cell<br>Phone (Work): |
| E-mail (optional): | E-mail (optional): |

### 2. CURRENT OSE FILE INFORMATION (Required)

| OSE File No(s): | Priority Date (if known): | Subfile/Cause No. (if applicable): |
|---|---|---|
| PL 00014 | 12/31/1951 | |

### 3. CURRENT PURPOSE OF USE AND AMOUNT OF WATER (Required)

| | |
|---|---|
| ☐ Domestic ☐ Livestock ■ Irrigation<br>☐ Municipal ☐ Industrial ☐ Commercial<br>☐ Other Use (specify): ______<br>Describe a specific use If applicable (i.e. sand & gravel washing, dairy etc): ______ | Amount of Water (acre-feet per annum): If more details are needed, type "See Comments" in "Other" field below, and explain in Additional Statements Section<br>Diversion: 120.0<br>Consumptive Use: 64.0<br>Other (include units): 40.0 |

FOR OSE INTERNAL USE — Application for Permit, Form wr-06, Rev 01/27/25

| | | |
|---|---|---|
| File No.: PL-00014 | Trn. No.: | Receipt No.: 3-2600019 |
| Trans Description (optional): PL-00014T CLWPP | | Sub-Basin: |
| Well Tag ID No. (if applicable): | PCW/LOG Due Date: | PBU Due Date: |



EXHIBIT 6

**4. COUNTY WHERE WATER RIGHT IS CURRENTLY USED (Required)**

Hidalgo

**COUNTY WHERE WATER RIGHT WILL BE MOVED (IF APPLICABLE)**

Hidalgo

RECEIVED
MAY 12 2026
Office of the State Engineer
Deming, New Mexico

**5. ADDITIONAL STATEMENTS CONCERNING THE CURRENT WATER RIGHT**

**6. CURRENT or MOVE-FROM POINT(S) OF DIVERSION (POD) (Required)**

☐ **Surface POD** OR ☐ **Ground Water POD (Well)** **Roswell Artesian Basin (check all that apply): ☐ Artesian ☐ Shallow ☐ "PPA" ("Present producing Aquifer")

Name of ditch, acequia, or spring:

Stream or water course: | Tributary of:

If application proposes a new point of diversion involving a diversion dam, storage dam, main canal, and/or pipeline, complete Attachment 2. ☐ Check here if Attachment 2 is included in this application packet.

**POD Location Required: Coordinate location must be reported in NM State Plane (NAD 83), UTM (NAD 83), or Latitude/Longitude (Lat/Long - WGS84).**
**District II (Roswell) & District VII (Cimarron) customers, provide a PLSS location in addition to above.**

☐ NM State Plane (NAD83) (Feet)
☐ NM West Zone
☐ NM East Zone
☐ NM Central Zone

☐ UTM (NAD83) (Meters)
☐ Zone 12N
☐ Zone 13N

☐ Lat/Long (WGS84) (to the nearest 1/10th of second)

| POD Number (if known): | X or Easting or Longitude: | Y or Northing or Latitude: | Provide if known: -Public Land Survey System (PLSS) (*Quarters or Halves , Section, Township, Range*) OR - Hydrographic Survey Map & Tract; OR - Lot, Block & Subdivision; OR - Land Grant Name |
|---|---|---|---|
| PL 00014 | 108° 26' 37.09" W | 31° 42' 38.77"N | SW¼ NE¼SW¼ Section 11 Township 30S Range 16W, N.M.P.M. |
| PL 00014 S | 108°26'35.76"W | 31°42'47.01"N | NW¼NE¼SW¼ Section 11 Township 30S Range 16W, N.M.P.M |
| | | | |
| | | | |
| | | | |

**NOTE: If more PODS need to be described, complete form WR-08 (Attachment 1 – POD Descriptions)**
**Additional point of diversion descriptions are attached:** ☐ **Yes** ☒ **No** **If yes, how many** ________

Point of Diversion is on Land Owned by: William C. Bean

Other description relating point of diversion to common landmarks, streets, or other:

FOR OSE INTERNAL USE | Application for Permit, Form wr-06, Rev 01/27/25

| File Number: PL-00014 | Trn Number: |
|---|---|

3-26009



EXHIBIT 6

RECEIVED
MAY 1 2 2026
Office of the State Engineer
Deming, New Mexico

## 7. CURRENT or MOVE-FROM PLACE(S) OF USE (Required)

The land is legally described by (check all that apply):

- [x] Public Land Survey System (PLSS) (quarters, section, township, range)
- [ ] Irrigation or Conservation District Map
- [ ] Hydrographic Survey Report or Map
- [ ] Subdivision
- [ ] Grant

**Complete the blocks below for all tracts of land (more than one description can be provided for a tract if available):**

| PLSS Quarters or Halves, **and/or** Name of Hydrographic Survey, **and/or** Name of Irrigation or Conservation District, **and/or** Name and County of Subdivision **and/or** Grant | PLSS Section **and/or** Map No. **and/or** Lot No. | PLSS Township **and/or** Tract No. (Please list each tract individually) **and/or** Block No. | PLSS Range | Acres | Priority |
|---|---|---|---|---|---|
| Pt. NE¼SW¼ | 11 | 30S | 16W | 40 | 12/31/1951 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | **Total Acres:** | 40 | |

Other description relating place of use to common landmarks, streets, or other:

Place of use is on land owned by (required).
If landowner differs from water right owner, written consent to sever the water right from the land temporarily.
William C. Been

Are there other sources of water for these lands? No ☐ Yes ☐ describe by OSE file number:

***Note: If on Federal or State Land, please provide copy of lease.**

****Note: Municipalities, counties, school districts, state universities, member-owned community water systems, special water users' associations and public utilities wishing to hold these water rights unused between ten and forty years, must file a Water Development Plan pursuant to 72-1-9 NMSA with this application. Check here if one is already on file.** ☐

RECEIVED
MAY 1 2 2026
OSE Deming, New Mexico

**8. MOVE-TO PURPOSE OF USE AND AMOUNT OF WATER**

| | |
|---|---|
| Check all that apply:<br>☐ Domestic ☐ Livestock ☐ Irrigation<br>☐ Municipal ☐ Industrial ☒ Commercial<br>☐ Other Use (specify): ______<br><br>Describe a specific use If applicable (i.e. sand & gravel washing, dairy etc): ______ | Amount of Water (acre-feet per annum): If more details are needed, type "See Comments" in Other field below, and explain in Additional Statements Section<br><br>Diversion: ______<br>Consumptive Use: 64.0<br>Other (include units): ______ |

**9. MOVE-TO POINT(S) OF DIVERSION (POD)** **(Complete this section ONLY if adding or replacing a POD)**

Note: if there is known artesian conditions, contamination or high mineral content at the drilling location check box and attach form WD-09 to this form. ☐

☐ **Surface POD OR** ☒ **Ground Water POD (Well)** ****Roswell Artesian Basin** (check all that apply): ☐ Artesian ☐ Shallow ☐ "PPA"

Name of ditch, acequia, or spring:

Stream or water course: Tributary of:

If application proposes a new point of diversion involving a diversion dam, storage dam, main canal, and/or pipeline, complete Attachment 2. ☐ Check here if Attachment 2 is included in this application packet.

**POD Location Required: Coordinate location must be reported in NM State Plane (NAD 83), UTM (NAD 83), or Latitude/Longitude (Lat/Long - WGS84).**
**District II (Roswell) & District VII (Cimarron) customers, provide a PLSS location in addition to above.**

☐ NM State Plane (NAD83) (Feet)
- ☐ NM West Zone
- ☐ NM East Zone
- ☐ NM Central Zone

☐ UTM (NAD83) (Meters)
- ☐ Zone 12N
- ☐ Zone 13N

☐ Lat/Long (WGS84) (to the nearest 1/10th of second)

| POD Number (if known): | X or Easting or Longitude: | Y or Northing or Latitude: | **Provide if known:** -Public Land Survey System (PLSS) (*Quarters or Halves , Section, Township, Range*) OR - Hydrographic Survey Map & Tract; OR - Lot, Block & Subdivision; OR - Land Grant Name |
|---|---|---|---|
| PL 00014 | 108° 26' 37.09" W | 31° 42' 38.77" N | SW¼NE¼SW¼ Section 11 Township 30S Range 16W, N.M.P.M |
| | | | |
| | | | |
| | | | |

**NOTE: If more PODS need to be described, complete form WR-08 (Attachment 1 – POD Descriptions)**
**Additional POD descriptions are attached:** ☐ **Yes** ☐ **No** **If yes, how many** ______

Other description relating point(s) of diversion to common landmarks, streets, or other:

Point of Diversion is on Land Owned by: William C. Been

**Note: The following information is for wells only. If more than one (1) well needs to be described, provide attachment.**

Approximate depth of well (feet): 100'
Outside diameter of well casing (inches): 12"

Driller Name: J.H. Wright
Driller License Number:

If replacing the current well, is the current well to be plugged? ☐ Yes ☐ No ☐ Not Applicable
If No, state for what use it is retained:

FOR OSE INTERNAL USE — Application for Permit, Form wr-06, Rev 01/27/25

| File Number: | Trn Number: |
|---|---|

3-26009



EXHIBIT 6

**10. MOVE-TO PLACE(S) OF USE (Complete this section ONLY if adding or changing a place of use)**
List each individually

RECEIVED
MAY 1 2 2026
Office of the State Engineer
Deming, New Mexico

The land is legally described by (check all that apply):

- ☒ Public Land Survey System (PLSS) (quarters, section, township, range)
- ☐ Irrigation or Conservation District Map
- ☐ Hydrographic Survey Report or Map
- ☐ Subdivision
- ☐ Grant

**Complete the blocks below for all tracts of land (more than one description can be provided for a tract if available):**

| PLSS Quarters or Halves, **and/or** Name of Hydrographic Survey, **and/or** Name of Irrigation or Conservation District, **and/or** Name and County of Subdivision **and/or** Grant | PLSS Section **and/or** Map No. **and/or** Lot No. | PLSS Township **and/or** Tract No. (Please list each tract individually) **and/or** Block No. | PLSS Range | Acres | Priority |
|---|---|---|---|---|---|
| Pt. NE¼SW¼ | 11 | 30S | 16W | | 12/31/1951 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | **Total Acres:** | | |

Other description relating place of use to common landmarks, streets, or other:

Place of use is on land owned by (required): William C. Been

Are there other sources of water for these lands? No ☒ Yes ☐ describe by OSE file number:

**Note: If on Federal or State Land, please provide copy of lease.**

FOR OSE INTERNAL USE

Application for Permit, Form wr-06, Rev 01/27/25

| File Number: | Trn Number: |
|---|---|



EXHIBIT 6

RECEIVED
MAY 12 2026
Office of the State Engineer
Deming, New Mexico

## 11. ACEQUIA OR COMMUNITY DITCH REQUIREMENTS

■ A. The water right is not within a Community Ditch or Acequia

☐ B. The water right is within a Community Ditch or Acequia. **If you checked box B you must:**

**1)** Attach documentary evidence provided by commissioners of the Community Ditch or Acequia confirming applicant's compliance with any applicable requirement for the change adopted by the Community Ditch or Acequia **or**

**2)** Attach an affidavit from the commissioners of the Community Ditch or Acequia stating that no such requirement has been adopted by the relevant association bylaws.

*This documentation is required pursuant to NMSA 1978 § 72-5-24.1.*

## 12. ADDITIONAL STATEMENTS OR EXPLANATIONS

Temporarily Change Purpose of Use of 40 acres of water rights under PL 00014 from irrigation to commercial purposes.



EXHIBIT 6

RECEIVED
MAY 1 2 2026
Office of the State Engineer
Deming, New Mexico

**ACKNOWLEDGEMENT**

I, We (name of applicant(s)), William C. Been
Print Name(s)

affirm that the foregoing statements are true to the best of (my, our) knowledge and belief.

William C Been
Applicant Signature

Applicant Signature

**ACTION OF THE STATE ENGINEER**

This application is:

☐ approved ☐ partially approved ☐ denied

provided it is not exercised to the detriment of any others having existing rights, and is not contrary to the conservation of water in New Mexico nor detrimental to the public welfare and further subject to the attached conditions of approval.

Witness my hand and seal this ________ day of ____________________ 20 ______, for

________________________________________, New Mexico State Engineer

By: ______________________________ ______________________________
Signature Print

Title: ______________________________
Print

☐ Check here if a new well is to be drilled under this permit.

FOR OSE INTERNAL USE

Well Tag ID Issued? ☐ Yes ☐ No

Application for Permit, Form wr-06, Rev 01/27/25

| File No.: | Trn No.: | Well ID Tag No.: |
| --- | --- | --- |



EXHIBIT 6

File Number: PL-00014
Applicant: William C. Been
County(s): Hidalgo County
Tracking ID: 30707

---

**NOTICE** is hereby given that on May 12, 2026, William C. Been, PO Box 72, Hachita, New Mexico, 88040, filed with the **STATE ENGINEER** Application No. PL-00014(T) for Permit to Temporarily Change Point of Diversion, Place and Purpose of Use of Groundwater within the Playas Underground Water Basin of the State of New Mexico.

Hidalgo is the County affected by the diversion and in which the water has been or will be put to beneficial use. This notice is ordered to be published in the Hidalgo County Herald.

The applicant is requesting to temporarily change point of diversion, place and purpose of use by discontinuing the use of well PL-00014-S, in the NW¼NE¼SW¼ of Section 11 Township 30 South, Range 16 West, N.M.P.M. located approximately at latitude 31° 42' 47.01" N, longitude 108° 26' 35.76" W and discontinue the irrigation of 40.0 acres of land located in Pt. NE¼SW¼ of Section 11, Township 30 South, Range 16 West, N.M.P.M. for an amount of water not to exceed 3.0 acre-feet per acre per annum and continue the use of existing well PL-00014, in the SW¼NE¼SW¼ Section 11, Township 30 South, Range 16 West, N.M.P.M., located at latitude 31° 42' 38.77" N, longitude 108° 26' 37.09" W to divert and consumptively use an amount of water not to exceed 64.0 acre-feet per annum for commercial purposes on land located in Pt. NE¼SW¼ of Section 11, Township 30 South, Range 16 West, N.M.P.M.

The applicant states "Temporarily Change Purpose of Use of 40 acres of water rights under PL-00014 from irrigation to commercial purposes."

The point of diversion described in this application is located approximately 18 miles south of Hachita, New Mexico in Hidalgo County.

This application is for a temporary permit and the water right will revert to the move-from points of diversion, place, and purpose of use on May 31, 2028 or upon 30 day written notice to the Office of the State Engineer.

To view the application and supporting documentation please visit the Office of the State Engineer's website, www.ose.nm.gov, select the "Notices for Publication" link at the top of the homepage, click on the county in which the application was filed, and select the relevant notice for publication.

Any person, firm or corporation or other entity asserting standing to file objections or protests shall do so in writing (objection must be legible, signed, and include the writer's complete name, phone number, email address, and mailing address). If the protest does not include the complete name, phone number, email address, and mailing address, it may be deemed invalid and not accepted for filing unless Protestant provides with the protest an affidavit stating that it does not have one of the above-listed elements/requirements (phone number, mailing address, email address, etc.). The objection to the approval of the application must be based on: (1) Impairment; if impairment, you must specifically identify your water rights; and/or (2) Public Welfare/Conservation of Water; if public welfare or conservation of water within the state of New Mexico, you shall be required to provide evidence showing how you will be substantially and specifically affected. The written protest must be filed, in triplicate, with the State Engineer, 321 W. Spruce St., Deming, NM 88030, on or before August 7, 2026. Facsimiles (faxes) will be accepted as a valid protest if the hard copy is hand-delivered or mailed and postmarked within 24-hours of the facsimile. Mailing postmark will be used to validate the 24-hour period. Protests can be faxed to the Office of the State Engineer, 575-546-2290. If no valid protest or objection is filed, the State Engineer will evaluate the application in accordance with the provisions of Chapter 72 NMSA 1978.

# FIELD INSPECTION REPORT

**Basin: HA** **PERMIT:**

| | |
|---|---|
| **FILE** | |
| **PERMIT** | |
| **OWNER** | Department of Defense/Bernard Spencer Joint Venture |
| **SUBJECT** | Field Inspection |
| **SOURCE** | Hachita Underground Water Basin |
| **USE** | Construction/Municipal |
| **POD** | |
| **CHECKED** | 03/17/2026 |
| **CHECKED BY** | Jake Vega & Karl E. Frisch |

**DIRECTIONS**

From the District III office, head West on West Spruce Street for .5 miles and turn left (south) onto the Old Lordsburg Highway (NM-418 W). After approximately 3.6 miles on Old Lordsburg Highway, turn left (south) onto Hermanas Road SW. Continue south along Hermanas Road SW for roughly 31 miles. This road terminates at State Road 9 (NM-9) at the abandoned Hermanas railhead. At the junction of Hermanas Road and Highway 9 turn right (west) onto Highway 9 towards Hachita and continue approximately 12 miles to mile marker 56. Go through the gate on the south side of the road and proceed approximately 5.3 miles south along the dirt road to the border wall. Turn left (east) and proceed approximately 1 mile to the drill site. Coordinates are approximately 31° 47' 1.93" N -108° 9' 18.66" W

**REMARKS**

On March 17, 2026, District III water rights staff received a call from Zay Clopton, a rancher in the Hachita Basin. Mr. Clopton informed staff that a well was being drilled near the border wall by contractors to the federal government. A review of current permits showed that no permit had been issued for a well in that area. A field investigation was carried out by District III staff, and it was determined that a well drilling operation was occurring, and this operation was taking place without the proper permits.

District III staff made contact at the drilling site with Jaun Carillo, employee of Wyatt Drilling. Mr. Carillo put District III staff in phone contact with Jeff Pinto of Bernard Spencer Joint Venture. Mr. Pinto said that he was nearby and available to discuss the drilling operations. After approximately 20 minutes, Jeff Pinto arrived at the site with Drew Schrader and Zach Remus of Bernard Spencer Joint Venture, and Vincent Wyatt of Wyatt Drilling Arizona, LLC. Also on site were Zay Clopton and his wife who hold the ranching lease in this area.

Jeff Pinto of Bernard Spencer Joint Venture, the operating contractor, was of the opinion that they did not need an OSE permit to construct a well within the Roosevelt Reservation. The Roosevelt Reservation is a 60-foot-wide to 150-foot-wide strip of federal land along the U.S.-Mexico border in California, Arizona, and New Mexico, established by President Theodore Roosevelt in 1907 to prevent smuggling and secure the border. Recently, it has been used to facilitate construction of the border wall and transferred to Department of Defense (War) control to increase military surveillance and migrant apprehensions. The Roosevelt Reservation as well as federal land parcels adjoining the

border are now considered an extension of Fort Huacuca, headquartered in Arizona. Mr. Pinto indicated that he had been instructed by the federal government that there was no need for a permit to drill if the well was in the reservation. Upon request of the District III staff, Mr. Pinto agreed to provide the staff with a copy of the document from the federal government that he believes gave their company and their contractor the right to drill without a permit from the State of New Mexico. A copy of this document is attached to this report.

The well driller involved in this operation is Vincent Wyatt of Wyatt Drilling Arizona, LLC. (WD# 1791). Wyatt Drilling Arizona, LLC. is operating under contract with Bernard Spencer Joint Venture. Mr. Wyatt understands the need for permitting in the State of New Mexico but deferred to the federal directive provided by Mr. Pinto.

At the time of the field inspection the well drilling operation was already at a depth of 540 feet with an intent to drill to up to 1,000 feet. At the 540-foot depth no water had yet been encountered. Given that the drilling was taking place on land controlled by the Department of War a compromise was agreed to, that drilling could continue if two provisions were met. First, an Exploratory Well permit needed to be applied for within the next 24 hours. Second, no water could be diverted until a water right was established, either purchased or appropriated or the State of New Mexico recognizes the federal directive giving them the right to divert.

Staff from the Office of the State Engineer, District III, documented the following:
Field inspection

1. Well drilling operations were underway at the time of inspection.
2. Well coordinates are approximately 31° 47’ 1.93” N -108° 9’ 18.66” W
3. Discussions with the driller revealed that the well was designed to have an 8” casing.
4. Drilling operations had reached 540 feet with no water encountered.
5. Drilling operations would continue to a depth of up to 1000 feet.

**SEE ATTACHED PHOTOS:**

**FIELD INSPECTION REPORT**

**Basin: HA** **PERMIT:**



Wyatt/Beeman Drill Rig




US DOT Number



Wyatt/Beeman Drill Rig



Arizona Department of Water Resources

"Protecting and enhancing Arizona's water supplies for current and future generations."

# Drillers List

Export to Excel

| NUM | COMPANY | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | ROC_LICENSES | QUALIFYING_PARTY | LICENSE_CURRENTLY_ACTIVE |
|---|---|---|---|---|---|---|---|---|---|---|
| 191 | GREGG DRILLING LLC | 2726 WALNUT AVE | | SIGNAL HILL | CA | 90755-1832 | (562) 427-6899 | A-4 | | A |
| 453 | H. E. BEEMAN WELL DRILLING DBA WYATT DRILLING, INC. | PO BOX 1498 | | SHOW LOW | AZ | 85902-1498 | (928) 537-1031 | R-53 & A-4 | PAUL & VINCENT WYATT | A |
| 205 | HARRIS EXPLORATION DRILLING & ASSOCIATES, INC. | PO BOX 5579 | | FALLON | NV | 89407-5579 | (760) 822-7886 | A-4 | PATRICK HARRIS | A |
| 898 | HOLT SERVICES, INC. | P.O. BOX 1659 | | MILTON | WA | 98354-1659 | 253-604-4878 | A-4 | ROBERT STADELI | A |
| 871 | HOOVER DRILLING COMPANY, LLC | PO BOX 10369 | | CASA GRANDE | AZ | 85130-0057 | (520) 251-1449 | CR-53 | TOMMY HOOVER | A |
| 733 | HYDER DRILLING, LLC | 54020 S AGUA CALIENTE RD | | DATELAND | AZ | 85333-5561 | 602-918-3651 | CR-53 | GARY E. JOHN | A |
| 816 | HYDRO RESOURCES - ROCKY MOUNTAIN, INC. | 13027 COUNTY ROAD 18 | | FORT LUPTON | CO | 80621 | (970) 381-3788 | A-4 | FRED ROTHAUGE | A |
| 847 | HYDRO-SOLUTIONS PUMP & WELL SERVICE | 2773 E LINES LN | | GILBERT | AZ | 85297-8135 | 480-277-7849 | CR-53 | BRIAN KELLY WEST | A |
| 70 | INGLE WELL & PUMP, LLC | 6274 E HIGHWAY 181 | | PEARCE | AZ | 85625-6037 | (520) 824-3574 | CR-53 | GARY L. INGLE | A |
| 904 | INTEGRITY DRILLING SERVICES | 19227 E INDIANA AVE | | QUEEN CREEK | AZ | 85142-8574 | (928) 300-2093 | A-4, R-53 | MITCHELL FERGUSON | A |
| 866 | JNJ WELL SERVICE, LLC | 11154 E VALLEJO ST | | CHANDLER | AZ | 85248-7805 | (480) 603-7083 | CR-53, A-4 | NATHANAEL REVELES | A |
| 77 | JOHN HOOVER WELL SERVICE & REPAIR | PO BOX 11330 | | CASA GRANDE | AZ | 85130-0167 | (520) 518-0012 | C-53 | JOHN & TOMMY HOOVER | A |
| 922 | JRGO, LLC DBA INTEGRITY ASSESSMENT GROUP LLC | 105 W 4TH ST | | CLARE | MI | 48617 | (830) 279-1915 | A-4 CATH PROT* | CHADD LOOMIS | A |
| 350 | K. D. HUEY COMPANY, LLC | PO BOX 488 | | CAPITAN | NM | 88316-0488 | 575-354-2246 | C-53 | KENNETH & HEATH HUEY | A |
| 562 | K. P. VENTURES WELL DRILLING & PUMP CO., LLC | PO BOX 2411 | | COTTONWOOD | AZ | 86326-2371 | (928) 639-1709 | R-53 & A-4 | KENNY PORTER AND CLAYTON THAYER | A |
| 757 | K.R. WELL DRILLING, LLC | PO BOX 1072 | | BOUSE | AZ | 85325-1072 | (928) 851-2975 | CR-53 | KEITH REFFETT | A |
| 400 | KAUFMAN CORP DBA BROWN DRILLING | 3375 N BANK ST | | KINGMAN | AZ | 86409-3605 | (928) 757-1920 | CR-53 & A-4 | JONATHAN KAUFMAN, AMANDA KAUFMAN | A |
| 394 | KM DRILLING, INC. | PO BOX 1738 | | CAMP VERDE | AZ | 86322-1738 | (928) 567-3633 | R-53 & A-4 | KENNETH E. MYERS | A |

Change page: < > | Displaying page 4 of 9, items 61 to 80 of 167.

EXHIBIT 8

| NUM | COMPANY | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | ROC_LICENSES | QUALIFYING_PARTY | LICENSE_CURRENTLY_ACTIVE |
|---|---|---|---|---|---|---|---|---|---|---|
| 924 | LAMB DRILLING LLC | 10521 S. HIDDEN HAVEN COURT | | SOUTH JORDAN | UT | 84095 | 801-834-9495 | A-4 | JASON LAMB | A |
| 859 | LAST DROP DRILLING & PUMP SERVICES, LLC | 2642 S 11900 W | | CEDAR CITY | UT | 84720-6800 | (435) 559-9357 | R-53 & A-4 | RICHARD R. PETERSEN | A |

Change page: < > | Displaying page 4 of 9, items 61 to 80 of 167.

Driving Directions to ADWR.

Arizona Department of Water Resources
1110 W. Washington St. Suite 310
Phoenix, Arizona 85007
Phone: 602.771.8500 | Fax: 602.771.8678

Copyright 2018 azwater.gov

EXHIBIT 8

◉ USDOT Number ○ MC/MX Number ○ Name

Enter Value: 2114402

Search

## Company Snapshot

**WYATT DRILLING INC**
USDOT Number: 2114402

**ID/Operations** | **Inspections/Crashes In US** | **Inspections/Crashes In Canada** | **Safety Rating**

**Other Information for this Carrier**

- SMS Results
- Licensing & Insurance

**Carriers:** If you would like to update the following ID/Operations information, please complete and submit form MCS-150 which can be obtained online or from your State FMCSA office. If you would like to challenge the accuracy of your company's safety data, you can do so using FMCSA's DataQs system.

### USDOT Status

- **ACTIVE**: The entity's US DOT number is active.
- **INACTIVE**: Inactive per 49 CFR 390.19(b)(4); biennial update of MCS-150 data not completed.
- **OUT-OF-SERVICE**: Carrier is under any type of out-of-service order and is not authorized to operate.

### Operating Authority Status

- **AUTHORIZED FOR { Passenger, Property, HHG }**: This will list the specific operating authorities the carrier (or broker) is allowed to operate.
- **NOT AUTHORIZED**: The entity does not have any operating authority and/or is not authorized to engage in interstate, for-hire operations.
  *Please Note: **NOT AUTHORIZED** does not apply to **Private** or **Intrastate** operations.
- **OUT-OF-SERVICE**: Carrier is under any type of out-of-service order and is not authorized to operate.

### Out of Service Date

Indicates the date the company was ordered Out of Service. If there are multiple Out of Service orders, the earliest date will be displayed.

**Please note:**If there are multiple Out-of-Service orders, the earliest date will be displayed.

For help on the explanation of individual data fields, click on any field name or for help of a general nature go to **SAFER General Help**.

**The information below reflects the content of the FMCSA management information systems as of 07/22/2026.**

| | | | |
|---|---|---|---|
| **USDOT INFORMATION** | | | |
| Entity Type: | CARRIER | | |
| USDOT Status: | ACTIVE | Out of Service Date: | None |
| USDOT Number: | 2114402 | State Carrier ID Number: | |
| MCS-150 Form Date: | 02/09/2026 | MCS-150 Mileage (Year): | 11,500 (2025) |
| **OPERATING AUTHORITY INFORMATION** | | | |
| Operating Authority Status: | **NOT AUTHORIZED**<br>*Please Note: NOT AUTHORIZED does not apply to Private or Intrastate operations.<br>**For Licensing and Insurance details** click here. | | |
| MC/MX/FF Number(s): | | | |
| **COMPANY INFORMATION** | | | |
| Legal Name: | WYATT DRILLING INC | | |
| DBA Name: | BEEMAN DRILLING | | |
| Physical Address: | 6776 HIGHWAY 260<br>SHOW LOW, AZ 85901 | | |
| Phone: | (928) 205-7647 | | |
| Mailing Address: | PO BOX 1498<br>SHOW LOW, AZ 85902 | | |
| DUNS Number: | -- | | |
| Power Units: | 3 | Non-CMV Units: | |
| Drivers: | 3 | | |

**Operation Classification:**

| | | |
|---|---|---|
| Auth. For Hire | Priv. Pass.(Non-business) | State Gov't |
| Exempt For Hire | Migrant | Local Gov't |
| X Private(Property) | U.S. Mail | Indian Nation |
| Priv. Pass. (Business) | Fed. Gov't | |

**Carrier Operation:**

| | | |
|---|---|---|
| Interstate | Intrastate Only (HM) | X Intrastate Only (Non-HM) |

**Cargo Carried:**

| | | |
|---|---|---|
| General Freight | Liquids/Gases | Chemicals |
| Household Goods | Intermodal Cont. | Commodities Dry Bulk |

EXHIBIT 9

| | | |
|---|---|---|
| Metal: sheets, coils, rolls | Passengers | Refrigerated Food |
| Motor Vehicles | Oilfield Equipment | Beverages |
| Drive/Tow away | Livestock | Paper Products |
| Logs, Poles, Beams, Lumber | Grain, Feed, Hay | Utilities |
| Building Materials | Coal/Coke | Agricultural/Farm Supplies |
| Mobile Homes | Meat | Construction |
| Machinery, Large Objects | Garbage/Refuse | Water Well |
| Fresh Produce | US Mail | X DRILLING EQUIPME |

## ID/Operations | Inspections/Crashes In US | Inspections/Crashes In Canada | Safety Rating

**US Inspection results for 24 months prior to: 07/22/2026**

Total Inspections: 0
Total IEP Inspections: 0
**Note:** Total inspections may be less than the sum of vehicle, driver, and hazmat inspections. Go to Inspections Help for further information.

Inspections:

| Inspection Type | Vehicle | Driver | Hazmat | IEP |
|---|---|---|---|---|
| Inspections | 0 | 0 | 0 | 0 |
| Out of Service | 0 | 0 | 0 | 0 |
| Out of Service % | 0% | 0% | 0% | 0% |
| Nat'l Average % as of DATE 06/26/2026* | 22.26% | 6.67% | 4.44% | N/A |

***OOS rates calculated based on the most recent 24 months of inspection data per the latest monthly SAFER Snapshot.**

**Inspections**

*Number of roadside inspections conducted within the past two years. (Note: These inspections are distinct from the periodic inspections required under 49 CFR Part 396.17, and may not include inspection of all parts and accessories set forth in 49 CFR Part 396 Appendix A.)*

*The inspections listed on SAFER are conducted in accordance with the North American Standard Inspection Program which was created by the Commercial Vehicle Safety Alliance (CVSA) as the roadside inspection process for inspecting commercial motor vehicles and drivers throughout North America.*

*Inspections are listed as total, driver, vehicle, and Hazmat. Please see https://www.fmcsa.dot.gov/safety/question-1-can-violation-free-cvsa-level-i-or-level-v-inspection-be-used-satisfy-periodic for more details.*

**Crashes reported to FMCSA by states for 24 months prior to: 07/22/2026**

**Note:** Crashes listed represent a motor carrierâ€™s involvement in reportable crashes, without any determination as to responsibility.

Crashes:

| Type | Fatal | Injury | Tow | Total |
|---|---|---|---|---|
| Crashes | 0 | 0 | 0 | 0 |

## ID/Operations | Inspections/Crashes In US | Inspections/Crashes In Canada | Safety Rating

**Canadian Inspection results for 24 months prior to: 07/22/2026**

Total inspections: 0
**Note:** Total inspections may be less than the sum of vehicle and driver inspections. Go to Inspections Help for further information.

Inspections:

| Inspection Type | Vehicle | Driver |
|---|---|---|
| Inspections | 0 | 0 |
| Out of Service | 0 | 0 |
| Out of Service % | 0% | 0% |

**Crashes results for 24 months prior to: 07/22/2026**

EXHIBIT 9

**Note:** Crashes listed represent a motor carrierâ€™s involvement in reportable crashes, without any determination as to responsibility.

Crashes:

| Type | Fatal | Injury | Tow | Total |
|---|---|---|---|---|
| Crashes | 0 | 0 | 0 | 0 |

ID/Operations | Inspections/Crashes In US | Inspections/Crashes In Canada | **Safety Rating**

*The Federal safety rating does not necessarily reflect the safety of the carrier when operating in intrastate commerce.*

Carrier Safety Rating:

**The rating below is current as of: 07/22/2026**

**Review Information:**

| | | | |
|---|---|---|---|
| **Rating Date:** | None | **Review Date:** | None |
| **Rating:** | None | **Type:** | None |

SAFER Home | Feedback | Privacy Policy | USA.gov | Freedom of Information Act (FOIA) | Accessibility | OIG Hotline | Web Policies and Important Links | Plug-ins

Federal Motor Carrier Safety Administration
1200 New Jersey Avenue SE, Washington, DC 20590 • 1-800-832-5660 • TTY: 1-800-877-8339 • Field Office Contacts

EXHIBIT 9

BETTER BUSINESS BUREAU

**BUSINESS PROFILE**

Share

Water Well Drilling

# Beeman Well Drilling

ACCREDITED BUSINESS
BETTER BUSINESS BUREAU

BBB Accredited Business

A+ Rated by BBB

Visit Website

(928) 205-7647

Email Business

Write a Review

MAIN GET A QUOTE REVIEWS COMPLAINTS

Overview **BBB Accreditation & Rating** About This Business Business Details Industry Tip

## Overview

**Beeman Well Drilling**
6776 AZ Hwy 260
Show Low, AZ 85902

## BBB Accreditation & Rating

We use cookies to give users the best content and online experience. By clicking “Accept All Cookies”, you agree to allow us to use all cookies. Visit our Privacy Policy to learn more.

EXHIBIT 10

This business has committed to upholding the BBB Standards for Trust.

Why choose a BBB Accredited Business?

BBB Rating

A+

More Information

How are BBB ratings calculated?

Join Trusted Businesses

Become BBB Accredited

## About This Business

This business offers commercial and residential drilling services.

**BBB Accredited Since:** 1/4/2019

**Years in Business:** 35

### Products and Services

Gas Services, Geothermal Monitoring, Irrigation, Mineral Exploration, Oil Services, Pump Repair, Pump Testing, Well Drilling, Well Maintenance

## Business Details

**Local BBB:** BBB, Mountain West & Pacific Southwest

We use cookies to give users the best content and online experience. By clicking "Accept All Cookies", you agree to allow us to use all cookies. Visit our Privacy Policy to learn more.

EXHIBIT 10

**Business Incorporated:** 7/10/1991

**Type of Entity:** Corporation

**Alternate Names:**
Wyatt Drilling Inc

**Business Management:**
Mr. William Paul Wyatt, President
Ms. Pandora Wyatt, Director/Secretary

## Additional Contact Information

**Principal Contacts**
Mr. William Paul Wyatt, President
Ms. Pandora Wyatt, Director/Secretary

**Customer Contacts**
Mr. William Paul Wyatt, President

**Additional Email Addresses**
Primary: Email this Business

**Additional Websites**
ethicalcommunity.org/beem...

**Social Media**

## Licensing information

This business is in an industry that may require professional licensing, bonding or registration. BBB encourages you to check with the appropriate agency to be certain any requirements are currently being met.

## Additional Information

**Other Resources**
Arizona Registrar of Contractors (ROC)
1700 W. Washington Street, Ste. 105
Phoenix AZ 85007
Phone Number: (602) 542-1525
Fax Number: (602) 542-1599
http://www.azroc.gov

**Business Categories**
Water Well Drilling, Water Well Pumps, Water Well Services

We use cookies to give users the best content and online experience. By clicking "Accept All Cookies", you agree to allow us to use all cookies. Visit our Privacy Policy to learn more.

EXHIBIT 10

information in Business Profiles. As a matter of policy, BBB does not endorse any product, service, or business. Businesses are under no obligation to seek BBB accreditation, and some businesses are not accredited because they have not sought BBB accreditation.

When considering complaint information, please consider the company's size and volume of transactions. Note that the nature of complaints and a company's responses to them are often more important than the number of complaints. BBB Business Profiles generally cover a three-year reporting period.

© 2026 International Association of Better Business Bureaus, Inc. (IABBB).
All rights reserved. All trademarks are property of IABBB.

We use cookies to give users the best content and online experience. By clicking "Accept All Cookies", you agree to allow us to use all cookies. Visit our Privacy Policy to learn more.

EXHIBIT 10

facebook Log In

# Wyatt drilling

19 followers • 2 following

Posts About Photos •••

## Intro

well drilling and pump service

**Page** · Contractor

2921 E Adams, Show Low, AZ, United States, Arizona

(928) 537-1031

joeywyatt.jw@gmail.com

beemandrilling.org

Open now

EXHIBIT 11

facebook Log In

## Photos

See all photos




Privacy · Consumer Health Privacy · Terms · Advertising · Ad Choices · Cookies · More

**Wyatt drilling**
April 28, 2021 ·

Great day to be drilling trying to knock these wells out because we are 8 months behind on wells

EXHIBIT 11

facebook

Log In



1

Like

Comment

**Wyatt drilling**
March 5, 2020 ·

First job for the new pulling unit

EXHIBIT 11

facebook

Log In



5

Like Comment

**Wyatt drilling**
February 21, 2020 ·

Finally back to work did some work to rig and finally dried up enough to get to work



EXHIBIT 11

facebook

Log In

Like Comment

**Wyatt drilling**
August 20, 2018 ·

Just started new well this homeowner has a sweet spot to put his new house



3

Like Comment

**Wyatt drilling**
April 18, 2018 ·

Another one about done knocking them out

EXHIBIT 11

facebook

Log In



1

1

Like

Comment

Wyatt drilling
April 6, 2018 ·

Good day of drilling

Like

Comment

Wyatt drilling
April 6, 2018 ·

EXHIBIT 11

facebook

Log In



1

2

Like

Comment

EXHIBIT 11

File No.

# NEW MEXICO OFFICE OF THE STATE ENGINEER

Office of the State Engineer — NM — Interstate Stream Commission

*APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS IN ACCORDANCE WITH SECTIONS 72-12-1.1, 72-12-1.2, OR 72-12-1.3 NEW MEXICO STATUTES*

Great Seal of the State of New Mexico 1912

For fees, see State Engineer website: http://www.ose.state.nm.us/

## 1. APPLICANT(S)

| | |
|---|---|
| Name: check if Owner ☐ check if User* ☑<br>Barnard Spencer Joint Venture | Name: check if Owner ☐ check if User* ☐ |
| Contact or Agent: check if Agent ☐<br>Drew Schrader | Contact or Agent: check if Agent ☐ |
| Mailing Address: ~~4490 NM 81~~ 26B #39 | Mailing Address: |
| City:<br>Hachita | City: |
| State: New Mexico Zip Code: 88040 | State: Zip Code: |
| Phone: (765)-412-2128 ☐ Home ☒ Cell<br>Phone (Work): | Phone: ☐ Home ☐ Cell<br>Phone (Work): |
| E-mail (optional):<br>Drew.Schrader@Barnard-inc.com | E-mail (optional): |

RECEIVED MAR 18 2026 Office of the State Engineer Deming New Mexico

☐ Check here if existing well. Enter OSE File No. ____________

Note: if there is known artesian conditions, contamination or high mineral content at the drilling location check box and attach form WD-09 to this form. ☐

## 2. WELL LOCATION

**Required:** Coordinate location must be New Mexico State Plane (NAD 83), UTM (NAD 83), or Lat/Long (WGS84). You may use a GPS, Google Earth or OSE POD Location maps to estimate location. District II (Roswell) and District VII (Cimarron) applicants must also provide PLSS!

| | | | | | | |
|---|---|---|---|---|---|---|
| NM State Plane (NAD83) - In feet | NM West Zone ☐<br>NM Central Zone ☐<br>NM East Zone ☐ | X (in feet):<br>Y (in feet): | | | | |
| UTM (NAD83) - In meters | UTM Zone 13N ☐<br>UTM Zone 12N ☐ | Easting (in meters):<br>Northing (in meters): | | | | |
| Lat/Long (WGS84) - To 1/10th of second<br>☐ Check if seconds are decimal format | Lat: 31 | deg | 47 | min | 1 | sec |
| | Long: 108 | deg | 9 | min | 16 | sec |

| | | | |
|---|---|---|---|
| Other Location Information (complete the below, if applicable): | | | |
| PLSS Quarters or Halves: | Section: | Township: | Range: |
| County: | | | |
| Land Grant Name (if applicable): | | | |
| Lot No: Block No: | Unit/Tract: | Subdivision: | |
| Hydrographic Survey: | Map: | Tract: | |
| Other description relating well to common landmarks, streets, or other: | | | |
| ***Well is on Land Owned by (Required):** | | | |

*Any application for which the Applicant is not the landowner must be accompanied by a signed written consent of the land owner pursuant to 19.27.5.9(B) NMAC.

FOR OSE INTERNAL USE — Application for Permit, Form wr-01, Rev 1/30/2024

| | | |
|---|---|---|
| File No.: | Trn. No.: | Receipt No.: 3-25935 |
| Well Tag ID No. (if applicable): | Sub-Basin: | Log Due Date: |



EXHIBIT 12

## 3. PURPOSE OF USE: CHECK THOSE THAT APPLY

- ☐ Domestic use for one household
- ☐ Livestock watering
- ☐ Domestic use for more than one household. Number of households ____ Complete and attach form WR-01m "MULTIPLE home-owner info"
- ☐ Drinking and sanitary uses that are incidental to the operations of a governmental, commercial, or non-profit facility
- ☐ Prospecting, mining or drilling operations to discover or develop natural resources
- ☒ Construction of public works, highways and roads
- ☐ Domestic use for one household and livestock watering
- ☐ Domestic use for multiple households and livestock watering ____ Complete and attach form WR-01m "MULTIPLE home-owner info"
- ☐ Domestic well to accompany a house or other dwelling unit constructed for sale
- ☐ New well (with new purpose)
- ☐ Amend purpose of use on existing well
- ☐ No change in purpose

RECEIVED MAR 1 8 2026 Office of the State Engineer Deming, New Mexico

## 4. WELL INFORMATION: CHECK THOSE THAT APPLY ☐ Existing Well ☐ Known Artesian

File Information: (If existing well, provide OSE no. & indicate below if well is to be replacement, repaired or deepened, or supplemental. If new well, leave blank, as OSE must assign no.)

| | |
|---|---|
| OSE Well No.(If Existing) | New Well No. (provided by OSE) |
| **Well Driller Name:** Wyatt Drilling Arizona LLC | **Well Driller License Number:** 1791 |
| Approximate Depth of Well (feet): ~~700~~ 1000' | Outside Diameter of Well Casing (inches): 8 |

| | | |
|---|---|---|
| ☐ Replacement well<br>(List all existing wells if more than one): | ☐ Repair or Deepen:<br>☐ Clean out well to original depth<br>☐ Deepen well from _____ to _____ ft.<br>☐ Other (Explain): | ☐ Supplemental well<br>(List OSE No. for all wells this will supplement): |

## 5. ADDITIONAL STATEMENTS OR EXPLANATIONS (Use additional sheets if necessary)

### ACKNOWLEDGEMENT

I, We (name of applicant(s)), Drew Schrader
Print Name(s)

affirm that the foregoing statements are true to the best of (my, our) knowledge and belief.

Drew Schrader Digitally signed by Drew Schrader DN: cn=Drew Schrader, ou=Project Engineers Date: 2026.03.17 15:12:46 -06'00'

Applicant Signature Applicant Signature

### ACTION OF THE OFFICE OF THE STATE ENGINEER (FOR OSE USE ONLY)

This application is approved subject to the attached general and specific conditions of approval.

Witness my hand and seal this ______ day of __________________ 20 _____ , for the New Mexico State Engineer,

By: ____________________ ____________________
Signature Print

FOR OSE INTERNAL USE

Well Tag ID Issued? Yes No

Application for Permit, Form wr-01, Rev 1/30/2024

| | | |
|---|---|---|
| File No.: | Trn No.: | Well ID Tag No.: |



EXHIBIT 12

File No. HA-00044

# NEW MEXICO OFFICE OF THE STATE ENGINEER

Office of the State Engineer
NM
Interstate Stream Commission

GREAT SEAL OF THE STATE OF NEW MEXICO 1912

***WR-07 APPLICATION FOR PERMIT TO DRILL***

***A WELL WITH NO WATER RIGHT***

(check applicable boxes):

For fees, see State Engineer website: https://www.ose.nm.gov/

| | | |
|---|---|---|
| Purpose: | ☐ Pollution Control And/Or Recovery | ☐ Ground Source Heat Pump |
| ▣ Exploratory Well*(Pump test) | ☐ Construction Site/Public Works Dewatering | ☐ Other(Describe): |
| ☐ Monitoring Well | ☐ Mine Dewatering | |

RECEIVED
MAR 18 2026
Office of the State Engineer
Deming, New Mexico

A separate permit will be required to apply water to beneficial use regardless if use is consumptive or nonconsumptive.

*New Mexico Environment Department-Drinking Water Bureau (NMED-DWB) will be notified if a proposed exploratory well is used for public water supply.

☐ Yes ☑ No Angled/Directional borehole - include schematic and azimuth, inclination, measured depth and true vertical depth.

☐ Temporary Request - Requested Start Date: Requested End Date:

Plugging Plan of Operations Submitted? ☐ Yes ▣ No

Note: if there is known artesian conditions, contamination or high mineral content at the drilling location, include the borehole log or a well log from an existing well at that location. If this information is not submitted, check box and attach form WD-09 to this form. ☐

## 1. APPLICANT(S)

| | |
|---|---|
| Name: Barnard Spencer Joint Venture | Name: |
| Contact or Agent: Drew Schrader check here if Agent ☐ | Contact or Agent: check here if Agent ☐ |
| Mailing Address: ~~1490 NM-81~~ 26B #39 | Mailing Address: |
| City: Hachita | City: |
| State: NM Zip Code: 88040 | State: Zip Code: |
| Phone: ☐ Home ☐ Cell<br>Phone (Work): | Phone: ☐ Home ☐ Cell<br>Phone (Work): |
| E-mail (optional): Drew.Schrader@barnard-inc.com | E-mail (optional): |

FOR OSE INTERNAL USE

Application for Permit, Form WR-07, Rev 10/02/2024

| | | |
|---|---|---|
| File No.: HA-00044 | Trn. No.: | Receipt No.: 3-25935 |
| Trans Description (optional): HA-00044-POD1 + HA-00044-POD2 | | |
| Sub-Basin: HA | PCW/LOG Due Date: 3/31/2027 | |



EXHIBIT 13

**2. WELL(S)** Describe the well(s) applicable to this application.

**Location Required: Coordinate location must be reported in NM State Plane (NAD 83), UTM (NAD 83), or Latitude/Longitude (Lat/Long - WGS84).**
**District II (Roswell), District V (Aztec) and District VII (Cimarron) customers, provide a PLSS location in addition to above.**

☐ NM State Plane (NAD83) (Feet)
☐ NM West Zone
☐ NM East Zone
☐ NM Central Zone

☐ UTM (NAD83) (Meters)
☐ Zone 12N
☐ Zone 13N

☐ Lat/Long (WGS84) (to the nearest 1/10th of second)

| Well Number (if known): | X or Easting or Longitude: | Y or Northing or Latitude: | -Public Land Survey System (PLSS) (QQQSection, Township, Range) OR - Hydrographic Survey Map & Tract; OR - Lot, Block & Subdivision; OR - Land Grant Name | Well Depth in feet | Casing Diameter (OD) |
|---|---|---|---|---|---|
| HA-00044-POD1 | 108 12' 32" | 31 43' 53" | LOT 8, S. 1, T30S R14W | 1000 | 8 |
| HA-00044-POD2 | 108 09' 16" | 31 47' 01" | SW1/4 SE1/4, S. 15, T29S R13W | 1000 | 8 |
| | | | | | |
| | | | | | |
| | | | | | |

RECEIVED MAR 18 2026 Office of the State Engineer Deming New Mexico

**NOTE: If more well locations need to be described, complete form WR-08 (Attachment 1 – POD Descriptions)**
**Additional well descriptions are attached:** ☐ **Yes** ☐ **No** **If yes, how many** ________

Other description relating well to common landmarks, streets, or other:

Well is on land owned by: United Staes of America

**Well Information: NOTE: If casings telescope or involve nested casing, please provide diagram. Attached?** ☐ **Yes** ■ **No**

| | |
|---|---|
| Approximate depth to water (feet): 1000 | Outside diameter of well casing (inches): 8 |
| Driller Name: Wyatt Drilling | Driller License Number: 1791 |

**3. ADDITIONAL STATEMENTS OR EXPLANATIONS**

To find useable water for construction purposes.

FOR OSE INTERNAL USE

Application for Permit, Form WR-07 Version 10/02/2024

| | |
|---|---|
| File No.: HA-00044 | Trn No.: |



EXHIBIT 13

RECEIVED
MAR 18 2026
Office of the State Engineer
Deming, New Mexico

**4. SPECIFIC REQUIREMENTS:** The applicant must include the following, as applicable to each well type. Please check the appropriate boxes, to indicate the information has been included and/or attached to this application:

| **Exploratory*:** | **Pollution Control and/or Recovery:** | **Construction De-Watering:** | **Mine De-Watering:** |
|---|---|---|---|
| Is proposed well a future public water supply well? ☐ Yes ☒ NO If Yes, an application must be filed with NMED-DWB, concurrently. ☐ Include a description of any proposed pump test, if applicable. | ☐ Include a plan for pollution control/recovery, that includes the following: ☐ A description of the need for the pollution control or recovery operation. ☐ The estimated maximum period of time for completion of the operation. ☐ The annual diversion amount. ☐ The annual consumptive use amount. ☐ The maximum amount of water to be diverted and injected for the duration of the operation. ☐ The method and place of discharge. ☐ The method of measurement of water produced and discharged. ☐ The source of water to be injected. ☐ The method of measurement of water injected. ☐ The characteristics of the aquifer. ☐ The method of determining the resulting annual consumptive use of water and depletion from any related stream system. ☐ Proof of any permit required from the New Mexico Environment Department. ☐ An access agreement if the applicant is not the owner of the land on which the pollution plume control or recovery well is to be located. | ☐ Include a description of the proposed dewatering operation, ☐ The estimated duration of the operation, ☐ The maximum amount of water to be diverted, ☐ A description of the need for the dewatering operation, and, ☐ A description of how the diverted water will be disposed of. | ☐ Include a plan for Mine De-Watering, that includes the following: ☐ A description of the need for mine dewatering. ☐ The estimated maximum period of time for completion of the operation. ☐ The source(s) of the water to be diverted. ☐ The geohydrologic characteristics of the aquifer(s). ☐ The maximum amount of water to be diverted per annum. ☐ The maximum amount of water to be diverted for the duration of the operation. ☐ The quality of the water. ☐ The method of measurement of water diverted. ☐ The recharge of water to the aquifer. ☐ Description of the estimated area of hydrologic effect of the project. ☐ The method and place of discharge. ☐ An estimation of the effects on surface water rights and underground water rights from the mine dewatering project. ☐ A description of the methods employed to estimate effects on surface water rights and underground water rights. ☐ Information on existing wells, rivers, springs, and wetlands within the area of hydrologic effect. |
| **Monitoring*:** ☐ Include the reason for the monitoring well, and, ☐ The duration of the planned monitoring. | | **Ground Source Heat Pump:** ☐ Include a description of the geothermal heat exchange project, ☐ The number of boreholes for the completed project and required depths. ☐ The time frame for constructing the geothermal heat exchange project, and, ☐ The duration of the project. ☐ Preliminary surveys, design data, and additional information shall be included to provide all essential facts relating to the request. | |

(* if exploration or monitoring drilling activity is required by NMED, then you must also submit the NMED Work Plan)

**ACKNOWLEDGEMENT**

**I, We (name of applicant(s)),** Drew Schrader
Print Name(s)

affirm that the foregoing statements are true to the best of (my,our) knowledge and belief.

Drew Schrader
Applicant Signature

Applicant Signature

**ACTION OF THE STATE ENGINEER**

This application is:

☐ approved ☐ partially approved ☐ denied

provided it is not exercised to the detriment of any others having existing rights, and is not contrary to the conservation of water in New Mexico nor detrimental to the public welfare and further subject to the attached conditions of approval.

Witness my hand and seal this _______ day of ________________ 20 ______ , for the State Engineer,

________________________________, State Engineer

By: ________________________ ________________________
Signature Print

Title: ________________________
Print

FOR OSE INTERNAL USE Application for Permit, Form WR-07 Version 10/02/2024

| File No.: HA-00044 | Trn No.: |
|---|---|



EXHIBIT 13

**Office of the State Engineer**
**District 03 Deming Office**




NM PLSS T/D1/D2/SS
Point of Diversion
Place of Use
Water Rights Transferred Out
Owner Parcel

**File: HA-00044**
**POD: HA-00044-POD1**
**Exploratory Well**
**Barnard Spencer Joint Venture**

Feet
500 250 0 500

Acreage discrepancies may exist. Mapping determinations are provided as a visual representation only.
The Office of the State Engineer assumes no responsibility associated with the misuse of this information.

jvega 3/20/2026

EXHIBIT 13

**Office of the State Engineer**
**District 03 Deming Office**




NM PLSS T/D1/D2/SS
Point of Diversion
Place of Use
Water Rights Transferred Out
Owner Parcel

**File: HA-00044**
**POD: HA-00044-POD2**
**Exploratory Well**
**Barnard Spencer Joint Venture**

Feet
1,000 500 0 1,000

Acreage discrepancies may exist. Mapping determinations are provided as a visual representation only.
The Office of the State Engineer assumes no responsibility associated with the misuse of this information.

jvega 3/20/2026

EXHIBIT 13

The National Archives and Records Administration is closed to normal operations due to a lack of appropriations. FederalRegister.gov will automatically provide the daily Federal Register and Public Inspection List but we will not provide technical support. The official, published Federal Register is available at https://www.govinfo.gov/app/collection/fr.

LEGAL STATUS

This site displays a prototype of a "Web 2.0" version of the daily Federal Register. It is not an official legal edition of the Federal Register, and does not replace the official print version or the official electronic version on GPO's govinfo.gov.

The documents posted on this site are XML renditions of published Federal Register documents. Each document posted on the site includes a link to the corresponding official PDF file on govinfo.gov. This prototype edition of the daily Federal Register on FederalRegister.gov will remain an unofficial informational resource until the Administrative Committee of the Federal Register (ACFR) issues a regulation granting it official legal status. For complete information about, and access to, our official publications and services, go to About the Federal Register on NARA's archives.gov.

The OFR/GPO partnership is committed to presenting accurate and reliable regulatory information on FederalRegister.gov with the objective of establishing the XML-based Federal Register as an ACFR-sanctioned publication in the future. While every effort has been made to ensure that the material on FederalRegister.gov is accurately displayed, consistent with the official SGML-based PDF version on govinfo.gov, those relying on it for legal research should verify their results against an official edition of the Federal Register. Until the ACFR grants it official status, the XML rendition of the daily Federal Register on FederalRegister.gov does not provide legal notice to the public or judicial notice to the courts.

LEGAL STATUS

# Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended

A Notice by the Homeland Security Department on 10/08/2025

PUBLISHED CONTENT - DOCUMENT DETAILS

**Agencies:** Department of Homeland SecurityOffice of the Secretary
**Document Citation:** 90 FR 48163
**Document Number:** 2025-19494
**Document Type:** Notice
**Pages:** 48163-48164 (2 pages)
**Publication Date:** 10/08/2025

PUBLISHED DOCUMENT: 2025-19494 (90 FR 48163)

DOCUMENT HEADINGS

**Department of Homeland Security**
**Office of the Secretary**

## AGENCY:

Office of the Secretary, Department of Homeland Security.

## ACTION:

Notice of determination.

## SUMMARY:

The Secretary of Homeland Security has determined, pursuant to law, that it is necessary to waive certain laws, regulations, and other legal requirements in order to ensure the expeditious construction of barriers and roads in the vicinity of the international land border in the state of New Mexico.

## DATES:

This determination takes effect on October 8, 2025.

## SUPPLEMENTARY INFORMATION:

Important mission requirements of the Department of Homeland Security ("DHS") include border security and the detection and prevention of illegal entry into the United States. Border security is critical to the nation's national security. Recognizing the critical importance of border security, Congress has mandated DHS to achieve and maintain operational control of the international land border. Secure Fence Act of 2006, Public Law 109-367 (https://www.govinfo.gov/link/plaw/109/public/367), section 2, 120 Stat. 2638 (Oct. 26, 2006) (8 U.S.C. 1701 note (https://www.govinfo.gov/link/uscode/8/1701)). Congress defined "operational control" as the prevention of all unlawful entries into the United States, including entries by terrorists, other unlawful aliens, instruments of terrorism, narcotics, and other contraband. *Id.* Consistent with that mandate, the President's Executive Order on Securing Our Borders directs that I take all appropriate action to deploy and construct physical barriers to ensure complete operational control of the southern border of the United States. Executive Order 14165 (/executive-order/14165), section 3 (Jan. 20, 2025).

Congress has provided to the Secretary of Homeland Security a number of authorities necessary to carry out DHS's border security mission. One of those authorities is found at section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as amended ("IIRIRA"). Public Law 104-208 (https://www.govinfo.gov/link/plaw/104/public/208), Div. C, 110 Stat. 3009-546, 3009-554 (Sept. 30, 1996) (8 U.S.C. 1103 note (https://www.govinfo.gov/link/uscode/8/1103)), as amended by the REAL ID Act of 2005, Public Law 109-13 (https://www.govinfo.gov/link/plaw/109/public/13), Div. B, 119 Stat. 231, 302, 306 (May 11, 2005) (8 U.S.C. 1103 note (https://www.govinfo.gov/link/uscode/8/1103)), as amended by the Secure Fence Act of 2006, Public Law 109-367 (https://www.govinfo.gov/link/plaw/109/public/367), section 3, 120 Stat. 2638 (Oct. 26, 2006) (8 U.S.C. 1103 note (https://www.govinfo.gov/link/uscode/8/1103)), as amended by the Department of Homeland Security Appropriations Act, 2008, Public Law 110-161 (https://www.govinfo.gov/link/plaw/110/public/161), Div. E, Title V, section 564, 121 Stat. 2090 (Dec. 26, 2007). In section 102(a) of IIRIRA, Congress provided that the Secretary of Homeland Security shall take such actions as may be necessary to install additional physical barriers and roads (including the removal of obstacles to detection of illegal entrants) in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States. In section 102(b) of IIRIRA, Congress mandated that in carrying out the authority of section 102(a), I provide for the installation of additional fencing, barriers, roads, lighting, cameras, and sensors to achieve and maintain operational control of the border. Finally, in section 102(c) of IIRIRA, Congress granted to the Secretary of Homeland Security the authority to waive all legal requirements that I, in my sole discretion, determine necessary to ensure the expeditious construction of barriers and roads authorized by section 102 of IIRIRA.

### Determination and Waiver

#### Section 1

The United States Border Patrol El Paso Sector is an area of high illegal entry. Between fiscal year 2021 and July 2025, Border Patrol apprehended over 1,229,400 illegal aliens attempting to enter the United States between border crossings in the El Paso Sector. In that same time period Border Patrol seized over 14,468 pounds of marijuana, over 1,347 pounds of cocaine, over 42 pounds of heroin, over 3,086 pounds of methamphetamine, and over 254 pounds of fentanyl.

Since the President took office, DHS has delivered the most secure border in history. More can and must be done, however. As the statistics cited above demonstrate, the El Paso Sector is an area of high illegal entry where illegal aliens regularly attempt to enter the United States and smuggle illicit drugs, and given my mandate to achieve and maintain operational control of the border, I must use my authority under section 102 of IIRIRA to install additional barriers and roads in the El

Paso Sector. Therefore, DHS will take immediate action to construct additional barriers and roads in a segment of the border in the El Paso Sector. The segment where such construction will occur is referred to herein as the "project area," which is more specifically described in Section 2 below.

**Section 2**

I determine that the following area in the vicinity of the United States border, located in the State of New Mexico within the U.S. Border Patrol El Paso Sector, is an area of high illegal entry (the "project area"): Starting at approximately Border Monument 49 and extending north and then east to Border Monument 1.

There is presently an acute and immediate need to construct additional physical barriers and roads in the vicinity of the border of the United States in order to prevent unlawful entries into the United States in the project area pursuant to section 102(a) and 102(b) of IIRIRA. In order to ensure the expeditious construction of additional physical barriers and roads in the project area, I have determined that it is necessary that I exercise the authority that is vested in me by section 102(c) of IIRIRA.

Accordingly, pursuant to section 102(c) of IIRIRA, I hereby waive in their entirety, with respect to the construction of physical barriers and roads (including, but not limited to, accessing the project area, creating and using staging areas, the conduct of earthwork, excavation, fill, and site preparation, and installation and upkeep of physical barriers, roads, supporting elements, drainage, erosion controls, safety features, lighting, cameras, and sensors) in the project area, all of the following statutes, including all federal, state, or other laws, regulations, and legal requirements of, deriving from, or related to the subject of, the following statutes, as amended: The National Environmental Policy Act (Pub. L. 91-190, 83 Stat. 852 (Jan. 1, 1970) (42 U.S.C. 4321 (https://www.govinfo.gov/link/uscode/42/4321) *et seq.*)); the Endangered Species Act (Pub. L. 93-205, 87 Stat. 884 (Dec. 28, 1973) (16 U.S.C. 1531 (https://www.govinfo.gov/link/uscode/16/1531) *et seq.*)); the Federal Water Pollution Control Act (commonly referred to as the Clean Water Act (33 U.S.C. 1251 (https://www.govinfo.gov/link/uscode/33/1251) *et seq.*)); the National Historic Preservation Act (Pub. L. 89-665, 80 Stat. 915 (Oct. 15, 1966), as amended, repealed, or replaced by Pub. L. 113-287 (https://www.govinfo.gov/link/plaw/113/public/287) (Dec. 19, 2014) (formerly codified at 16 U.S.C. 470 (https://www.govinfo.gov/link/uscode/16/470) *et seq.*, now codified at 54 U.S.C. (🗋 printed page 48164) 100101 note and 54 U.S.C. 300101 (https://www.govinfo.gov/link/uscode/54/300101) *et seq.*)); the Migratory Bird Treaty Act (16 U.S.C. 703 (https://www.govinfo.gov/link/uscode/16/703) *et seq.*); the Migratory Bird Conservation Act (16 U.S.C. 715 (https://www.govinfo.gov/link/uscode/16/715) *et seq.*); the Clean Air Act (42 U.S.C. 7401 (https://www.govinfo.gov/link/uscode/42/7401) *et seq.*); the Archeological Resources Protection Act (Pub. L. 96-95 (16 U.S.C. 470aa (https://www.govinfo.gov/link/uscode/16/470aa) *et seq.*)); the Paleontological Resources Preservation Act (16 U.S.C. 470aaa (https://www.govinfo.gov/link/uscode/16/470aaa) *et seq.*); the Federal Cave Resources Protection Act of 1988 (16 U.S.C. 4301 (https://www.govinfo.gov/link/uscode/16/4301) *et seq.*); the National Trails System Act (16 U.S.C. 1241 (https://www.govinfo.gov/link/uscode/16/1241) *et seq.*), the Safe Drinking Water Act (42 U.S.C. 300f (https://www.govinfo.gov/link/uscode/42/300f) *et seq.*); the Noise Control Act (42 U.S.C. 4901 (https://www.govinfo.gov/link/uscode/42/4901) *et seq.*); the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act (42 U.S.C. 6901 (https://www.govinfo.gov/link/uscode/42/6901) *et seq.*); the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. 9601 (https://www.govinfo.gov/link/uscode/42/9601) *et seq.*); the Archaeological and Historic Preservation Act (Pub. L. 86-523, as amended, repealed, or replaced by Pub. L. 113-287 (https://www.govinfo.gov/link/plaw/113/public/287) (Dec. 19, 2014) (formerly codified at 16 U.S.C. 469 (https://www.govinfo.gov/link/uscode/16/469) *et seq.*, now codified at 54 U.S.C. 312502 (https://www.govinfo.gov/link/uscode/54/312502) *et seq.*)); the Antiquities Act (formerly codified at 16 U.S.C. 431 (https://www.govinfo.gov/link/uscode/16/431) *et seq.* and 16 U.S.C. 431a (https://www.govinfo.gov/link/uscode/16/431a) *et seq.*, now codified 54 U.S.C. 320301 (https://www.govinfo.gov/link/uscode/54/320301) *et seq.*); the Historic Sites, Buildings, and Antiquities Act (formerly

codified at 16 U.S.C. 461 (https://www.govinfo.gov/link/uscode/16/461) *et seq.*, now codified at 54 U.S.C. 320301-320303 (https://www.govinfo.gov/link/uscode/54/320301) & 320101-320106); the Eagle Protection Act (16 U.S.C. 668 (https://www.govinfo.gov/link/uscode/16/668) *et seq.*); the Native American Graves Protection and Repatriation Act (25 U.S.C. 3001 (https://www.govinfo.gov/link/uscode/25/3001) *et seq.*); the Administrative Procedure Act (5 U.S.C. 551 (https://www.govinfo.gov/link/uscode/5/551) *et seq.*); Section 438 of the Energy Independence and Security Act (42 U.S.C. 17094 (https://www.govinfo.gov/link/uscode/42/17094)); the National Fish and Wildlife Act of 1956 (Pub. L. 84-1024 (16 U.S.C. 742a (https://www.govinfo.gov/link/uscode/16/742a), *et seq.*)); the Fish and Wildlife Coordination Act (Pub. L. 73-121 (16 U.S.C. 661 (https://www.govinfo.gov/link/uscode/16/661) *et seq.*)); the Farmland Protection Policy Act (7 U.S.C. 4201 (https://www.govinfo.gov/link/uscode/7/4201) *et seq.*); the Federal Land Policy and Management Act (Pub. L. 94-579 (43 U.S.C. 1701 (https://www.govinfo.gov/link/uscode/43/1701) *et seq.*)); and the Wild Horse and Burro Act (16 U.S.C. 1331 (https://www.govinfo.gov/link/uscode/16/1331) *et seq.*).

This waiver does not revoke or supersede any other waiver determination made pursuant to section 102(c) of IIRIRA. Such waivers shall remain in full force and effect in accordance with their terms. I reserve the authority to execute further waivers from time to time as I may determine to be necessary under section 102 of IIRIRA.

**Kristi Noem,**

*Secretary of Homeland Security.*

[FR Doc. 2025-19494 (/d/2025-19494) Filed 10-7-25; 8:45 am]

BILLING CODE 9111-14-P

**PUBLISHED DOCUMENT: 2025-19494 (90 FR 48163)**

1300 Pennsylvania Avenue NW
Washington, D.C. 20229

U.S. Customs and
Border Protection

February 19, 2026

Jake Vega
Office of the State Engineer – District 3
321 West Spruce Street
Deming, New Mexico 88030
Transmitted by email to: *jake.vega@ose.nm.gov*

Dear Mr. Vega:

U.S. Customs and Border Protection (CBP) has awarded a contract to Fisher Sand and Gravel to construct border barrier in Hidalgo County, New Mexico, which requires the use of a water well. As part of the contract, CBP has authorized Fisher Sand and Gravel to drill a water well for dust control treatment in the 60 ft. Roosevelt Reservation. This area is subject to an environmental waiver pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, to ensure the expeditious construction of Smart Wall (border wall system) within the U.S. Border Patrol's El Paso Sector, in New Mexico. A KMZ file has been attached to this letter to depict the proposed location.

CBP authorizes Frank Lozano, Project Manager with Fisher Sand and Gravel and their sub-contracted well driller Ruben Javier Diaz, to coordinate with the Office of the State Engineer and the Bureau of Land Management to drill a water well for underground water for project use. Should you have any questions or concerns, please contact Joanne Peralez (U.S. Border Patrol Program Management Office Directorate, Infrastructure Portfolio Program Manager) at (703) 963-6210.

Sincerely,

Paul Enriquez Digitally signed by Paul Enriquez
Date: 2026.02.19 13:10:30 -05'00'

Paul Enriquez
Director
Infrastructure Portfolio
Program Management Office Directorate
U.S. Border Patrol
U.S. Customs and Border Protection

Attachment: Proposed Lay Down Yard.kmz

I, Drew Schrader, acting as a representative of Barnard Spencer Joint Venture, request a varience to use 8" well casing opposed to the normal 7" well casing. We are using 8" well casing in order to fit a 6" diameter well pump.

RECEIVED
MAR 1 8 2026
Office of the State Engineer
Deming, New Mexico

X Drew Schrader
Print

X Drew Schrader
Sign

I, Drew Schrader, acting as a ~~n~~ representative of Barnard Spencer Joint Venture, request a Varience to use 8" well casing opposed to the normal 7" well casing. We are using 8" well casing in order to fit a 6" diameter well pump.

RECEIVED
MAR 18 2026
Office of the State Engineer
Deming, New Mexico

X Drew Schrader
Print

X [signature]
Sign

I, Drew Schrader, acting as a ~~a~~ representative of Barnard Spencer Joint Venture, request a Varience to use 8" well casing opposed to the normal 7" well casing. We are using 8" well casing in order to fit a 6" diameter well pump.

RECEIVED
MAR 18 2026
Office of the State Engineer
Deming, New Mexico

X Drew Schrader
Print

X [signature]
Sign

1300 Pennsylvania Avenue NW
Washington, D.C. 20229

U.S. Customs and Border Protection

April 1, 2026

Mr. Nathaniel Chakeres
General Counsel
New Mexico Office of the State Engineer
Nathaniel.Chakeres@ose.nm.gov

Sent via electronic mail

Re: OSE Permits for Groundwater Wells

Dear Mr. Chakeres,

Thank you for your letter of March 31, 2026, regarding the installation and use of groundwater wells in connection with U.S. Customs and Border Protection's (CBP) El Paso 2 border barrier system project. While CBP understands that the Office of State Engineer (OSE) has a different view, the installation and use of groundwater wells on federal property is immune from the OSE permitting requirements.

As stated in CBP's letter of March 24, 2026, CBP is unaware of any applicable law or regulation that would require CBP to obtain permits from the OSE in order to install and use groundwater wells located on federal property. Your letter cites to laws such as the Mining Act of 1866, codified at 43 U.S.C. § 661, the Desert Land Act, codified at 43 U.S.C. § 321, or the Reclamation Act, codified at 43 U.S.C. § 383, as instances where Congress may have deferred to state water law. Those authorities are not applicable here, however. The same is true of the McCarran Amendment, 43 U.S.C. § 666. Although the McCarran Amendment waives sovereign immunity when the United States is a necessary party to a comprehensive water rights adjudication in state court, it goes no further. *See* S. Rep. No. 82-755, at 9 (1951) (the McCarran Amendment is "not intended to be used for any other purpose than to allow the United States to be joined in a suit wherein it is necessary to adjudicate all of the rights of various owners on a given stream.") The McCarran Amendment does not waive sovereign immunity regarding the establishment and use of groundwater wells on federal property, and a comprehensive water rights adjudication is not what is at issue here. In the absence of a clear and unequivocal waiver of sovereign immunity by Congress, the establishment and use of groundwater wells on federal property for the El Paso 2 project is not subject to OSE permitting requirements.

For your awareness, I note that after the completion of the El Paso 2 project, some of the wells that are used for construction will be decommissioned. CBP will continue to maintain a certain

number of the wells, however, as water may be needed for future maintenance of the barrier system. In CBP's experience, maintenance of the barrier system does not require substantial amounts of water.

Thank you again for your letter.

Sincerely,

Paul Enriquez
Director
Infrastructure Portfolio
Program Management Office Directorate
U.S. Border Patrol
U.S. Customs and Border Protection

**Vega, Jake, OSE**

| | |
|---|---|
| **From:** | Jeff Pinto <jeff.pinto@barnard-inc.com> |
| **Sent:** | Tuesday, March 24, 2026 2:58 PM |
| **To:** | Vega, Jake, OSE; Frisch, Karl, OSE |
| **Cc:** | Drew Schrader; Patrick Reed; Zach Remus |
| **Subject:** | [EXTERNAL] BSJV Well Drilling |

CAUTION: This email originated outside of our organization. Exercise caution prior to clicking on links or opening attachments.

Hi,

I told you two I would let you know if CBP tells us to proceed in drilling wells on BLM/Federal Land or not. They just did and said they were sending a letter to you. We would like to formally withdraw all well permit applications on BLM/ Federal land that we have sent in. Thank you for working with us and I appreciate how helpful you were to us.

Please call or email me if you have any questions.

Thank you,

BARNARD
People building for People.
Jeff Pinto
jeff.pinto@barnard-inc.com

**Phone:** (406) 586-1995 **Mobile:** **(406) 600-0875** | **Fax:** (406) 586-3530
3520 Royal Wolf Way | Bozeman, MT 59718
www.barnard-inc.com



EXHIBIT 13

File No.

# NEW MEXICO OFFICE OF THE STATE ENGINEER

Office of the State Engineer NM Interstate Stream Commission

***APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS IN ACCORDANCE WITH SECTIONS 72-12-1.1, 72-12-1.2, OR 72-12-1.3 NEW MEXICO STATUTES***

Great Seal of the State of New Mexico 1912

For fees, see State Engineer website: http://www.ose.state.nm.us/

## 1. APPLICANT(S)

| | |
|---|---|
| Name: check if Owner ☐ check if User* ☑<br>Barnard Spencer Joint Venture | Name: check if Owner ☐ check if User* ☐ |
| Contact or Agent: check if Agent ☐<br>Drew Schrader | Contact or Agent: check if Agent ☐ |
| Mailing Address: ~~4490 NM-81~~ 26B #39 | Mailing Address: |
| City:<br>Hachita | City: |
| State:<br>New Mexico<br>Zip Code:<br>88040 | State: Zip Code: |
| Phone: (765)-412-2128 ☐ Home ▣ Cell<br>Phone (Work): | Phone: ☐ Home ☐ Cell<br>Phone (Work): |
| E-mail (optional):<br>Drew.Schrader@barnard-inc.com | E-mail (optional): |

RECEIVED MAR 1 8 2026 Office of the State Engineer Deming, New Mexico

☐ Check here if existing well. Enter OSE File No. ____________

Note: if there is known artesian conditions, contamination or high mineral content at the drilling location check box and attach form WD-09 to this form. ☐

## 2. WELL LOCATION

**Required:** Coordinate location must be New Mexico State Plane (NAD 83), UTM (NAD 83), or Lat/Long (WGS84). You may use a GPS, Google Earth or OSE POD Location maps to estimate location. District II (Roswell) and District VII (Cimarron) applicants must also provide PLSS!

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| NM State Plane (NAD83) - In feet | NM West Zone ☐<br>NM Central Zone ☐<br>NM East Zone ☐ | X (in feet):<br>Y (in feet): | | | | | |
| UTM (NAD83) - In meters | UTM Zone 13N ☐<br>UTM Zone 12N ☐ | Easting (in meters):<br>Northing (in meters): | | | | | |
| Lat/Long (WGS84) - To 1/10th of second<br>☐ Check if seconds are decimal format | Lat: | 31 | deg | 43 | min | 53 | sec |
| | Long: | 108 | deg | 12 | min | 32 | sec |

Other Location Information (complete the below, if applicable):

PLSS Quarters or Halves: Section: Township: Range:

County:

Land Grant Name (if applicable):

Lot No: Block No: Unit/Tract: Subdivision:

Hydrographic Survey: Map: Tract:

Other description relating well to common landmarks, streets, or other:

***Well is on Land Owned by (Required):**

*Any application for which the Applicant is not the landowner must be accompanied by a signed written consent of the land owner pursuant to 19.27.5.9(B) NMAC.

FOR OSE INTERNAL USE

Application for Permit, Form wr-01, Rev 1/30/2024

| | | |
|---|---|---|
| File No.: | Trn. No.: | Receipt No.: 3-25935 |
| Well Tag ID No. (if applicable): | Sub-Basin: | Log Due Date: |



EXHIBIT 14

### 3. PURPOSE OF USE: CHECK THOSE THAT APPLY

- ☐ Domestic use for one household
- ☐ Livestock watering
- ☐ Domestic use for more than one household. Number of households ____ Complete and attach form WR-01m "MULTIPLE home-owner info"
- ☐ Drinking and sanitary uses that are incidental to the operations of a governmental, commercial, or non-profit facility
- ☐ Prospecting, mining or drilling operations to discover or develop natural resources
- ☒ Construction of public works, highways and roads
- ☐ Domestic use for one household and livestock watering
- ☐ Domestic use for multiple households and livestock watering ____ Complete and attach form WR-01m "MULTIPLE home-owner info"
- ☐ Domestic well to accompany a house or other dwelling unit constructed for sale
- ☐ New well (with new purpose)
- ☐ Amend purpose of use on existing well
- ☐ No change in purpose

RECEIVED
MAR 18 2026
Office of the State Engineer
Deming, New Mexico

### 4. WELL INFORMATION: CHECK THOSE THAT APPLY ☐ Existing Well ☐ Known Artesian

File Information: (If existing well, provide OSE no. & indicate below if well is to be replacement, repaired or deepened, or supplemental. If new well, leave blank, as OSE must assign no.)

| | |
|---|---|
| OSE Well No.(If Existing) | New Well No. (provided by OSE) |
| **Well Driller Name:** Wyatt Drilling Arizona LLC | **Well Driller License Number:** 1791 |
| Approximate Depth of Well (feet): ~~700~~ 1000' | Outside Diameter of Well Casing (inches): 8 |

| | | |
|---|---|---|
| ☐ Replacement well<br>(List all existing wells if more than one): | ☐ Repair or Deepen:<br>☐ Clean out well to original depth<br>☐ Deepen well from ____ to ____ ft.<br>☐ Other (Explain): | ☐ Supplemental well<br>(List OSE No. for all wells this will supplement): |

### 5. ADDITIONAL STATEMENTS OR EXPLANATIONS (Use additional sheets if necessary)

### ACKNOWLEDGEMENT

I, We (name of applicant(s)), Drew Schrader
Print Name(s)

affirm that the foregoing statements are true to the best of (my, our) knowledge and belief.

Drew Schrader Digitally signed by Drew Schrader
DN: cn=Drew Schrader, ou=Project Engineers
Date: 2026.03.17 16:23:38 -06'00'

Applicant Signature ______ Applicant Signature

### ACTION OF THE OFFICE OF THE STATE ENGINEER (FOR OSE USE ONLY)

This application is approved subject to the attached general and specific conditions of approval.

Witness my hand and seal this ______ day of ______________ 20 _____ , for the New Mexico State Engineer,

By: ______________________ ______________________
Signature Print

FOR OSE INTERNAL USE

Well Tag ID Issued? Yes No

Application for Permit, Form wr-01, Rev 1/30/2024

| | | |
|---|---|---|
| File No.: | Trn No.: | Well ID Tag No.: |



EXHIBIT 14

**Vega, Jake, OSE**

**From:** Jeff Pinto <jeff.pinto@barnard-inc.com>
**Sent:** Tuesday, March 24, 2026 2:58 PM
**To:** Vega, Jake, OSE; Frisch, Karl, OSE
**Cc:** Drew Schrader; Patrick Reed; Zach Remus
**Subject:** [EXTERNAL] BSJV Well Drilling

CAUTION: This email originated outside of our organization. Exercise caution prior to clicking on links or opening attachments.

Hi,

I told you two I would let you know if CBP tells us to proceed in drilling wells on BLM/Federal Land or not. They just did and said they were sending a letter to you. We would like to formally withdraw all well permit applications on BLM/ Federal land that we have sent in. Thank you for working with us and I appreciate how helpful you were to us.

Please call or email me if you have any questions.

Thank you,

BARNARD
People building for People.
Jeff Pinto
jeff.pinto@barnard-inc.com

**Phone:** (406) 586-1995 **Mobile: (406) 600-0875** | **Fax:** (406) 586-3530
3520 Royal Wolf Way | Bozeman, MT 59718
www.barnard-inc.com

6TH JUDICIAL DISTRICT
LUNA COUNTY NM
FILED IN MY OFFICE
8/27/2026 8:40 AM
MARGARITA GOMEZ
DISTRICT COURT CLERK
Liberty Gigante

**STATE OF NEW MEXICO**
**COUNTY OF LUNA**
**SIXTH JUDICIAL DISTRICT COURT**

**ELIZABETH ANDERSON, P.E.**, New Mexico State Engineer,

Plaintiff,

**v.**

**No.** D-619-CV-2026-00332
Water Region 2

**UNITED STATES OF AMERICA**,

Defendant.

**BARNARD CONSTRUCTION COMPANY, INC.**,

Defendant.

**WYATT DRILLING ARIZONA, LLC;** and **VINCENT WYATT**, aka **VINNIE WYATT**, **DBA: H.E. BEEMAN WELL DRILLING**, **BEEMAN DRILLING CO.**, **BEEMAN DRILLING**, **BEEMAN WELL DRILLING**, **WYATT DRILLING**, and **WYATT DRILLING, INC.**,

Defendant.

**CASCADE DRILLING, LP**; and **ANDREW WHITSELL, DBA: CASCADE ENVIRONMENTAL, LLC, CASCADE ENVIRONMENTAL, CASCADE DRILLING,**

Defendant.

**EXHIBITS – 16 THROUGH 25**

**PART 4 OF 5**

**COMPLAINT TO ENJOIN THE ILLEGAL DIVERSION AND USE OF WATER AND FOR PAYBACK OF ILLEGALLY APPROPRIATED WATER**

U.S. Customs and Border Protection

March 24, 2026

Mr. Jake Vega
Office of the State Engineer
State New Mexico

Sent via electronic mail

**Re: Border Barrier Construction – Groundwater Wells**

Dear Mr. Vega:

I am writing in response to the inquiries U.S. Customs and Border Protection (CBP) has received from the Office of the State Engineer (OSE) regarding the installation of groundwater wells by BSJV (Barnard Spencer Joint Venture), a contractor that has been retained by CBP to construct border barrier system in Luna and Hildalgo Counties, New Mexico as part of the El Paso 2 border barrier system project. I understand that the OSE is concerned that BSJV has not applied for or received permits from the OSE for the installation and use of the new wells. As set forth more fully below, the groundwater wells that are being installed by Barnard are on federal property. Because they are on federal property, they are immune from State permitting requirements.

CBP is executing a border barrier system project known as El Paso 2, which involves the construction of approximately 98.3 miles of barrier system in Luna and Hildalgo Counties, New Mexico. The Secretary of Homeland Security, pursuant to section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as amended (IIRIRA), 8 U.S.C. § 1103 note, has issued a waiver of certain environmental laws for the project. *See* 90 Fed. Reg. 48163 (October 8, 2025). As noted, CBP has retained BSJV as its construction contractor for the El Paso 2 project.

Execution of the El Paso 2 project requires the installation and use of groundwater wells. To that end, BSJV has drilled 4 wells to date. We expect that Barnard will drill additional groundwater wells on federal property as part of project execution. All of the wells are located on federal property. They are situated on land currently under the jurisdiction of the Dept. of War, including areas that are within the federal Roosevelt Reservation, which consists of a 60' wide strip of land along the United States' border with Mexico that has been set aside for the express purpose of federal enforcement of customs and immigration laws.

Under the Property Clause of the United States Constitution (Art. IV, § 3, Cl. 2.), Congress exercises "complete power" over federal public lands. *Kleppe v. New Mexico*, 426 U.S. 529, 542 (1976) ("Although the Property Clause does not authorize an exercise of a general control over public policy in a State, it does permit an exercise of the complete power which Congress has

over particular public property entrusted to it.”) (internal quotations and citation omitted). To this same end, CBP is unaware of any applicable law or regulation that would require CBP to obtain permits from the State of New Mexico in order to install and use groundwater wells located on federal property. A State or municipality may not impose its regulations on a federal agency unless specifically and unambiguously authorized by Congress. *See Hancockv. Train,* 426 U.S. 167, 178 (1976); *see also Lane v. Pena,* 518 U.S. 187, 192 (1996) (“A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text ... and will not be implied.”). In this case, we are unaware of any waiver of federal sovereign immunity that would make the installation or use of groundwater wells on federal property subject to the State or local regulation.

Although the wells at issue are immune from State regulation, CBP values its relationship with its State partners and stakeholders. Please do not hesitate to contact CBP if you have any additional questions or need any additional information.

We hope this information is helpful to you.

Sincerely,

Paul Enriquez
Director, Infrastructure Portfolio
Program Management Office Directorate
United States Border Patrol

cc: Lloyd Valentine, District Engineer, NM Office of the State Engineer

**STATE OF NEW MEXICO**
**OFFICE OF THE STATE ENGINEER**
CONCHA ORTIZ Y PINO BUILDING, 130 SOUTH CAPITOL, SANTA FE, NM 87501

**ELIZABETH K. ANDERSON, P.E.**
**STATE ENGINEER**

**A. Nathaniel Chakeres**
**General Counsel**

**LITIGATION & ADJUDICATION**
**Program**

Mailing Address:
P.O. Box 25102
Santa Fe, NM 87504-5102
Telephone: (505) 827-6150

March 31, 2026

**VIA EMAIL ONLY**

Paul Enriquez
Director, Infrastructure Portfolio
Program Management Office Directorate
United States Border Patrol
Paul.enriquez@cbp.dhs.gov

**Re: OSE Permits for Groundwater Wells**

Dear Mr. Enriquez:

This letter is in response to your letter dated March 24, 2026, to Jake Vega of the New Mexico Office of the State Engineer (OSE). In the letter, you asserted that U.S. Customs and Border Protection (CBP) is immune from State permitting requirements regarding the installation and use of groundwater wells. The OSE disagrees with that assertion based on the standard application of State water law as it applies to the Federal government.

For nearly 150 years, Congress has adhered to a policy of requiring the Federal government to defer to, and follow, the laws of western States with respect to the appropriation of water. This policy was first reflected in a series of Congressional Acts passed in the 19th Century (specifically, the Mining Act of 1866, the 1870 Amendments, and the Desert Land Act of 1877). The U.S. Supreme Court has long recognized that those statutes subject the waters of the western States and territories "to the plenary control of the designated states." *California Oregon Power Co. v. Beaver Portland Cement Co.*, 295 U.S. 142, 163-64 (1935). Congress intended, through these acts, for the waters of the western states to "be reserved for the use of the public under the laws of the states and territories named," *Id.* at 162, regardless of whether lands are subject to private, State or Federal jurisdiction.

EXHIBIT 17

This strong policy of Congressional deference to State water laws is clearly stated in Section 8 of the Reclamation Act of 1902 (now codified at 43 U.S.C. § 383), which requires the Secretary of the Interior to proceed "in conformity with" state laws "relating to the control, appropriation, use, or distribution" of water. The Supreme Court has held that this statute, against the background of "the consistent thread of purposeful and continued deference to state water law by Congress," requires the federal government to adhere to permitting conditions under State law when it seeks to appropriate water. *California v. United States*, 438 U.S. 645, 653, 675 (1978) (In passing the Reclamation Act, "Congress intended to defer to the substance, as well as the form, of state water law.").

The letter states that CBP is unaware of any waiver of sovereign immunity that would subject it to State jurisdiction on water issues. The McCarran Amendment, 43 U.S.C. § 666, provides exactly such a waiver. Specifically, that statute expressly waives the United States's sovereign immunity "in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights." The Supreme Court has held that the McCarran Amendment reflects such a strong preference for comprehensive State administration of water rights that it warrants its own abstention doctrine. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) (holding that federal lawsuit to adjudicate water rights, despite being jurisdictionally proper, should be dismissed in favor of a parallel state water adjudication). *Colorado River* also recognized comprehensive State authority to administer water rights, as expressly protected in the McCarran Amendment. *See id.* at 820 ("[T]he responsibility of managing the State's waters, to the end that they be allocated in accordance with adjudicated water rights, is given to the State Engineer.").

These authorities have been in place for many decades, during which time multiple federal agencies in New Mexico have complied with the requirements relating to water rights administration by the State Engineer. For example, military installations, national parks and forests, and other federal facilities have proceeded smoothly through the permitting and/or adjudication processes regarding their water rights and claims.

The letter points out that the Property Clause of the Constitution gives Congress plenary authority over federal public lands. But the question is not what Congress has the *authority* to do, but what it has actually *done*. It has consistently, for over a century, required federal agencies to adhere to the water laws of western States.

Finally, the letter notes that the Secretary of Homeland Security has waived, pursuant to Section 102(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (as amended), a number of environmental and land use laws to facilitate the construction of physical barriers along the southern border. That waiver, published at 90 Federal Register 48163, lists 26 separate Federal statutes and their State analogues, but does not identify any State laws governing prior appropriation or beneficial use of water that are intended to be waived.

Because there is no preemption or waiver of New Mexico's laws regarding the appropriation and use of water, and because those laws apply to the activities of the Federal

government, the CBP and/or its contractors are required to obtain the appropriate State permits prior to drilling wells and using groundwater.

We were gratified by the reiteration that CBP values its relationship with its State partners and stakeholders. In that spirit, we stand ready to discuss with your contractors or staff the appropriate path forward to ensure that any drilling and use of water complies with State law.

Sincerely,

Nat Chakeres

Nathaniel Chakeres
General Counsel
Office of the State Engineer

NC/jc
CC: Michelle Barnes
Jeff Pinto, Barnard Construction
Vincent Wyatt, Wyatt Drilling

1300 Pennsylvania Avenue NW
Washington, D.C. 20229

U.S. Customs and Border Protection

April 1, 2026

Mr. Nathaniel Chakeres
General Counsel
New Mexico Office of the State Engineer
Nathaniel.Chakeres@ose.nm.gov

Sent via electronic mail

Re: OSE Permits for Groundwater Wells

Dear Mr. Chakeres,

Thank you for your letter of March 31, 2026, regarding the installation and use of groundwater wells in connection with U.S. Customs and Border Protection's (CBP) El Paso 2 border barrier system project. While CBP understands that the Office of State Engineer (OSE) has a different view, the installation and use of groundwater wells on federal property is immune from the OSE permitting requirements.

As stated in CBP's letter of March 24, 2026, CBP is unaware of any applicable law or regulation that would require CBP to obtain permits from the OSE in order to install and use groundwater wells located on federal property. Your letter cites to laws such as the Mining Act of 1866, codified at 43 U.S.C. § 661, the Desert Land Act, codified at 43 U.S.C. § 321, or the Reclamation Act, codified at 43 U.S.C. § 383, as instances where Congress may have deferred to state water law. Those authorities are not applicable here, however. The same is true of the McCarran Amendment, 43 U.S.C. § 666. Although the McCarran Amendment waives sovereign immunity when the United States is a necessary party to a comprehensive water rights adjudication in state court, it goes no further. *See* S. Rep. No. 82-755, at 9 (1951) (the McCarran Amendment is "not intended to be used for any other purpose than to allow the United States to be joined in a suit wherein it is necessary to adjudicate all of the rights of various owners on a given stream.") The McCarran Amendment does not waive sovereign immunity regarding the establishment and use of groundwater wells on federal property, and a comprehensive water rights adjudication is not what is at issue here. In the absence of a clear and unequivocal waiver of sovereign immunity by Congress, the establishment and use of groundwater wells on federal property for the El Paso 2 project is not subject to OSE permitting requirements.

For your awareness, I note that after the completion of the El Paso 2 project, some of the wells that are used for construction will be decommissioned. CBP will continue to maintain a certain

number of the wells, however, as water may be needed for future maintenance of the barrier system. In CBP's experience, maintenance of the barrier system does not require substantial amounts of water.

Thank you again for your letter.

Sincerely,



Paul Enriquez
Director
Infrastructure Portfolio
Program Management Office Directorate
U.S. Border Patrol
U.S. Customs and Border Protection




**Coordinates**

UTM - NAD 83 (m) - Zone 13

Easting: 293955.20

Northing: 3518666.02

State Plane - NAD 83 (ft) - Zone C

X: 1352665.45

Y: 286751.27

Degrees Minutes Seconds

Latitude: 31 ° 47' 6.00"

Longitude: -107 ° 10' 34.00"

**Spatial Information**

OSE District: 3 County: Dona Ana

Land Grant: Not in Land Grant

Declared GW Basin: Mount Riley

Sub-Basin: Mimbres

Abstracting Project Area:

Mount Riley

Regulation Area:

**No Restrictions**

PLSS Description

SE NW SW SW Qtr of Sec 17 of 29S 3W

**Derived from Projected PLSS- Qtr Sec. locations are calculated and are only approximations**

**File Number:**

**Owner:**

**Purpose:** Field Report/Well Site Reference

**Author:** Lloyd Valentine

NEW MEXICO OFFICE OF THE STATE ENGINEER

N

1:760,695

mi

0 2.75 5.5 11

Source: LG04

Date: 09/25/2025

Resolution (m): 0.34

Accuracy (m): 8.47

Office of the State Engineer

Interstate Stream Commission

7/24/2026

Reasonable efforts have been made by the New Mexico Office of the State Engineer (OSE) to verify that these maps accurately interprets the source data used in their preparation; however, a degree of error is inherent in all maps, and these maps may contain omissions and errors in scale, resolution, rectification, positional accuracy, development methodology, interpretation of source data, and other circumstances.
These maps are distributed "as is" without warranty of any kind.

Counties

OSE District Boundary

Declared Goundwater Basins

World Imagery

Low Resolution 15m Imagery

High Resolution 60cm Imagery

High Resolution 30cm Imagery

Citations

150m Resolution Metadata

EXHIBIT 19

NLO

File No. MR-12

# NEW MEXICO OFFICE OF THE STATE ENGINEER

Office of the State Engineer · NM Interstate Stream Commission

**APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS IN ACCORDANCE WITH SECTIONS 72-12-1.1, 72-12-1.2, OR 72-12-1.3 NEW MEXICO STATUTES**

Great Seal of the State of New Mexico 1912

For fees, see State Engineer website: http://www.ose.state.nm.us/

## 1. APPLICANT(S)

| | |
|---|---|
| Name: check if Owner ☐ check if User* ☑<br>CADDELL / BCCG JV | Name: check if Owner ☑ check if User* ☐<br>United States of America - U.S. Customs & Border Protection |
| Contact or Agent: check if Agent ☐<br>AURELIO PAEZ | Contact or Agent: check if Agent ☐<br>Joanne Peralez |
| Mailing Address:<br>AURELIO.PAEZ@CADDELL | Mailing Address:<br>1300 Pennsylvania Avenue NW |
| City: 7616 HWY 28<br>ANTHONY NM | City:<br>Washington |
| State: NM Zip Code: 88021 | State: DC Zip Code: 20229 |
| Phone: ☐ Home ☑ Cell<br>Phone (Work): 915 603 7499 | Phone: ☐ Home ☐ Cell<br>Phone (Work): 703 963 6210 |
| E-mail (optional): | E-mail (optional): |

RECEIVED DEC - 4 2025 Office of the State Engineer Deming, New Mexico

■ Check here if existing well. Enter OSE File No. MR-00006

Note: if there is known artesian conditions, contamination or high mineral content at the drilling location check box and attach form WD-09 to this form. ☐

## 2. WELL LOCATION

**Required:** Coordinate location must be New Mexico State Plane (NAD 83), UTM (NAD 83), or Lat/Long (WGS84). You may use a GPS, Google Earth or OSE POD Location maps to estimate location. District II (Roswell) and District VII (Cimarron) applicants must also provide PLSS!

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| NM State Plane (NAD83) - In feet | NM West Zone ☐<br>NM Central Zone ☐<br>NM East Zone ☐ | X (in feet):<br>Y (in feet): | | | | | |
| UTM (NAD83) - In meters | UTM Zone 13N ☐<br>UTM Zone 12N ☐ | Easting (in meters):<br>Northing (in meters): | | | | | |
| Lat/Long (WGS84) - To 1/10th of second<br>☐ Check if seconds are decimal format | Lat: 31 | deg | 47 | min | 6.00 | sec | |
| | Long: 107 | deg | 10 | min | 34.00 | sec | |

Other Location Information (complete the below, if applicable):

PLSS Quarters or Halves: Part of Gov't Lot 4 Section: 17 Township: 29 South Range: 03 West

County: Dona Ana

Land Grant Name (if applicable):

Lot No: Block No: Unit/Tract: Subdivision:

Hydrographic Survey: Map: Tract:

Other description relating well to common landmarks, streets, or other:

***Well is on Land Owned by (Required):** United States of America

*Any application for which the Applicant is not the landowner must be accompanied by a signed written consent of the land owner pursuant to 19.27.5.9(B) NMAC.

FOR OSE INTERNAL USE

Application for Permit, Form wr-01, Rev 1/30/2024

| | | |
|---|---|---|
| File No.: MR-00012 | Trn. No.: 794230 | Receipt No.: 3-25822 $5.00 |
| Well Tag ID No. (if applicable): 3015C | Sub-Basin: MR | Log Due Date: NA |



EXHIBIT 20

### 3. PURPOSE OF USE: CHECK THOSE THAT APPLY

- ☐ Domestic use for one household
- ☐ Livestock watering
- ☐ Domestic use for more than one household. Number of households ____ Complete and attach form WR-01m "MULTIPLE home-owner info"
- ☐ Drinking and sanitary uses that are incidental to the operations of a governmental, commercial, or non-profit facility
- ☐ Prospecting, mining or drilling operations to discover or develop natural resources
- ☒ Construction of public works, highways and roads
- ☐ Domestic use for one household and livestock watering
- ☐ Domestic use for multiple households and livestock watering ____ Complete and attach form WR-01m "MULTIPLE home-owner info"
- ☐ Domestic well to accompany a house or other dwelling unit constructed for sale
- ☐ New well (with new purpose)
- ☐ Amend purpose of use on existing well
- ☐ No change in purpose

RECEIVED DEC - 4 2025 Office of the State Engineer Deming, New Mexico

### 4. WELL INFORMATION: CHECK THOSE THAT APPLY ☒ Existing Well ☐ Known Artesian

File Information: (If existing well, provide OSE no. & indicate below if well is to be replacement, repaired or deepened, or supplemental. If new well, leave blank, as OSE must assign no.)

| | |
|---|---|
| OSE Well No.(If Existing) MR-00006-POD1 | New Well No. (provided by OSE) |
| **Well Driller Name:** D & J Pump & Well Service | **Well Driller License Number:** 782 |
| Approximate Depth of Well (feet): 440 | Outside Diameter of Well Casing (inches): 6.00 |

| | | |
|---|---|---|
| ☐ Replacement well<br>(List all existing wells if more than one): | ☐ Repair or Deepen:<br>☐ Clean out well to original depth<br>☐ Deepen well from ____ to ____ ft.<br>☐ Other (Explain): | ☐ Supplemental well<br>(List OSE No. for all wells this will supplement): |

### 5. ADDITIONAL STATEMENTS OR EXPLANATIONS (Use additional sheets if necessary)

Well will be used for road improvements and concrete work. Usage contract number: EPT 1 STN Vertical barrier & attributes: 70B01C25F00000986

### ACKNOWLEDGEMENT

I, We (name of applicant(s)), Aurelio Paez / CADDELL BCCG JV
Print Name(s)

affirm that the foregoing statements are true to the best of (my, our) knowledge and belief.

[signature] Applicant Signature

Applicant Signature

### ACTION OF THE OFFICE OF THE STATE ENGINEER (FOR OSE USE ONLY)

This application is approved subject to the attached general and specific conditions of approval.

Witness my hand and seal this 12th day of December 20 25, for the New Mexico State Engineer,

By: [signature] Signature

Jennifer Galindo/Supervisor Water Resources Print

[Seal: State Engineer, State of New Mexico]

FOR OSE INTERNAL USE

Well Tag ID Issued? ☐ Yes ☒ No

Application for Permit, Form wr-01, Rev 1/30/2024

| | | |
|---|---|---|
| File No.: MR-00012 | Trn No.: 794230 | Well ID Tag No.: 3015C |



EXHIBIT 20

**NEW MEXICO STATE ENGINEER OFFICE**
**APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS**
**IN ACCORDANCE WITH SECTION 72-12-1 NEW MEXICO STATUTES**

17-A The maximum combined diversion of all wells that may be appropriated under this permit is 3.000 acre-feet in any year (One acre-foot equals 325,851 gallons).

17-B The well shall be drilled by a driller licensed in the State of New Mexico in accordance with 72-12-12 NMSA 1978. A licensed driller shall not be required for the construction of a well driven without the use of a drill rig; provided that the casing shall not exceed two and three-eighths (2 3/8) inches outside diameter.

17-C The well driller must file the well record with the State Engineer and the applicant within 30 days after the well is drilled or driven. It is the well owner's responsibility to ensure that the well driller files the well record. The well driller may obtain the well record form from any District Office or the Office of the State Engineer website.

17-D The production casing shall not exceed 7 inches outside diameter except under specific conditions in which reasons satisfactory to the State Engineer are shown.

17-E To request a change to the purpose of use of water authorized under this permit, the permittee shall file an application with the State Engineer.

17-F An application for a new 72-12-1.1 NMSA 2003 domestic well permit where the proposed point of diversion is to be located on the same legal lot of record as an operational 72-12-1.1 NMSA domestic well shall be treated as an application for a supplemental well and the combined diversion may not exceed the maximum annual diversion permitted.

17-G If artesian water is encountered, the well driller shall comply with all rules and regulations pertaining to the drilling and casing of artesian wells.

17-H The drilling of the well and amount and uses of water permitted are subject to such limitations as may be imposed by a court or by lawful municipal or county ordinance which are more restrictive than the conditions of this permit and applicable State Engineer regulations.



EXHIBIT 20

**NEW MEXICO STATE ENGINEER OFFICE**
**APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS**
**IN ACCORDANCE WITH SECTION 72-12-1 NEW MEXICO STATUTES**

**GENERAL CONDITIONS OF APPROVAL (Continued)**

17-I The permittee shall utilize the highest and best technology available to ensure conservation of water to the maximum extent practical.

17-J The well shall be set back a minimum of 50 ft. from an existing well of other ownership unless a variance has been granted by the State Engineer. The State Engineer may grant a variance for a replacement well or to allow for maximum spacing of the well from a source of groundwater contamination. The well shall be set back from potential sources of contamination in accordance with federal, state, and local requirements.

17-K Pursuant to section 72-8-1 NMSA 1978, the permittee shall allow the State Engineer and OSE representatives entry upon private property for the performance of their respective duties, including access to the ditch or acequia to measure flow and also to the well for meter reading and water level measurement.

17-L The permit is subject to cancellation for non-compliance with the conditions of approval or if otherwise not exercised in accordance with the terms of the permit.

17-M The right to divert water under this permit is subject to curtailment by priority administration as implemented by the State Engineer or a court.

17-N In the event of any change of ownership to this permit the new owner shall file a change of ownership form with the State Engineer in accordance with Section 72-1-2.1 NMSA 1978.

17-O This well permit shall automatically expire unless the well is completed and the well record is filed with the State Engineer within one year of the date of issuance of the permit.

17-P The well shall be constructed, maintained, and operated to prevent inter-aquifer exchange of water and to prevent loss of hydraulic head between hydrogeologic zones.

17-Q The State Engineer retains jurisdiction over this permit.



EXHIBIT 20

**NEW MEXICO STATE ENGINEER OFFICE**
**APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS**
**IN ACCORDANCE WITH SECTION 72-12-1 NEW MEXICO STATUTES**

**GENERAL CONDITIONS OF APPROVAL (Continued)**

17-R The State Engineer shall supply a well identification tag for the well driller to firmly affix to the well casing or cap with a steel band upon completion in accordance with Subsection M of 19.27.4.29 NMAC.
The permit holder is responsible for maintaining the well identification tag.

Well Tag(s) associated with this permit:
3015C

17-S Construction of a water well by anyone without a valid New Mexico Well Driller License is illegal, and the landowner shall bear the cost of plugging the well by a licensed New Mexico well driller. This does not apply to driven wells, the casing of which does not exceed two and three-eighths inches outside diameter.

17-T You, the permittee, are required to email nm.driller@ose.nm.gov with the following information when the driller is enroute to the drilling site:
OSE File number, POD number, physical address, driller company and license number, and date/time driller is to be on site.

**SPECIFIC CONDITIONS OF APPROVAL**

17-5A The well owner shall cause to be installed, a totalizing meter before the first branch of the discharge line from the well and the installation shall be acceptable to the State Engineer; the Engineer shall be advised of the make, model, serial number, date of installation, and initial reading of the meter prior to appropriation of water; pumping records shall be submitted to the District Supervisor for each calendar month on or before the 10th day of the following month.

17-10 Total diversion from all wells under this permit number shall not exceed 3.000 acre-feet per annum.

17-15 This permit authorizes the temporary diversion and use of water for prospecting, mining or construction of public works, highways and roads or drilling operations designed to discover or develop the natural mineral resources of the state. The total diversion of water under this permit shall not exceed 3.000 acre-feet per year. Diversion and use of water under this permit shall not exceed a period of one year from the date of approval.

**NEW MEXICO STATE ENGINEER OFFICE**
**APPLICATION FOR PERMIT TO USE UNDERGROUND WATERS**
**IN ACCORDANCE WITH SECTION 72-12-1 NEW MEXICO STATUTES**

## ACTION OF STATE ENGINEER

This application is approved for the use indicated, subject to all general conditions and to specific conditions listed above.

Witness my hand and seal this 12 day of Dec A.D., 2025

Elizabeth K. Anderson, P.E., State Engineer

By: ____________________
JENNIFER GALINDO

Trn Desc: MR 00012 PUBLIC WORKS
Log Due Date: ________
Form: wr-01

File Number: MR 00012
Trn Number: 794230



EXHIBIT 20

**FIELD INSPECTION REPORT** 1
**Basin: MR** **MR-00012**

| | |
|---|---|
| **FILE** | MR-00012 |
| **OWNER** | Caddell BCCG Joint Venture & U.S. Customs and Border Protection |
| **SUBJECT** | Meter Inspection for Well MR-00006-POD1 |
| **PRIORITY** | N/A |
| **DECREE** | Subfile: N/A Cause: N/A Certificate & License: NA |
| **SOURCE** | Mount Riley Water Basin |
| **USE** | Construction of Public Works |
| **POD** | MR-00006-POD1, Part of Government Lot 4 of Section 17, Township 29 South, Range 03 West, N.M.P.M. Latitude 31° 47’ 6.00” North Longitude 107° 10’ 34.00” West |
| **DATE** | 7/23/2026 |
| **BY** | Lloyd Valentine |

**DIRECTIONS**

Starting in Columbus, NM, travel East on State Highway 9 for approximately 29 miles. Turn South on gravel road towards border wall for approximately ¼ mile. Well MR-00006 will be approximately 320 feet to the East. Approximate GPS location of MR-00006 is Latitude 31° 47’ 6.00” North Longitude 107° 10’ 34.00” West.

**REMARKS**

On April 28, 2026, Lloyd Valentine, Justin Broomfield and Jake Vega performed a field inspection of well MR-00006 to see if it was equipped with a meter and to read the meter. The well was equipped with a Flomec TM Series digital meter with a reading of 115476. The meter read in gallons and did not include a multiplier.

On June 18, 2026, Lloyd Valentine and Teresa Montellano performed a field inspection to take a meter reading and discovered that a different meter has been installed. The well is now equipped with a McCrometer meter that meter that reads in gallons with a multiplier of 10. The reading read 000013.

On July 16, 2026, Jake Vega and Lloyd Valentine performed a field inspection on well MR-00006-POD1 and discovered that the meter had been replaced from the McCrometer meter previously observed on the June 18, 2026 visit to the same Flomec TM Series digital meter first observed on the April 28, 2026 visit. At the time of inspection, the meter showed a reading of 360819 gallons.

On July 23, 2026, Lloyd Valentine and Karl Frisch performed a field inspection on well MR-00006-POD1. The same meter that was observed being installed on the July 16, 2026, visit was still installed during this visit. The meter showed a reading of 529124 gallons.

**SEE ATTACHED MAP AND PHOTOS**

EXHIBIT 21

**<u>April 28, 2026, Visit</u>:**






**<u>June 18, 2026, Visit</u>:**














EXHIBIT 21

**FIELD INSPECTION REPORT**
**Basin: MR** **MR-00012**
**<u>July 16, 2026, visit</u>:**




1) Well MR-00006-POD1



2) MR-00006-POD1 facing East




3) MR-00006-POD1 Meter




4) Water storage tanks




5) Generators connected to well MR-00006-POD1




6) Generators connected to well MR-00006-POD1



7) Drop spout for water hauling; Border Wall in Background.

**<u>July 16, 2026, visit</u>:**



**Office of the State Engineer**
**District 03 Deming Office**




NM PLSS T/D1/D2/SS
Point of Diversion
Place of Use
Deed Description
Owner Parcel

**File: MR-00012**
**POD: MR-00006-POD1**
**Construction of Public Works**
**Caddell BCCG Joint Venture & U.S. Customs and Border Protection**

Feet
500 250 0 500

Acreage discrepancies may exist. Mapping determinations are provided as a visual representation only.
The Office of the State Engineer assumes no responsibility associated with the misuse of this information.

jvega 7/21/2026

EXHIBIT 21

# FIELD INSPECTION REPORT



## Basin: Mimbres PERMIT: N/A

**FILE** N/A
**PERMIT** N/A
**OWNER** N/A
**SUBJECT** Field Inspection at Border Wall
**SOURCE** Mimbres Underground Water Basin
**USE** Border Wall Construction
**DRILLER** Cascade Drilling, LP (WD-1664 and/or WD-1918)
**POD** Cascade Well, Lot 1 (SE¼SE¼) of Section 14, Township 29 South Range 6 West, N.M.P.M.
Approx. Latitude: 31° 47’ 01.61” N, Longitude: -107° 25’ 03.59” W
**CHECKED** 7/16/2026
**CHECKED BY** Lloyd Valentine III & Jake Vega

**DIRECTIONS**

Going southbound on NM State Highway 11 into Columbus, NM, turn left onto NM State Highway 9 eastbound. Proceed down NM State Highway 9 eastbound for approximately 14.1 miles to an intersection on the right at mile marker 102 for County Road B002 (Anapra Road). At the intersection, there will be a Y-junction for County Road B002 (Anapra Road) on the left and a private road on the right that traverses southbound towards the border. Proceed southbound down the private road for approximately 1.5 miles to a construction site on the Roosevelt Easement along the U.S./Mexico International Border. The two Drill rigs operated by Cascade Drilling were located within the Roosevelt Easement near the border wall.

**REMARKS**

Field inspection was conducted on July 16, 2026 at the U.S./ Mexico International Border Wall approximately 13.5 miles east of Columbus, New Mexico to observe un-permitted drilling activities taking place. Upon arrival at a construction site at a general location on the Roosevelt Easement in Lot 1 (SE¼SE¼) of Section 14, Township 29 South Range 6 West N.M.P.M., it was observed that two drill rigs operated by Cascade Drilling (WD-1664 and/or WD-1918) were onsite, one drill rig was in-operable due to a borehole collapsing during the drilling process. A brief conversation with a Cascade Drilling employee disclosed that a borehole was in the process of being drilled but the operation came to a halt due to the collapsing of a borehole. OSE officials were unable to obtain additional information or photographs due to the high security of the construction site on the Roosevelt Easement.

# GUIDELINES FOR THE DEMING-COLUMBUS ADMINISTRATIVE AREA

## FOR REVIEW OF WATER RIGHT APPLICATIONS

OFFICE OF THE STATE ENGINEER

JOHN R. D'ANTONIO, JR., P.E.
STATE ENGINEER

May 20, 2011

EXHIBIT 23

# DEMING-COLUMBUS ADMINISTRATIVE AREA GUIDELINES FOR REVIEW OF WATER RIGHT APPLICATIONS

## INTRODUCTION

The purpose of this document is to provide guidelines to Office of the State Engineer (OSE) personnel on the procedures for processing water rights applications filed within the Deming-Columbus Administrative Area (DCAA) within the Mimbres Underground Water Basin. The DCAA is located in Luna County in southwestern New Mexico (Figure 1). The Mimbres Basin was declared on July 29, 1931 by State Engineer Order 1. Since that date there have been 7 orders extending the boundaries of the basin. These guidelines replace the Mimbres Basin Administrative Criteria adopted in 1982 (NMOSE, 1982).

The OSE has developed administrative guidelines in order to promote the orderly development of water resources in the DCAA while meeting statutory obligations regarding impairment, conservation of water within the state, and public welfare of the state. Applications filed on or after the adoption date of the guidelines shall be evaluated using these guidelines. All pending applications submitted prior to this date shall be reviewed on a case-by-case basis. These guidelines do not apply to the permitting of applications filed under NMSA Section 72-12-1.1, 72-12-1.2 and 72-12-1.3. The guidelines apply to applications within the DCAA proposing production from the basin-fill alluvium, which is composed of gravel, sand, clay, silt and interbedded basalt flows. Applications proposing diversion from other geologic units, or outside of the boundaries of the DCAA, will be processed on a case-by-case basis.

Block administration and local assessment methods are applied to limit drawdowns caused by pending and future applications. The regional groundwater flow model developed by Cuddy and Keyes (2011) is available for block administration and may also be applied to assess local drawdown if the Theis equation is unsuitable. The model grid is shown in Figure 2. Each groundwater model cell is 2,000 feet by 2,000 feet in size and represents an administrative block. A 40-year planning period ending in year 2050 has been selected for block administration.

A block administrative drawdown limit of 2.50 feet per year was adopted for the 1982 basin



EXHIBIT 23

criteria to protect irrigation and other non-domestic wells from excessive drawdown. This limit was evaluated and deemed appropriate for the administration of the DCAA. Domestic wells were also assessed to determine whether the 2.50 limit was appropriate to prevent excessive drawdown. The average domestic water column in the DCAA is about 140 feet based on WATERS using wells which were completed after January 1, 2000. If the allowable drawdown within DCAA is assumed to be about 70 percent of the average water column, a drawdown limit of about 100 feet is obtained which is equivalent to a rate of decline of 2.50 feet per year over the 40-year planning period.

Modeling studies predict portions of the aquifer in the DCAA will experience an average annual water level decline of more than 2.50 feet per year over the planning period due to the full exercise of existing permits and declarations. To protect water availability for existing rights over the planning period these areas require a greater level of restriction compared to other areas and are designated Critical Management Areas (CMAs). In addition to these areas, areas previously closed to new appropriations by order of the State Engineer shall remain closed. The boundaries of the CMAs and closed areas are shown in Figure 3 and 4, respectively.

Figure 3 and 4 provide a general representation of the boundaries at a basin scale. However, because the model grid and boundaries do not align everywhere with PLSS sections, it may not be possible to accurately determine whether a given application is located within an area using Figure 3 and 4 alone. The boundaries are defined by the geographic information systems (GIS) layer (based on the model grid) that was used to produce Figure 3 and 4. The OSE Hydrology Bureau will maintain and provide both the model and the GIS layer of the boundaries for use by OSE and the public.

No unappropriated water exists within the CMAs and areas closed by OSE order. For this reason, and to protect against impairment of existing rights located in the CMAs and closed areas, all new applications filed under NMSA Section 72-12-3 to appropriate water from the CMA and closed areas shall be denied. In addition, changes in point of diversion from the areas outside of a CMA into the CMA will be denied and changes in point of diversion from the areas outside of a closed area into a closed area shall be denied.

Preventing any level of new impact within a CMA is impractical, as this would result in the denial of applications causing relatively small impacts. Drawdown allowances have been selected to define the relatively small impacts that may be allowed to occur on CMA cells by year 2050. Applications may be allowed to induce drawdowns on CMAs up to 0.10 feet per year times the

number of years in the simulation period. The drawdown allowance selected is comparable to the values used for other basins and was applied in the 1982 basin criteria. The simulation period starts January 1 of the calendar year in which the calculations are performed and ends January 1, 2050.

In summary, a groundwater model was used to estimate the drawdowns in year 2050 due to the exercise of existing permits and declarations. If the average rate of decline exceeds 2.50 feet per year in any model block, that block will be classified as a CMA and the allowable impacts thereafter on that block from any application should not exceed 0.10 feet per year. For blocks which have not been designated as a CMA at the time of application review, an application, in conjunction with existing rights, may cause declines to reach a rate up to 2.50 feet per year, and the application may be allowed to induce an additional 0.10 feet per year (total decline of 2.6 ft/yr). If a block is classified as a CMA at the time the application is being acted upon, all future applications for new appropriations under NMSA Section 72-12-3 will be denied if they are located within that block. In general, water rights may be moved within a CMA, or supplemental wells may be proposed, if the net effect on any CMA block does not exceed 0.10 feet per year and other statutory requirements have been met. However, water rights may not be transferred from outside of a CMA to within a CMA.

In addition to the block administration guidelines described above, applications are also evaluated to assess local impacts to nearby wells. Well completions and other site-specific information are considered to assess local impacts.

The more restrictive provisions of the guidelines may provide the basis for decision making; however nothing in these guidelines shall limit the State Engineer's authority to take alternative or additional actions relating to the management of the water resources of the DCAA as provided by New Mexico statutes, orders of the court, or Rules and Regulations of the Office of the State Engineer. Basin guidelines are to be applied on a case-by-case basis and alternative guidelines may be used, as recommended by the District Chief and approved by the Director of Water Rights. A glossary is also provided at the end ofthis document.



EXHIBIT 23

# BASIN GUIDELINES

## I. GENERAL GUIDELINES

A. New Appropriations: Applications filed under NMSA Section 72-12-3 to appropriate water from the CMA shall be denied if they were filed on or after the adoption date of these guidelines. Pending applications submitted before this date shall be assessed on a case-by-case basis.

B. Closed Areas: Areas closed to new appropriations under NMSA Section 72-12-3 by State Engineer order shall remain closed. Changes in point of diversion from the areas outside of a closed area into a closed area will be denied. Closed areas are shown in Figure 4.

C. Critical Management Area (CMA): Model cells have been designated a CMA if predicted drawdowns exceed an average annual decline of 2.50 feet per year over the planning period. The designation of CMA cells is based on the assumption that existing declarations and permits are exercised to their full extent. Designated CMA cells at the date of guideline approval are shown in Figure 3. The OSE has the sole responsibility to determine the boundaries of the CMAs and may modify these as applications are processed or as new data become available. Additional CMAs may be designated if predicted drawdowns exceed an average annual decline of 2.50 feet per year over the simulation period, which extends from the year calculations are performed to 2050.

D. Declaration and Permit Limits: For declarations of water rights other than those that meet the provisions of NMSA Section 72-1-9 (Water Development Plans), the OSE determination of the amount of ground water placed to consumptive beneficial use shall be the limit of any subsequent permit. For permitted water rights, that quantity of water applied to consumptive beneficial use is available for transfer provided the permit is in good standing. The inability to apply water to beneficial use for reasons beyond the owner's control may be taken into consideration.

E. Water Right Transfers: Applications may be accompanied with proof of the amount of water consumptively used. A farm delivery requirement (FDR) and consumptive irrigation requirement (CIR) of 3.00 and 1.6 acre-feet per acre per annum will be applied, respectively. The following limits shall apply unless the other values are recommended by the District Chief and approved by the Director of Water Rights:

1. For applications proposing to change the purpose of use of irrigation rights, diversions will be



EXHIBIT 23

limited to the CIR times the irrigated acreage of the existing right placed to beneficial use.

2. For applications to change purpose of use of spread or stacked irrigation rights, diversions will be limited to the CIR times the irrigated acreage of the original water right placed to beneficial use.
3. For applications proposing to change the place of use ofirrigation rights, other than spread or stacked water rights, diversions will be limited to the FDR times the irrigated acreage of the existing right.
4. For applications proposing to change the place of use ofirrigation rights, where water will be spread, diversions will be limited to the CIR acre-feet per acre per year times the irrigated acreage of the existing right placed to beneficial use.
5. For applications proposing to change place of use of irrigation rights, where water will be stacked, diversions will be limited to the combined diversion amount.
6. For applications proposing to change the purpose of use from non-irrigation to irrigation, diversions will be limited to the amount placed to consumptive beneficial use, unless Section I.E.7 applies.
7. Non-irrigation water rights placed to consumptive beneficial use which originated as irrigation water rights may be transferred back to irrigation use at the same diversion rate associated with the original water right.
8. For applications proposing the transfer of rights placed in conservation reserve program, in accordance with NMSA Section 72-12-8, diversions will be limited to the amount placed to beneficial use prior to the date the water right was placed in the program.
9. Applications to change place or purpose of use (without changing the point of diversion) will be considered throughout the basin regardless of CMA designation.

**F.** **Water Quality:** Groundwater quality assessments may be performed when necessary and shall consider groundwater capture and migration patterns. The evaluation technique to assess potential water quality degradation shall be selected on a case-by-case basis.

**G.** **Metering Requirements:** Meters may be required for wells permitted under NMSA Section 72-12-1.1, 72-12-1.2, and 72-12-1.3, in accordance with OSE rules and regulations. All other wells permitted after the adoption of these guidelines shall be metered. Permits issued for supplemental

wells, or other points of diversion shall be conditioned to require metering of each point of diversion (existing and new) covered under the permit.

H. Conservation of Water: Applications shall be reviewed to ensure that the highest and best technology practically available and economically feasible for the intended purpose is used. The applicant may be required to provide information to support this review.

I. Supplemental Wells: When applying for a well (an additional point of diversion) that will be used in conjunction with other wells associated with the permit, the applicant should submit a pumping schedule with the application for the proposed and existing wells. Ifthe applicant does not submit a schedule, the OSE may return the application for additional information or assume a worst case pumping distribution. The maximum combined diversion from all authorized points of diversion shall be the permitted diversion limit for a permit in good standing or the amount placed to beneficial use for a declared water right.

J. Return Flow Plan: A permit is required in order to increase a diversion based on return flow credit. Ifan application for return flow credit is filed, it shall include a return flow plan containing meter readings demonstrating flows directly to the source aquifer. Return flow credit will not be considered or granted for leakage or seepage occurring from irrigation or dairy operations, ponds, or any flows from onsite wastewater dispersal (septic) systems, or other constructed works not specifically designed to return water directly to the underground source.

K. Eastern Extension Area Restrictions: In accordance with State Engineer Order 46, wells shall not exceed 230 feet in depth except in instances where the formation at the 230 foot depth is sand and gravel not sufficiently stable to afford a satisfactory casing seat. Inthose instances the driller may, with the consent and under the supervision of the District Chief, proceed with the drilling to the top of the first clay strata next encountered below the 230 foot depth. The boundaries of the Eastern Extension Area are shown in Figure 4.

L. Calculation Methods: General methods include:

1. Drawdowns due to a change in point of diversion shall be estimated by finding the water level decline difference (net drawdown) between pumping the move-from and move-to wells. Drawdowns due to supplemental wells shall be computed by finding the net drawdown between the existing and proposed pumping configurations.

2. Calculations shall be made by assuming full production of the requested diversion amount unless the applicant has filed a pumping schedule acceptable to the OSE. If a reasonable pumping schedule has been proposed for the application and existing associated permits under the control of the applicant, analyses shall be performed in accordance with the schedule. If approved, the pennit shall be conditioned to limit pumping in accordance with the schedule or as the OSE otherwise determines necessary.
3. For drawdown calculation purposes only, the diversion amount will be considered to be fully consumed unless the State Engineer has approved a return flow plan.
4. Drawdowns due to the full exercise of existing water rights shall be estimated using the model developed by Cuddy and Keyes (2011) or other models accepted by the OSE.
5. References to CMAs and non-CMAs in this document pertain to model cells within the Cuddy and Keyes (2011) numerical model. The non-CMA or CMA designation assigned to any model cell extends vertically through all layers of the model. CMA designations pertain to the estimated conditions at year 2050 prior to the review of an application.
6. Local assessments shall be performed using the Theis equation or a numerical model.
7. Applications involving dry model cells shall be assessed on a case-by-case basis.

II. <u>REGIONAL ASSESSMENTS</u>

A. Restrictions for Wells to be Located Outside of a CMA: Ifa proposed well is outside of a CMA, the more restrictive of the following shall apply.

1. An application, in conjunction with the full exercise of existing wells, may be pennitted to induce drawdowns up to the rate of 2.50 feet per year on any cell outside of the CMA.
2. Ifdrawdowns reach 2.50 feet per year, an application may be permitted to induce a drawdown allowance of 0.10 feet times the number of years in the simulation period. The simulation period starts January 1 of the calendar year in which the calculations are performed and ends January 1, 2050.
3. For CMA cells existing prior to application evaluation, an application may be permitted provided the rate of drawdown on these cells does not exceed 0.10 feet per year times the number of years in the simulation period, unless the cumulative effects become excessive.



EXHIBIT 23

4. Applications to change point of diversion from a CMA to an area outside of the CMA will be considered.

B. Restrictions for Wells to be Located Within a CMA: For applications where the proposed well is within the CMA, the more restrictive of the following will apply:

1. Applications filed under NMSA Section 72-12-3, on or after the adoption date of these guidelines shall be denied. All pending applications filed before the adoption date shall be reviewed on a case-by-case basis.
2. Applications to move a point of diversion into the CMA from outside of the CMA will generally be denied but the District Chief may recommend to the Director of Water Rights that special circumstances be considered.
3. Applications to change point of diversion within a CMA are generally limited to transfers within contiguous CMA cells but the District Chief may recommend to the Director of Water Rights that special circumstances be considered. An application may be allowed to induce a net drawdown in a CMA up to 0.10 feet per year; times the number of years in the simulation period, unless the cumulative effects become excessive. Section Il.A.1 and Il.A.2 shall also apply.
4. Ifa permittee owns a primary or supplemental well within the area outside of the CMA, which abuts a CMA, an application for a supplemental well within that CMA may be considered.

C. Administrative Model: Applications may be evaluated using the Cuddy – Keyes Model (2011), or other subsequent model version selected by the OSE. The input files will be immediately updated following application approval for applications other than those filed under NMSA Section 72-12-1.1, 72-12-1.2, and 72-12-1.3. Model input files will be made available to the public upon request. Applications located in areas where the model is deemed inappropriate by the OSE shall be evaluated on a case-by-case basis by applying the Theis equation or other method. Observed field conditions may be incorporated.

D. Calculations: The following methods shall apply:

1. The diversion from any individual well shall be simulated from a single model cell and shall not be divided among more than one cell unless the vertical distribution into more than one layer is appropriate. Ifthe applied-for location creates uncertainty as to which model cell the



EXHIBIT 23

well could be located in, the most realistic scenario resulting in the greater impact will be used.

2. For a multi-layer stack of cells, the maximum drawdown in any layer shall be the value used to apply the guidelines. Ifany layer cell becomes a CMA, the other layers within the stack will also be considered a CMA.
3. Calculations shall be performed by assuming diversions begin in January of the calendar year the calculations are performed to January 2050, unless an alternative schedule has been proposed by the applicant and accepted by the OSE.
4. The rate of drawdown shall be computed by dividing the net drawdown by the number of years between the year the calculations are performed and year 2050.
5. Effects due to existing permits and declarations shall be made by assuming full production of the permitted and declared rights up to year 2050. Ifthe OSE modifies the amount permitted or found valid, these modifications may be incorporated to update baseline estimates. An updated inventory of water rights will be maintained by the OSE following the approval of any application other than those filed under NMSA Section 72-12-1.1, 72-12-1.2, and 72-12-1.3.

## III. LOCAL AREA ASSESSMENTS

A. Water Level Decline Restrictions: Local area assessments shall evaluate 40-year impacts on nearby wells of other ownership using the following guidelines:

1. Applications to appropriate water, in conjunction with the full exercise of existing rights, may be permitted to reduce water levels at existing well sites as follows:
   a. Up to 70 percent of the current water column.
   b. For domestic well sites, the water column may be reduced to 20.0 feet, unless the 70 percent guideline is more restrictive.
   c. For non-domestic well sites, the allowable drawdown will be assessed on a case-by-case basis using the procedures presented in Morrison (2006), or other appropriate method.
   d. Other limits as deemed appropriate.
2. Ifthe limits in 111.A.l are reached due to the use of existing rights alone, or in conjunction

with the application, the application may be permitted to induce a drawdown up to 0.10 feet per year times 40 years.

3. Applications to replace an existing well within 100 feet of the existing well location may be allowed to impact junior users by any amount. The State Engineer assumption, which may be confirmed by calculation, is that pumping from a new well within 100-feet of the old well will cause no impairment to existing water rights.
4. Decisions pertaining to local impairment shall be made on a case-by-case basis. Failure to meet any limit may be sufficient for rendering a negative decision. Upon recommendation by the District Chief, the Director of Water Rights may also consider:
   a. Validity of the water right of the affected well(s).
   b. Age of the affected well(s).
   c. Well yield.
   d. Water level decline and saturated thickness data.
   e. Whether the affected well(s) may be deepened and were constructed to secure a 40-year minimum supply.
   f. Conditional approval for an amount lower than requested to meet drawdown limits.
   g. Conditional approval based on the submittal of an acceptable monitoring and mitigation plan.
   h. Other appropriate considerations.

**B.** **Calculations:** The following methods shall apply:

1. Applications shall be evaluated on a case-by-case basis to assess impacts to nearby water supply wells of other ownership, including those permitted under NMSA 72-12-1.1, 72-12-1.2, and 72-12-1.3.
2. Local assessments may be performed using the Theis equation or appropriate numerical model. A numerical model may be used to estimate the 40-year impacts due to the full use of existing water rights.
3. Aquifer parameters used to calculate drawdowns on nearby wells may be obtained from accepted groundwater flow models or from reasonable site-specific information.
4. Calculations shall be computed for a 40-year period beginning at the start of the calendar year the calculations are being performed.

Adopted this twentieth day of May' 2011.

/O ;

John R. D'Antonio, Jr., P.E.
State Engineer

JOHN R. D'ANTONIO, JR. PE
NEW MEXICO
14846
STATE ENGINEER
REGISTERED PROFESSIONAL ENGINEER



/

# REFERENCES

Cuddy, Alan, and Keyes, Eric, 2011, Groundwater Model of the Mimbres Basin, Luna, Grant, Sierra and Dona Ana Counties, New Mexico: New Mexico Office of the State Engineer, Hydrology Bureau Technical Report 11-1.

Morrison, Tom, 2006, Guidelines for the Assessment of Drawdown Estimates: New Mexico Office of the State Engineer, Hydrology Bureau Report 06-01.

New Mexico Office of the State Engineer (NMOSE), 1982, Mimbres Basin Administrative Criteria. Prepared by New Mexico State Engineer Office, August 1982.

# GLOSSARY

Acre-foot: Quantity of water that will cover one acre ofland to a depth of one foot; 43,560 cubic feet or 325,851 gallons of water.

Aquifer: A saturated underground geologic formation of permeable materials capable of storing water and transmitting usable amounts of water to wells.

Basin-fill alluvium: The primary water supply source in the Mimbres Basin consisting of sand, gravel, clay and silt.

Beneficial use: All uses not defined by court decisions, statute, or the OSE as being wasteful. All beneficial uses are equal under New Mexico law.

Block administration: A procedure used in many areas of the state to administer water rights on a regional scale. An underground basin is divided into blocks or cells ofland and guidelines are applied as a way of determining which applications should be approved or denied. For the DCAA, an administrative block is 2,000 by 2,000 feet in size and is represented by a groundwater model cell.

Cell: A unit used in a numerical groundwater flow model that simulates part of an aquifer system. Aquifer properties, water levels and flows may vary from cell to cell, but are assumed to be uniform within a cell. Groundwater diversions and aquifer properties are assigned to each cell. Drawdowns are computed for each saturated cell and this information is compared to the guideline restrictions. Cells are used to represent administrative blocks.

Closed area: An area in which new appropriations under NMSA Section 72-12-3 are prohibited.

Consumptive beneficial use: The consumptive beneficial use for irrigation rights does not include incidental depletions. Consumptive beneficial use for non-irrigation rights is the diversion amount

less any return flow accepted by the OSE.

Critical management area (CMA): Model cells within the regional model boundaries requiring a greater degree of water level decline restriction compared to other areas. CMA limits are the threshold drawdowns that result in a non-CMA becoming a CMA.

Declared underground water basin: An area designated by the state engineer as requiring management to prevent impairment to existing water rights and to ensure the orderly development of water rights. Following the declaration of a basin by the OSE, applications must be filed to appropriate groundwater or to make changes to an existing water right.

Declared water right: A right established prior to the State Engineer's declaration of an underground water basin.

Diversion: The amount of ground water withdrawn by wells.

Domestic wells: Wells permitted under NMSA Section 72-12-1.1.

Drawdown: The decline in the water level over a given time caused by well diversions.

Ground water: Water located below the surface of the earth that is stored in pores of geologic sediments (sands and gravels), cracks and crevices of rocks (fractures) and solution cavities in limestone.

Groundwater-flow model: A series of mathematical equations representing the aquifers in the area that are solved using a computer. Models are used to estimate the water level declines due to the use of wells.

Guidelines: A statement of general procedure to be applied in a specific area by OSE personnel to any application to ensure a consistent set of guiding principles is used to evaluate all applications. Due to the wide variety of physical conditions that may be encountered, guidelines should be applied on a case-by-case basis.

Hydrogeologic: Characteristics that enable geologic units to store and transmit water.

Impairment (underground water): A finding by the state engineer of negative impact based on water level decline, remaining saturated thickness, available water columns and other relevant factors or facts.

Licensed water right: A water right in which a license has been issued by the State Engineer that defines the extent of the water right.

Local assessment: The determination and assessment of water level decline on water supply wells in the vicinity of a proposed well.

Move-from well: The well from which the water rights will be transferred.

Move-to well: The well to which water rights are being transferred.

New appropriation: A groundwater diversion permitted under NMSA Section 72-12-3.

NMSA: New Mexico Statutes Annotated.

Non-CMA: Areas within the regional model boundaries that are not designated a Critical Management Area. Restrictions are placed on non-CMAs that are less severe relative to those placed on CMAs.

Pending application: Any application that was filed with the OSE but has not been acted upon.

Permit: Is an application that has been approved by the state engineer for a specific purpose, such as changing point of diversion, drilling a supplemental or replacement well, changing place or purpose of use, etc.

Permitted right: The right to use water as provided for by permit. A water right is established by exercising a permit and by putting water to continuous beneficial use.

Primary well: The well that was originally permitted or declared.

Pumping schedule: May include a changing diversion rate with time for a given well, or the diversion rate for multiple wells.

Regional groundwater flow model: Is typically a basin-wide numerical model that allows the estimation of impacts due to existing wells and proposed appropriations.

Return flow credit: Is that amount of water directly returned to the same immediate underground source from which it was appropriated, after the water has been applied to beneficial use. Return flow credit will not be considered or granted for incidental leakage or seepage occurring from irrigation use, constructed works, or ponds, or for any flows from onsite dispersal (septic) systems.

Return flow plan: Is a report based on factual and acceptable scientific measurements demonstrating return flow credit.

Saturated thickness: The underground zone in which the void spaces in the rocks and soils are filled with water. As water levels decline, the saturated thickness also declines.

Section 72-1-9: The statute which allows municipalities, counties, state universities and public utilities supplying water to municipalities or counties to acquire water rights pursuant to a water development plan for reasonably projected water needs that will occur within 40 years.

Section 72-12-1.1: The statute that regulates wells required for relatively small amounts of water for

single or multiple households, including drinking and sanitary uses in conjunction with a commercial operation.

Section 72-12-1.2: The statute that regulates livestock wells.

Section 72-12-1.3: The statute that regulates wells used for a period not to exceed one-year for specifically listed purposes of use.

Section 72-12-3: The statute that regulates wells for new appropriation other than those applications filed under Section 72-12-1. Section 72-12-3 applications generally seek to obtain quantities of water greater than allowed by the OSE for Section 72-12-1 wells.

Spread irrigation water rights: Irrigation water rights on an acre of land that are less than the amount of water per irrigated acre associated with the average basin-wide cropping pattern.

Stacked water rights: Irrigation rights on an acre of land that exceed the amount of water per irrigated acre associated with the average basin basin-wide cropping pattern.

Statutory: Regulated by law.

Supplemental well: An alternate point of diversion to supplement the supply of an existing water right.

Theis equation: An analytical method that calculates water level declines using one set of aquifer parameters .

Transfer: Is a general term that is not defined in the statutes but is used to indicate a change in point of diversion or change of place or purpose of use of a water right.

Water column: Is the length of the column of water in a well that is potentially available for production. It is generally calculated by subtracting the non pumping water level from the well depth for wells that have screens extending to the bottom of the well. As water levels decline due to pumping, water columns and well yields also decline.

Water right: The amount of water that can be legally placed to beneficial use by the water right owner.

Well completion: The specific well construction information provided in a well record, such as the depth of a well, perforated interval, casing materials, surface seals, or other relevant data.

# INDEX OF STATE ENGINEER ORDERS

## (UPDATED July 5, 2023)

| ORDER NUMBER | DATE SIGNED | BASIN | PURPOSE OF ORDER |
|---|---|---|---|
| 199 | 7/5/2023 | Zuni Closure | To close the area to new appropriations to protect the areas unique historical and cultrual significance of the Zuni Salt Lake and the Sanctuary. |
| 198 | 7/5/2023 | Hot Springs | To close the basin to new Appropriations due to the affect on perennially saturated portions of the Palonas Creek or the Rio Grande |
| 197 | 6/30/2023 | Interim Closure of a Portion of the Gallup Underground Water Basin | Areas within the Zuni River Basin which is within the Gallup Underground Water Basin are critical to endangered species which need consistent flows, this closure will assist in controlling that flow. |
| 196 | 10/3/2022 | Gallinas River | Rescinding order issued 6/27/22 |
| 195 | 6/27/2022 | Gallinas River | Rescinded on 10/3/2022 with the issuance of Order 196. Temporarily restricts diversions of water from Gallinas River Basin in support of wildfire response. In effect until SE so orders or until NM Governor lifts or rescinds emergency declarations. |
| 194 | 5/6/2022 | Gallinas River | Rescinded 06/27/2022 with issuance of Order 195. Temporarily restricts diversions of water from Gallinas River Basin in support of wildfire response. In effect until SE so orders or until NM Governor lifts or rescinds emergency declarations. |
| 193 | 12/21/2021 | Animas | Rescinding Orders 23 and 57 which closed areas to new 72-12-3 appropriations, as these were replaced by administrative guidelines. |
| 192 | 12/21/2021 | Mimbres | Rescinding Orders 14, 27, 37, 53, 54, 58, and 78 which closed areas to new 72-12-3 appropriations as these are replaced by the adminsitrative guidelines |
| 191 | 12/3/2021 | Lower Pecos River Basin | The order informs all affected parties of the procedures under which the State Engineer will administer water resources by priority, should such administration be necessary in response to a future priority call. |
| 190 | 3/22/2021 | Lea, Captian and Carlsbad Basins | Temporarily closes portions of the Lea, Capitan, and Carlsbad Underground Water Basins |
| 189 | 7/17/2020 | Rio Grande Basin | Emergency Release of Approx. 38,000 af retained water pursuant Article VI of the Rio Grande Compact |
| 188 | 10/10/2018 | Nambe, Pojoaque, Tesuque Water Master District | Extension of 2017 metering order |
| 187 | 8/27/2018 | Rio Chama Temporary Order | Alternate administration until 10/31/2018 |
| 186 | 10/3/2017 | Nambe, Pojoaque, Tesuque Metering Order | Metering Order |
| 185 | 3/26/2014 | Mimbres | Penalty Assessment order for Mimbres non-compliance with Order 184 |



EXHIBIT 24

# INDEX OF STATE ENGINEER ORDERS

## (UPDATED July 5, 2023)

| ORDER NUMBER | DATE SIGNED | BASIN | PURPOSE OF ORDER |
|---|---|---|---|
| 184 | 6/12/2013 | Mimbres | Metering Surface Water Diversions in the Mimbres Water Master |
| 183 | 5/23/2013 | Fort Sumner | Metering Order for Groundwater Withdrawals in the Fort Sumner Underground Basin |
| 182 | 10/17/2011 | Statewide | Amendments of Rules and Regulations Governing …Domestic Use in accordance with Section 72-12-1.1 NMSA |
| 181 | 9/26/2008 | Mimbres | Expansion of the Upper Mimbres Water Master District |
| 180 | 3/21/2007 | Lower Rio Grande | Requirements for Metering Groundwater Withdrawals in the Lower Rio Grande Watermaster District |
| 179 | 1/19/2007 | CHAMA | Chama Water Master District |
| 178 | 1/19/2007 | NPT | Nambe-Pojaque-Tesuque Water Master District |
| 177 | 7/25/2006 | Mimbres | Domestic Well on the Upper Mimbres Watermaster |
| 176 | 7/31/2006 | Statewide | Domestic Well Regulations. Repeals Articles 1-15 through 1-15.5; 1-15.7 through 1-15.8; and 1-16 of Rules and Regs Underground Water. |
| 175 | VOID | ORIGINALLY HELD BY GREG LEWIS | **FOR THE Adoption of AWRM - Lower Pecos-voided** |
| 174 | 1/19/2006 | Lower Pecos River Basin | Creation of the Lower Pecos River Basin Water Master District and Appointment of the Water Master |
| 173 | 1/9/2006 | San Juan River Basin | Creation of the San Juan River Basin Water Master District and Appointment of the Water Master |
| 172 | 12/20/2005 | Lower Rio Grande | First Amended Metering Order for Groundwater Withdrawals in the Lower Rio Grande |
| 171 | 12/16/2005 | Upper Mimbres | Creation of the Upper Mimbres Water Master District and Appointment of the Water Master |
| 170 | 12/3/2004 | Hondo | Creation of the Hondo Water Master Sub-District |
| 169 | 12/3/2004 | Lower Rio Grande | Creation of the Lower Rio Grande Water Master District and Appointment of the Water Master |
| 168 | 12/3/2004 | Lower Rio Grande | Metering Order for Groundwater Withdrawals in the Lower Rio Grande |
| 167 | 8/29/2003 | Gallinas River | Adoption of regulation declaring the Gallinas River Water Sub-District of the Pecos River Stream System |
| 166 | 9/23/2005 | Lea County, Fort Sumner, and Curry County Underground Water Basins | Extension of the Lea County, Fort Sumner, and Curry County Underground Water Basins |
| 165 | 9/23/2005 | Causey Lingo Underground Water Basin | Declaration of the Causey Lingo Underground Water Basin |
| 164 | 9/23/2005 | Lordsburg, Nutt-Hockett, Animas, and Playas Underground Water Basins | Extension of the Lordsburg, Nutt-Hockett, Animas, and Playas Underground Water Basins |



EXHIBIT 24

# INDEX OF STATE ENGINEER ORDERS

## (UPDATED July 5, 2023)

| ORDER NUMBER | DATE SIGNED | BASIN | PURPOSE OF ORDER |
|---|---|---|---|
| 163 | 9/23/2005 | Mount Riley, Hatchita, Cloverdale, and Yaqui Underground Water Basins | Declaration of the Mount Riley, Hatchita, Cloverdale, and Yaqui Underground Water Basins |
| 162 | 9/23/2005 | Tularosa Underground Water Basin | Extension of the Tularosa Underground Water Basin |
| 161 | 9/23/2005 | Clayton and Canadian Underground Water Basins | Declaration of the Clayton Underground Water Basin and Extension of the Canadian River Underground Water Basin |
| 160 | 8/31/2005 | Statewide | Adoption of Revised Rules and Regulations for Well Driller Licensing; Construction, Repair and Plugging of Wells. Repeals Article 4 of SE 66-1. |
| 159 | 3/9/2005 | Statewide | Adoption of Rule and Regulations For Dam Design, Construction and Dam Safety |
| 158 | 1/14/2005 | Statewide | Adoption of Rules and Regulations Governing the Approriation and Use of the Surface Waters of New Mexico. See rule for History of Repealed Materials. |
| 157 | 1/31/2001 | Statewide | Adoption of Rules and Regulations Implementing the Groundwater Storage and Recovery Act |
| 156 | 9/13/2000 | Otero & Chaves Counties | Declaring the Salt Underground Water Basin |
| 155 | 3/11/1998 | Tucumari | Underground Water Basin Extension for Tucumcari |
| 154 | 12/3/2004 | Active Water Resource Management Rules and Regulations | Adoption of Active Water Resource Management Regulations |
| 153 | 3/31/1998 | Rules & Regulations for Hearings & Procedures | Adoption of Final Regulations Governing Hearing Procedures for Administrative Hearings Concerning Surface & Ground Water Rights |
| 152 | 9/14/1994 | Rules & Regs. Underground Water | In the Matter of the Promulgation of Article 1-19 Rules & Regulations Governing Drilling of Wells and appropriation and use of ground water in New Mexico |
| 151-A | 7/12/1994 | Gallup | Acceptance of Basin Extension |
| 151 | 3/18/1994 | Gallup | Extends Basin |
| 150-A | 7/12/1994 | Estancia | Acceptance of Basin Extension |
| 150 | 3/14/1994 | Estancia | Extends Basin |
| 149-A | 5/7/1993 | Upper Pecos | Corrects Basin Description |
| 149 | 2/8/1993 | Upper Pecos | Extends Basin |
| 148-A | 5/7/1993 | Fort Sumner | Corrects Basin Description |
| 148 | 2/8/1993 | Fort Sumner | Extends Basin |
| 147-A | 5/7/1993 | Roswell | Corrects Basin Description |
| 147 | 2/8/1993 | Roswell | Extends Basin |
| 146-A | 5/7/1993 | Carlsbad | Acceptance of Basin Extention |



EXHIBIT 24

# INDEX OF STATE ENGINEER ORDERS

## (UPDATED July 5, 2023)

| ORDER NUMBER | DATE SIGNED | BASIN | PURPOSE OF ORDER |
|---|---|---|---|
| 146 | 2/8/1993 | Carlsbad | Extends Basin |
| 145-A | 5/7/1993 | Penasco | Acceptance of Basin Extension |
| 145 | 2/8/1993 | Penasco | Extends Basin |
| 144-A | 5/7/1993 | Hondo | Corrects Basin Description |
| 144 | 2/8/1993 | Hondo | Extends Basin |
| 143 | 2/8/1993 | Rules & Regs. Underground Water | Promulgation of Article 1-18 |
| 142-A | 10/13/1989 | Curry County | Acceptance of Basin Extension |
| 142 | 8/31/1989 | Curry County | Establish Basin (32) |
| 141 | 7/6/1987 | Rules & Regs. Underground Water | Promulgation of Article 6 |
| 140 | 6/10/1987 | Rules & Regs. Surface Water | Revises Article VII |
| 139 | 1/26/1987 | Rules & Regs. Underground Water | Promulgation of Article 1-17 |
| 138 | 1/29/1986 | Rules & Regs. Underground Water | Revises Articles 1-3, 1-5, 1-7, 1A-3, 2-2, 2-7, and 2-8 |
| 137 | 12/28/1984 | Hondo | Extends Basin |
| 136 | 10/18/1984 | Rules & Regs. Underground Water | Revises Articles 1-3, 1-7, 2-7, and Promulgation of Article 1-A |
| 135 | 9/17/1982 | Lower Rio Grande | Extends Basin |
| 134 | 9/17/1982 | Las Animas Creek | Extends Basin |
| 133 | 9/17/1982 | Hot Springs | Extends Basin |
| 132 | 7/7/1982 | Tucumcari | Establish Basin (31) |
| 131 | 7/7/1982 | Tularosa | Establish Basin (30) |
| 130 | 1/6/1983 | Rules & Regs. Underground Water | Revises Article 1-15 |
| 129 | 8/6/1981 | Rules & Regs. Underground Water | Revises Articles 1-11 and 1-12 |
| 128 | 12/23/1980 | Rio Grande | Extends Basin |
| 127 | 9/12/1980 | Hueco | Establish Basin (29) |
| 126 | 9/11/1980 | Lower Rio Grande | Establish Basin (28) |
| 125 | 3/5/1980 | Gallup | Establish Basin (27) |
| 124-A | 3/12/1980 | San Juan | Extends Basin |
| 124 | 7/29/1976 | San Juan | Establish Basin (26) |
| 123 | 5/14/1976 | Rio Grande | Extends Basin |
| 122 | 5/14/1976 | Bluewater | Extends Basin |
| 121 | 6/4/1975 | Carlsbad | Extends Basin |
| 120 | 3/28/1975 | Estancia | Extends Basin |
| 119 | 3/29/1974 | Penasco | Extends Basin |
| 118 | 9/7/1973 | Rio Grande | Extends Basin |
| 117 | 5/8/1973 | Canadian | Establish Basin (25) |
| 116 | 6/16/1972 | Mimbres | Extends Basin |



EXHIBIT 24

# INDEX OF STATE ENGINEER ORDERS

## (UPDATED July 5, 2023)

| ORDER NUMBER | DATE SIGNED | BASIN | PURPOSE OF ORDER |
|---|---|---|---|
| 115 | 2/14/1972 | Upper Pecos | Establish Basin (24) |
| 114 | 12/22/1971 | Rio Grande | Extends Basin |
| 113 | 12/31/1970 | Rio Grande | Extends Basin |
| 112 | 11/16/1970 | Rio Grande | Extends Basin |
| 111 | 10/21/1970 | Fort Sumner | Extends Basin |
| 110 | 2/3/1970 | Mimbres | Extends Basin |
| 109 | 1/26/1970 | Rio Grande | Extends Basin |
| 108 | 9/5/1969 | Hondo | Extends Basin |
| 107 | 2/24/1969 | Mimbres | Extends Basin |
| 106 | 8/9/1968 | Las Animas Creek | Establish Basin (23) |
| 105 | 6/10/1968 | Rio Grande | Extends Basin |
| 104 | 6/8/1967 | Hot Springs | Reopens Fresh (Cold) Artesian Water |
| 103 | 6/8/1967 | Rio Grande | Extends Basin |
| 102 | 11/15/1966 | Sandia | Establish Basin (22) |
| No num. | 11/1/1966 | Rules & Regs. Underground Water | Revised R & R for Ground Water |
| 101 | 5/4/1966 | Rio Grande | Extends Basin |
| 100 | 10/5/1965 | Rules & Regs. Underground Water | Amends Article IV, and Paragraph 2 of Article V, Notice of Publication, Proof of Publication, Protest, Hearing (Rescinded) (See Order dated 11/1/66) |
| 99 | 9/28/1965 | Capitan | Establish Basin (21) |
| 98 | 8/31/1965 | Nutt-Hockett | Extends Basin |
| 97 | 5/4/1965 | Rio Grande | Extends Basin |
| 96 | 10/2/1964 | Roswell | Extends Basin |
| 95 | 10/2/1964 | Carlsbad | Extends Basin |
| 94 | 5/7/1964 | Carlsbad | Extends Basin |
| 93 | 5/7/1964 | Fort Sumner | Establish Basin (20) |
| 92 | 6/4/1963 | Pecos Stream | Declaration of Pecos Valley Surface Water District |
| 91 | 2/14/1963 | Gila-San Fran. | Extends Basin |
| 90 | 2/14/1963 | San Simon | Extends Basin |
| 89 | 2/12/1962 | Rules & Regs. Surface Water | Amends Articles VI-A, High Water Line Traverse |
| 88-Cor | 12/1/1961 | Jal | Properly Describes Basin |
| 88 | 11/24/1961 | Jal | Establish Basin (19) |
| 87 | 10/27/1961 | Rules & Regs. Underground Water | Amends Article I, Paragraph 12, Governing the Forfeiture of Water Rights (Rescinded) (See Order dated 11/1/66) |



EXHIBIT 24

# INDEX OF STATE ENGINEER ORDERS

## (UPDATED July 5, 2023)

| ORDER NUMBER | DATE SIGNED | BASIN | PURPOSE OF ORDER |
|---|---|---|---|
| 86 | 8/22/1961 | Rules & Regs. Underground Water | Rescinds Order #79, Amends Article III Governing the Drilling of Wells (Rescinded) (See Order dated 11/1/66) |
| 85 | 8/11/1961 | Nutt-Hockett | Establish Basin (18) |
| 84 | 11/18/1960 | Lordsburg | Establish Basin (17) |
| 83 | 10/20/1960 | Virden Valley | Extends Basin |
| 82 | 10/20/1960 | San Simon | Establish Basin (16) |
| 81 | 10/20/1960 | Gila-San Fran. | Establish Basin (15) |
| 80 | 6/3/1960 | Mimbres | Extends Basin |
| 79 | 6/3/1960 | Rules & Regs. Underground Water | Amends Article III, Defines Vested Rights (Rescinded) (See Order #86 and Order dated 11/1/66) |
| 78 | 7/31/1959 | Mimbres | Reopens Franklin Area - rescinded by Order 192 12/21/21 |
| 77 | 7/2/1959 | Roswell | Extends Basin |
| 76 | 7/2/1959 | Rules & Regs. Surface Water | Amends Order #62, Procedures for Filing Surface Water Declarations |
| 75 | 5/11/1959 | Pecos Stream | Declaration of Pecos Valley Surface Water District |
| 74 | 4/29/1959 | Rules & Regs. Underground Water | Rescinds Orders #34, #47, and Portions of the Manual, Replacement & Supplemental Wells (Rescinded) (See Order dated 11/1/66) |
| 73 | 1/20/1959 | Rules & Regs. Underground Water | Amends Order #63, Concerning Casing, Cementing & Testing Progress for Certain Production Zones of Oil (Rescinded) (See Order dated 11/1/66) |
| 72 | 8/1/1958 | Rules & Regs. Underground Water | Limiting Appropriation Under One Application (Rescinded) (See Order dated 11/1/66) |
| 71 | 3/19/1958 | Carlsbad | Extends Basin |
| 70 | 11/25/1957 | Rules & Regs. Underground Water | Amends Order # 64, Artesian Well Casing Specification (Rescinded) (See Order dated 11/1/66) |
| 69 | 7/22/1957 | Rules & Regs. Underground Water | Plugging or Maintaining All Drilled Holes (Rescinded) (See Order dated 11/1/66) |
| 68 | 3/10/1957 | Rules & Regs. Surface Water | Stock Water Dams Specifications |
| 67 | 1/24/1957 | Rules & Regs. Underground Water | Rescinds Order #40, Procedures to File for Domestic & Stock Wells (Rescinded) (See Order dated 11/1/66) |
| 66 | 1/7/1957 | Virden Valley | Amends Order #8 |
| 65 | 11/29/1956 | Rio Grande | Establish Basin (14) |
| 64 | 9/21/1956 | Rules & Regs. Underground Water | Construction of Artesian Wells (Amended- See Order #70) (Rescinded- See Order dated 11/1/66) |

# INDEX OF STATE ENGINEER ORDERS

## (UPDATED July 5, 2023)

| ORDER NUMBER | DATE SIGNED | BASIN | PURPOSE OF ORDER |
|---|---|---|---|
| 63 | 9/11/1956 | Rules & Regs. Underground Water | Procedures for Construction of Oil, Gas, Mineral & Test Wells in Artesian Basins (Amended- See Order #73) (Rescinded- See Order dated 11/1/66) |
| 62 | 7/20/1956 | Rules & Regs. Surface Water | Procedures & Requirements for Recording Old Surface Rights (Amended) (See Order #76) |
| 61 | 5/31/1956 | Rules & Regs. Surface Water | Procedures to File Formal Application to Appropriate |
| 60 | 5/21/1956 | Bluewater | Establish Basin & Closes Basin (13) |
| 59 | 3/1/1956 | Rules & Regs. Underground Water | Maximum length of Canals Lined and Unlined/Maximum Allowable Capacity of Irrigation Reservoirs (Rescinded) (See Order dated 11/1/66) |
| 58 | 2/23/1956 | Mimbres | Extends Basin & Closes Extension - Order 192 partially rescinded 12/21/21 |
| 57 | 2/23/1956 | Animas | Extends Basin & Closes Extension - Order 193 partially rescinded 12/21/21 |
| 56 | 2/23/1956 | Playas | Establish Basin (12) |
| 55 | 1/20/1956 | Pecos Stream | Declaration of Pecos River Water District of Pecos River S.S. |
| 54 | 1/4/1956 | Mimbres | Closes Western Extension (Red Mountain Area) Order 192 rescinded 12/21/21 |
| 53 | 1/4/1956 | Mimbres | Closes Eastern Extension (Franklin area) Order 192 rescinded 12/21/21 |
| 52 | 11/3/1955 | Portales | Excludes part From Order #51 |
| 51 | 7/18/1955 | Portales | Extends Basin |
| 50 | 6/1/1955 | Rules & Regs. Underground Water | Domestic Well Permits, Conditions & Requirements of Converting Artesian Irrigation Waters Well to Domestic Well (See Order #67 and Order dated 11/1/66) |
| 49 | 3/24/1955 | Rules & Regs. Underground Water | All Ground Water Wells Drilled into Penetrating the Limestones & Other Rocks of the Carlsbad & Capitan Shall be Drilled in Accordance with Artesian Specifications in La Huerta & Happy Valley Area (Rescinded) (See Order dated 11/1/66) |
| 48 | 1/17/1955 | Pecos Stream | Rescinds Order #41 (Rescinds Gallinas Water District) |
| 47 | 10/29/1954 | Rules & Regs. Underground Water | Requirements for Changing Location of Wells (Rescinded) (See order #74 and Order dated 11/1/66) |
| 46 | 8/9/1954 | Mimbres | Restricted Drilling Depths in Eastern Extension (Franklin area) * Also Order from hearing 1951 |
| 45 | 5/10/1954 | Roswell | Extends Basin & Closes Extension |



EXHIBIT 24

# INDEX OF STATE ENGINEER ORDERS

## (UPDATED July 5, 2023)

| ORDER NUMBER | DATE SIGNED | BASIN | PURPOSE OF ORDER |
|---|---|---|---|
| 44 | 9/1/1953 | Penasco | Establish Basin (11) |
| 43 | 9/1/1953 | Hondo | Establish Basin (10) |
| 42 | 9/1/1953 | Roswell | Extends Basin |
| 41 | 7/27/1953 | Pecos Stream | Declaration of Gallinas River Water District (Rescinded) (See Order #48) |
| 40 | 2/5/1943 | Rules & Regs. Underground Water | Procedures for Applying for Domestic & Stock Wells (Rescinded) (See Order #67 and Order dated 11/1/66) |
| 39 | 4/20/1953 | Rules & Regs. Underground Water | Requirements to Change Place or Method of Use for Developed & Inchoate Rights (Rescinded) (See Order dated 11/1/66) |
| 38 | 2/2/1953 | Lea County | Amends Order #36, Reopens Additional Part of Basin |
| 37 | 1/9/1953 | Mimbres | Closes Columbus Area - Order 192 rescinded 12/21/21 |
| 36 | 12/31/1952 | Lea County | Reopens Part of Basin (Amended) (See Order #38) |
| 35 | 10/21/1952 | Carlsbad | Extends Basin |
| 34 | 10/7/1952 | Rules & Regs. Underground Water | Requires Licensed Drillers & Permits In Declared Basins. Specifies Size of Casing for Artesian Wells (Rescinded) (See Order #74 and Order dated 11/1/66) |
| 33 | 10/1/1952 | Lea County | Extends Basin |
| 32 | 7/12/1952 | Rules & Regs. Surface Water | Procedures of Protest on Surface Applications |
| 31 | 7/1/1952 | Pecos Stream | Declaration of Lower Pecos River Water District of Pecos River S.S. |
| 30 | 5/28/1952 | Rules & Regs. Underground Water | Requires Every Non-Flowing Well to be Constructed With an Opening in the Outside Casing for Measuring Water Levels (Rescinded) (See Order dated 11/1/66) |
| 29 | 7/17/1950 | Hot Springs | Reopens Portion of Mineral Water |
| 28 | 5/1/1950 | Portales | Establish Basin (9) |
| 27 | 4/26/1950 | Mimbres | Reopens Red Mountain, Columbus, & Eastern Extension Areas - Order 192 rescinded 12/21/21 |
| 26 | 1/31/1950 | Roswell | Extends Basin & Closes Extension |
| 25-A | 6/19/1950 | Estancia | Describes area where first water is so heavily mineralized as to be unfit for irrigation purposes |
| 25 | 1/31/1950 | Estancia | Establish Basin (8) |
| 24 | 12/19/1948 | Lea County | Closes Basin |
| 23 | 6/14/1948 | Animas | Closes Basin - Order 193 rescinded 12/21/21 |
| 22 | 5/5/1948 | Animas | Establish Basin (7) |
| 21 | 1/12/1948 | Roswell | Extends Basin & Closes Extension |



EXHIBIT 24

# INDEX OF STATE ENGINEER ORDERS

## (UPDATED July 5, 2023)

| ORDER NUMBER | DATE SIGNED | BASIN | PURPOSE OF ORDER |
|---|---|---|---|
| 20 | 10/16/1947 | Carlsbad | Establish Basin (6) |
| 19 | 8/26/1947 | Hot Springs | Closes Basin to Cold Artesian Water |
| 18 | 8/26/1947 | Hot Springs | Reopens Part of Mineral Water |
| 17 | 8/21/1946 | Roswell | Closes 1946 Extension |
| 16 | 8/21/1946 | Roswell | Extends Basin |
| 15 | 4/27/1946 | Roswell | Closes 1940, 1941, 1942 Extensions |
| 14 | 4/20/1945 | Mimbres | Closes Basin & 1942 Extensions- Rescinded by Order 192 |
| 13 | 10/1/1942 | Roswell | Extends Basin |
| 12 | 4/13/1942 | Mimbres | Extends Basin (Red Mountain Extension) |
| 11 | 4/7/1942 | Mimbres | Extends Basin (Eastern Extension or Franklin Area) |
| 10 | 1/6/1941 | Roswell | Extends Basin |
| 9 | 2/13/1940 | Roswell | Extends Basin |
| 8 | 12/5/1938 | Virden Valley | Establish Basin (5) (Amended) (See Order #66) |
| 7 | 8/1/1937 | Roswell | Closes Basin & 1935 Extension |
| 6 | 7/1/1937 | Hot Springs | Closes Basin to Mineral Water |
| 5 | 4/15/1935 | Hot Springs | Establish Basin (4) |
| 4 | 2/4/1935 | Roswell | Extends Basin |
| 3 | 8/21/1931 | Lea County | Establish Basin (3) |
| 2 | 8/21/1931 | Roswell | Establish Basin (2) |
| 1 | 7/29/1931 | Mimbres | Establish Basin (1) |



EXHIBIT 24

# FIELD INSPECTION REPORT



**Basin: Mimbres** **PERMIT: N/A**

**FILE** N/A
**PERMIT** N/A
**OWNER** N/A
**SUBJECT** Field Inspection at Border Wall
**SOURCE** Mimbres Underground Water Basin
**USE** Border Wall Construction
**DRILLER** Cascade Drilling, LP (WD-1664 and/or WD-1918)
**POD** Cascade Well, Lot 1 (SE¼SE¼) of Section 14, Township 29 South Range 6 West, N.M.P.M.
Approx. Latitude: 31° 47’ 01.61” N, Longitude: -107° 25’ 03.59” W
**CHECKED** 7/23/2026
**CHECKED BY** Lloyd Valentine & Karl Frisch

**DIRECTIONS**

Going southbound on NM State Highway 11 into Columbus, NM, turn left onto NM State Highway 9 eastbound. Proceed down NM State Highway 9 eastbound for approximately 14.1 miles to an intersection on the right at mile marker 102 for County Road B002 (Anapra Road). At the intersection, there will be a Y-junction for County Road B002 (Anapra Road) on the left and a private road on the right that traverses southbound towards the border. Proceed southbound down the private road for approximately 1.5 miles to a construction site on the Roosevelt Easement along the U.S./Mexico International Border. The two Drill rigs operated by Cascade Drilling were located within the Roosevelt Easement near the border wall.

**REMARKS**

Field inspection was conducted on July 23, 2026 at the U.S./ Mexico International Border Wall approximately 13.5 miles east of Columbus, New Mexico to revisit and observe un-permitted drilling activities taking place. Upon arrival at a construction site at a general location on the Roosevelt Easement in Lot 1 (SE¼SE¼) of Section 14, Township 29 South Range 6 West N.M.P.M., A well rig was observed with its mast up and several Cascade Drilling vehicles and workers in the vicinity of the well rig. OSE staff photographed the activities from a distance due to heavy construction activity at the site.

**SEE ATTACHED PHOTOS/MAP:**

**FIELD INSPECTION REPORT**
**Basin: Mimbres** **PERMIT: N/A**







EXHIBIT 25

# FIELD INSPECTION REPORT



**Basin: Mimbres** **PERMIT: N/A**




EXHIBIT 25

6TH JUDICIAL DISTRICT
LUNA COUNTY NM
FILED IN MY OFFICE
8/27/2026 8:40 AM
MARGARITA GOMEZ
DISTRICT COURT CLERK
Liberty Gigante

**STATE OF NEW MEXICO**
**COUNTY OF LUNA**
**SIXTH JUDICIAL DISTRICT COURT**

**ELIZABETH ANDERSON, P.E.**, New Mexico State Engineer,

Plaintiff,

**v.**

No. D-619-CV-2026-00332
Water Region 2

**UNITED STATES OF AMERICA**,

Defendant.

**BARNARD CONSTRUCTION COMPANY, INC.**,

Defendant.

**WYATT DRILLING ARIZONA, LLC;** and **VINCENT WYATT**, aka **VINNIE WYATT**, **DBA: H.E. BEEMAN WELL DRILLING**, **BEEMAN DRILLING CO.**, **BEEMAN DRILLING**, **BEEMAN WELL DRILLING**, **WYATT DRILLING**, and **WYATT DRILLING, INC.**,

Defendant.

**CASCADE DRILLING, LP**; and **ANDREW WHITSELL, DBA: CASCADE ENVIRONMENTAL, LLC, CASCADE ENVIRONMENTAL, CASCADE DRILLING,**

Defendant.

**EXHIBITS – 26 THROUGH 34**

**PART 5 OF 5**

**COMPLAINT TO ENJOIN THE ILLEGAL DIVERSION AND USE OF WATER AND FOR PAYBACK OF ILLEGALLY APPROPRIATED WATER**

# FIELD INSPECTION REPORT
**Basin: HA** **PERMIT:**

**FILE**

**PERMIT**

**OWNER** Department of Defense/Bernard Spencer Joint Venture

**SUBJECT** Field Inspection

**SOURCE** Hachita Underground Water Basin

**USE** Construction/Municipal

**POD**

**CHECKED** 07/24/2026

**CHECKED BY** Lloyd Valentine & Karl E. Frisch

**DIRECTIONS**

From the District III office, head West on West Spruce Street for .5 miles and turn left (south) onto the Old Lordsburg Highway (NM-418 W). After approximately 3.6 miles on Old Lordsburg Highway, turn left (south) onto Hermanas Road SW. Continue south along Hermanas Road SW for roughly 31 miles. This road terminates at State Road 9 (NM-9) at the abandoned Hermanas railhead. At the junction of Hermanas Road and Highway 9 turn right (west) onto Highway 9 towards Hachita and continue approximately 12 miles to mile marker 56. Go through the gate on the south side of the road and proceed approximately 5.3 miles south along the dirt road to the border wall. Turn left (east) and proceed approximately 1 mile to the drill site. Coordinates are approximately 31° 47’ 1.93” N -108° 9’ 18.66” W.

**REMARKS**

On July 21, 2026, Lloyd Valentine and Karl Frisch revisited a well site located at approximately 31° 47’ 1.93” N -108° 9’ 18.66” W. OSE staff previously visited this site due to a complaint from a concerned citizen that a well was being drilled near the border wall (see field report dated 3/17/2026). During this visit, OSE staff found the well to be plugged. Our visit occurred after a major rain event and there was water everywhere. The location of the well was easy to identify. There was a couple of inches of water covering the plugged well. After trying to scoop the water out, OSE staff observed what appears to be cement plugging the abandoned well.

**SEE ATTACHED PHOTOS:**

**FIELD INSPECTION REPORT**
**Basin: HA** **PERMIT:**





# FIELD INSPECTION REPORT 3

**Basin: HA** **PERMIT:**




**Coordinates**

**UTM - NAD 83 (m) - Zone 12**
Easting: 769387.16
Northing: 3520003.44

**State Plane - NAD 83 (ft) - Zone W**
X: 2623090.83
Y: 285267.73

**Degrees Minutes Seconds**
Latitude: 31° 47' 1.93"
Longitude: -108° 9' 18.66"

**Spatial Information**

OSE District: 3 County: Luna
Land Grant: Not in Land Grant
Declared GW Basin: Hatchita
Sub-Basin: Playas Lake
Abstracting Project Area:
Hatchita

Regulation Area:
**No Restrictions**

PLSS Description
SE SW SW SE Qtr of Sec 15 of 29S 13W

Derived from Projected PLSS- Qtr Sec. locations are calculated and are only approximations

**File Number:**
**Owner:**
**Purpose:** Compliance Check
**Author:** Lloyd Valentine

NEW MEXICO OFFICE OF THE STATE ENGINEER

1:164,310
mi
0 0.5 1 2
N

Source: Earthstar
Date: NA
Resolution (m): 15.00
Accuracy (m): 12

7/24/2026

OSE District Boundary
Federal Lands
New Mexico State Trust Lands
Both Estates

World Imagery
Low Resolution 15m Imagery
High Resolution 60cm Imagery
High Resolution 30cm Imagery

Citations
38m Resolution Metadata

EXHIBIT 26

# FIELD INSPECTION REPORT



**Basin: Mimbres** **PERMIT: N/A**

| | |
|---|---|
| **FILE** | N/A |
| **PERMIT** | N/A |
| **OWNER** | Department of Defense/Bernard Spencer Joint Venture |
| **SUBJECT** | Field Inspection at Border Wall |
| **SOURCE** | Mimbres Underground Water Basin |
| **USE** | Border Wall Construction |
| **DRILLER** | Wyatt Drilling/Beeman Drilling |
| **POD** | Approx. Latitude: 31° 47' 01.87" N, Longitude: -107° 55' 12.28" W |
| **CHECKED** | 7/21/2026 & 7/23/2026 |
| **CHECKED BY** | Lloyd Valentine & Karl Frisch |

**REMARKS**

Two field inspections were conducted at a location along the border wall approximately 17.25 miles west of the Columbus, New Mexico Port of Entry, one on July 21, 2026 and a second on July 23, 2026, to revisit and observe un-permitted drilling activities taking place. On July 21, 2026, OSE staff observed two well rigs at the location. One well rig was parked, which was the same well rig previously observed drilling a different well along the border, and the other had its mast up with its bit in the hole. Due to a major rain event the previous night no active construction activities were in progress. On July 23, 2026, staff revisited the site and observed both well rigs in the same location. At the time of our visit the well rig with its bit in the hole was actively drilling.

**SEE ATTACHED MAP/PHOTOS:**



**FIELD INSPECTION REPORT**



**Basin: Mimbres**

**PERMIT: N/A**










EXHIBIT 27

# FIELD INSPECTION REPORT

**Basin: Mimbres** **PERMIT: N/A**




**Coordinates**

UTM - NAD 83 (m) - Zone 13
Easting: 223485.32
Northing: 3520190.67

State Plane - NAD 83 (ft) - Zone W
X: 2696142.26
Y: 285124.66

Degrees Minutes Seconds
Latitude: 31° 47' 1.87"
Longitude: -107° 55' 12.28"

**Spatial Information**

OSE District: 3 County: Luna
Land Grant: Not in Land Grant
Declared GW Basin: Mimbres
Sub-Basin: Playas Lake
Abstracting Project Area:
Mimbres River

Regulation Area:
**No Restrictions**

PLSS Description
SW SE SE SW Qtr of Sec 13 of 29S 11W

Derived from Projected PLSS- Qtr Sec. locations are calculated and are only approximations

**File Number:**
**Owner:**
**Purpose:** Compliance Check
**Author:** Lloyd Valentine

NEW MEXICO OFFICE OF THE STATE ENGINEER

1:273,850
mi
0 1 2 4

Source: Maxar
Date: 01/05/2023
Resolution (m): 0.50
Accuracy (m): 8.47

7/24/2026

OSE District Boundary

New Mexico State Trust Lands

Subsurface Estate

Both Estates

World Imagery

Low Resolution 15m Imagery

High Resolution 60cm Imagery

High Resolution 30cm Imagery

Citations

75m Resolution Metadata

EXHIBIT 27

# FIELD INSPECTION REPORT



**Basin: HA** **PERMIT:**

| | |
|---|---|
| **FILE** | |
| **PERMIT** | |
| **OWNER** | Department of Defense/Barnard Spencer Joint Venture |
| **SUBJECT** | Field Inspection |
| **SOURCE** | Hachita Underground Water Basin |
| **USE** | Construction |
| **POD** | |
| **CHECKED** | 07/22/2026 |
| **CHECKED BY** | Lloyd Valentine & Karl E. Frisch |
| **LOCATION** | |

This well is located in the Hachita basin near the Border wall (see map). This well is ~ 500 feet West of the border wall. Coordinates are approximately 31° 32’ 41” N -108° 12’ 36” W. PLSS Township 32S, Range 14W, Section 12, Lot 1.

**REMARKS**

On July 22, 2026, District III staff conducted a sweep of the Bootheel to determine what well drilling operations are being carried out by contractors to the federal government, and what wells have already been drilled. These operations have been taking place without the proper permits. Since no permit is in place, the well is identified based on the Basin and the PLSS location (Township ,Range and Section).

Field inspection

1. Well drilling operations were completed by the time of inspection, and well was equipped
2. Well coordinates are approximately 31° 32’ 41” N -108° 12’ 36” W
3. The well has an 8-inch” interior casing and what appears to be a 16-inch surface casing.
4. Well does not appear to have an annular seal as the gravel pack is visible on the surface around the outer casing.
5. Well is equipped with a submersible pump powered by a portable generator and has a 4-inch outlet line.
6 Meter on well shows 9,298,000 gallons withdrawn, or 28.53 ac/ft.
7 Other equipment in the system included several ~21,000-gallon portable water storage tanks and a Klein Porto-Tower water tank.

**SEE ATTACHED PHOTOS AND MAP:**

**FIELD INSPECTION REPORT**

**Basin: HA** **PERMIT:**



Well setting looking Northeast



Well setting looking South



Well HA-32,14,12




Meter for well HA-32,14,12

EXHIBIT 28

# FIELD INSPECTION REPORT
**Basin: HA** **PERMIT:**



~21,000-gallon portable water storage tanks




Office of the State Engineer
Interstate Stream Commission

# Government Well
# HA-321412

Map Disclaimer: Reasonable efforts have been made by the New Mexico Office of the State Engineer (OSE) to verify that these maps accurately interprets the source data used in their preparation; however, a degree of error is inherent in all maps, and these maps may contain omissions and errors in scale, resolution, rectification, positional accuracy, development methodology, interpretation of source data, and other circumstances. As additional data becomes available to OSE, and as verification of source data continues, these maps may be reinterpreted or updated by OSE. The maps are date specific and are intended for use only at the published scale. These maps should not be used for navigational, engineering, legal, or any other site-specific use.

N

0 0.39 0.78 Mi

0 0.75 1.5 Km

# FIELD INSPECTION REPORT



## Basin: HA PERMIT:

**FILE**

**PERMIT**

**OWNER** Department of Defense/Barnard Spencer Joint Venture

**SUBJECT** Field Inspection

**SOURCE** Hachita Underground Water Basin

**USE** Construction

**POD**

**CHECKED** 07/22/2026

**CHECKED BY** Lloyd Valentine & Karl E. Frisch

**LOCATION**

This well is located in the Hachita basin near the Border wall (see map). This well is ~ 3.25 miles West of the border wall. Coordinates are approximately 31° 37' 14"N -108° 15' 50"W. PLSS Township 31S, Range 14W Section 09.

**REMARKS**

On July 22, 2026, District III staff conducted a sweep of the Bootheel to determine what well drilling operations are being carried out by contractors to the federal government, and what wells have already been drilled. These operations have been taking place without the proper permits. Since no permit is in place, the well is identified based on the Basin and the PLSS location (Township, Range, Section and Quarter Sections or Lot).

Field inspection

1. Well drilling operations were completed by the time of inspection and well was equipped and operating.
2. Well coordinates are approximately 31° 37' 14"N -108° 15' 50"W. New well is located next to stock well HA-30.
3. The well has an 8-inch interior casing and what appears to be a 16-inch surface casing.
4. Well may have an annular seal. There is what appears to be cement surrounding the outer casing, but without a well record or using an auger to sample below ground surface, it is impossible to tell.
5. Well is equipped with a submersible pump powered by a portable generator and has a 4-inch outlet line.
6. Meter on well shows 10,484,800 gallons withdrawn, or 32.18 ac/ft.
7. Other equipment in the system included a Klein Porto-Tower type water tank.
8. Water trucks were lined up and continuously filling at this well, for dust abatement.

**SEE ATTACHED PHOTOS AND MAP:**

**FIELD INSPECTION REPORT**

**Basin: HA** **PERMIT:**



Well setting looking Northwest



Well HA-31,14,09



Well HA-31,14,09




Meter for well HA-32,14,09




Office of the State Engineer
Interstate Stream Commission

# Government Well
# HA-31,14,09

Map Disclaimer: Reasonable efforts have been made by the New Mexico Office of the State Engineer (OSE) to verify that these maps accurately interprets the source data used in their preparation; however, a degree of error is inherent in all maps, and these maps may contain omissions and errors in scale, resolution, rectification, positional accuracy, development methodology, interpretation of source data, and other circumstances. As additional data becomes available to OSE, and as verification of source data continues, these maps may be reinterpreted or updated by OSE. The maps are date specific and are intended for use only at the published scale. These maps should not be used for navigational, engineering, legal, or any other site-specific use.

N

0 0.34 0.69 Mi

0 0.65 1.3 Km

EXHIBIT 29

# FIELD INSPECTION REPORT



**Basin: HA** **PERMIT:**

| | |
|---|---|
| **FILE** | |
| **PERMIT** | |
| **OWNER** | Department of Defense/Barnard Spencer Joint Venture |
| **SUBJECT** | Field Inspection |
| **SOURCE** | Hachita Underground Water Basin |
| **USE** | Construction |
| **POD** | |
| **CHECKED** | 07/22/2026 |
| **CHECKED BY** | Lloyd Valentine & Karl E. Frisch |
| **LOCATION** | |

This well is located in the Hachita basin near the Border wall (see map). This well is ~ 50 feet West of the border wall. Coordinates are approximately 31° 37’ 8” N -108° 12’ 31” W. PLSS Township 31S, Range 14W Section 12.

**REMARKS**

On July 22, 2026, District III staff conducted a sweep of the Bootheel to determine what well drilling operations are being carried out by contractors to the federal government, and what wells have already been drilled. These operations have been taking place without the proper permits. Since no permit is in place, the well is identified based on the Basin and the PLSS location (Township, Range and Section).

Field inspection

1. Well drilling operations were completed by the time of inspection and well was equipped and operating.
2. Well coordinates are approximately 31° 37’ 8” N -108° 12’ 31” W
3. The well has an 8-inch” interior casing and what appears to be a 16-inch surface casing. The inner 8-inch casing is supported over the 16 surface casing which is open to atmosphere.
4. Well does not appear to have an annular seal.
5. Well is equipped with a submersible pump powered by a portable generator and has a 4-inch outlet line.
6. Meter on well shows 2,862,900 gallons withdrawn, or 8.79 ac/ft.
7. Other equipment in the system included a Klein Porto-Tower type water tank and a large steel rim tank.

**SEE ATTACHED PHOTOS AND MAP:**

EXHIBIT 30

# FIELD INSPECTION REPORT



**Basin: HA** **PERMIT:**



Well setting looking South



Large steel rim and overhead tank



Well HA-31,14,12




Meter for well HA-31,14,12

EXHIBIT 30




Office of the State Engineer
Interstate Stream Commission

# Government Well
# HA-31,14,12

Map Disclaimer: Reasonable efforts have been made by the New Mexico Office of the State Engineer (OSE) to verify that these maps accurately interprets the source data used in their preparation; however, a degree of error is inherent in all maps, and these maps may contain omissions and errors in scale, resolution, rectification, positional accuracy, development methodology, interpretation of source data, and other circumstances. As additional data becomes available to OSE, and as verification of source data continues, these maps may be reinterpreted or updated by OSE. The maps are date specific and are intended for use only at the published scale. These maps should not be used for navigational, engineering, legal, or any other site-specific use.

N

0 0.34 0.69 Mi

0 0.65 1.3 Km

EXHIBIT 30

| | |
|---|---|
| **FILE** | |
| **PERMIT** | |
| **OWNER** | Department of Defense/Barnard Spencer Joint Venture |
| **SUBJECT** | Field Inspection |
| **SOURCE** | Hachita Underground Water Basin |
| **USE** | Construction |
| **POD** | |
| **CHECKED** | 07/21/2026 |
| **CHECKED BY** | Lloyd Valentine & Karl E. Frisch |
| **LOCATION** | |

This well is located in the Hachita basin near the Border wall (see map). This well is ~ 50 feet North of the border wall. Coordinates are approximately 31° 47' 2"N -108° 3' 20"W. PLSS Township 29S, Range 12W Section 15.

**REMARKS**

On July 21, 2026, District III staff conducted a sweep of the Bootheel to determine what well drilling operations are being carried out by contractors to the federal government, and what wells have already been drilled. These operations have been taking place without the proper permits. Since no permit is in place, the well is identified based on the Basin and the PLSS location (Township, Range and Section).

Field inspection

1. Well drilling operations were completed by the time of inspection and well was equipped but not attached to power or operating.
2. Well coordinates are approximately 31° 47' 2"N -108° 3' 20"W.
3. The well has an 8-inch" interior casing and what appears to be a 16-inch surface casing.
4. Well may have an annular seal. There is what appears to be cement surrounding the outer casing, but without a well record or using an auger to sample below ground surface, it is impossible to tell.
5. Well is equipped with a submersible pump powered by a portable generator and has a 4-inch outlet line.
6. Other equipment in the system included a Klein Porto-Tower type water tank.

**SEE ATTACHED PHOTOS AND MAP:**



Well setting looking North



Well HA-29,12,15



Well site looking Northeast




Well site looking East

EXHIBIT 31




Office of the State Engineer — Interstate Stream Commission

# Government Well
# HA-291215

Map Disclaimer: Reasonable efforts have been made by the New Mexico Office of the State Engineer (OSE) to verify that these maps accurately interprets the source data used in their preparation; however, a degree of error is inherent in all maps, and these maps may contain omissions and errors in scale, resolution, rectification, positional accuracy, development methodology, interpretation of source data, and other circumstances. As additional data becomes available to OSE, and as verification of source data continues, these maps may be reinterpreted or updated by OSE. The maps are date specific and are intended for use only at the published scale. These maps should not be used for navigational, engineering, legal, or any other site-specific use.

N

0 0.82 1.65 Mi

0 1.63 3.25 Km

EXHIBIT 31

**From:** Lazar, Gordon, OSE
**To:** Lazar, Gordon, OSE
**Subject:** FW: [EXTERNAL] RE: [External Email]Border Wall Construction Concerns
**Date:** Tuesday, July 28, 2026 9:22:22 AM

---

**From:** Zay Clopton <uxslash@vtc.net>
**Sent:** Tuesday, June 30, 2026 12:39 PM
**To:** 'Herrell, Yvette - OSEC, DC' <Yvette.Herrell@usda.gov>; 'Russell Johnson' <russell.a.johnson@hotmail.com>
**Cc:** 'Teresa Johnson' <johnsonranchesllc@hotmail.com>
**Subject:** [EXTERNAL] RE: [External Email]Border Wall Construction Concerns

You don't often get email from uxslash@vtc.net. Learn why this is important

CAUTION: This email originated outside of our organization. Exercise caution prior to clicking on links or opening attachments.

Good Day Ms. Herrell,

My wife and I, Nancy and Zay Clopton, are neighboring ranchers to the west of Joe and Russell Johnson. They have encouraged me to contact you to express our concerns on the current border wall construction. Russell's testament to you virtually parallels our issues also. Desiring to not being repetitive on the issues, the most important is the contractor's drilling of high production groundwater wells without permits from the New Mexico Office of State Engineer. Granted the wells are being located on the 1907 Roosevelt Reservation, however the State of New Mexico follows the arid prior appropriation doctrine as to water, both surface and groundwater. All water within the state's boundaries belong to the state and any and all people or entities must follow the law to acquire the right to use the water. This includes the Federal government---while the surface of the easement may be possessed by the Border Patrol the water flowing over, puddling on or contained in aquifers below does not belong to the Federal government. Prior appropriated water put to beneficial use creates a right that is private property owned by the original appropriator and by his successors-in-interest. These private property rights can neither be waived nor acquired by anyone without following the proper state doctrine of water use and acquisition. Frankly the Border Patrol is wrong on the law and also wrong in ignoring their self-professed desire to respect all "stakeholders" interests. The way the Border Patrol is treating the ranchers, farmers, and individuals along the border is disgraceful and insulting.

Also the apparent ignorance in only invoking selected sections of the proclamation is telling. The order was to help prevent smuggling of goods and the majority of the document lists numerous exceptions that cannot be curtailed and even establishes the easement as a public highway available to all persons.

I want to thank you for the interest you have displayed in attempting to act as an intermediator, especially on this valid concern we and the Johnsons have as to the violation of our legal rights to use New Mexico's water.

Nancy and Zay Clopton
Victorio Ranch
Hachita, New Mexico

PO Box 68  88040
575 436 2501
uxslash@vtc.net

---

**From:** Herrell, Yvette - OSEC, DC <Yvette.Herrell@usda.gov>
**Sent:** Friday, June 26, 2026 9:18 PM
**To:** Russell Johnson <russell.a.johnson@hotmail.com>
**Cc:** Teresa Johnson <johnsonranchesllc@hotmail.com>; uxslash@vtc.net
**Subject:** Re: [External Email]Border Wall Construction Concerns

Hi Russell,

I have received both of your emails.  Also received an email just a while ago from Ryan Hedin who works in the Minority House office for Jennifer Jones.

I am going to speak with her in the morning.

Thank you for sending this to me and for you and your father's time today.

Yvette

Get Outlook for iOS

---

**From:** Russell Johnson <russell.a.johnson@hotmail.com>
**Sent:** Friday, 26 June 2026 15:45:43
**To:** Herrell, Yvette - OSEC, DC <Yvette.Herrell@usda.gov>
**Cc:** Teresa Johnson <johnsonranchesllc@hotmail.com>; uxslash@vtc.net <uxslash@vtc.net>
**Subject:** [External Email]Border Wall Construction Concerns

You don't often get email from russell.a.johnson@hotmail.com. Learn why this is important

[External Email]
If this message comes from an **unexpected sender** or references a **vague/unexpected topic;**
Use caution before clicking links or opening attachments.

Please send any concerns or suspicious messages to: Spam.Abuse@usda.gov

Good afternoon Ms. Herrell,

Thank you again for taking the time to visit with us regarding the issues we are encountering with the border wall construction project in Luna County, New Mexico. As discussed, I wanted to summarize the concerns we shared during our conversation. Please feel free to forward this information to anyone you believe should be aware of these issues.

First, I would like to mention that we are a multigenerational cattle ranch that has operated along the United States–Mexico border since 1918. My family has witnessed firsthand the devastation that unsecured borders have brought to this region over the past century, and we strongly support the initiatives the Trump Administration has put forward to secure our nation's border, including construction of the border wall.

Our concerns are not with the mission of securing the border, but with the manner in which portions of this project are being carried out. As currently implemented, some of these actions have the potential to put several long-established ranching operations along the border out of business.

As early as March 2026, border wall contractors began drilling water wells within the 60-foot Roosevelt Reservation easement. These wells were drilled without permits, bypassing New Mexico's established process for appropriating groundwater. The well drillers and the associated general contractor, Barnard-Spencer Joint Venture, have stated that because the wells are being drilled within the Roosevelt Reservation, no state permits are required. As a result, neighboring water-right holders and other stakeholders were denied the opportunity to protest the applications or request hydrologic review before the wells were drilled.

It is important to note that these are not domestic-use wells. Rather, they are high-capacity production wells designed to produce at least 300 gallons per minute (GPM). We have been told that the current plan is to drill a well approximately every five miles along the border.

To our knowledge, no hydrologic studies have been conducted to evaluate the potential impacts these high-capacity wells may have on existing water rights, livestock wells, or historic springs in the surrounding area.

Several livestock wells, many of which are shallow and produce only 3 to 7 GPM, are located in close proximity to the border. These new production wells are being drilled significantly deeper and are designed to produce substantially greater volumes of water. We are deeply concerned that they could negatively impact existing livestock wells and springs that have historically provided reliable water for ranching operations.

We are particularly concerned about Corrizalillo Spring, which we own, located approximately 3.5 miles from one of the proposed well locations that has currently been placed on hold. This historic spring has documented use dating back at least to the 1800s and has been an

important water source for generations. Because springs are highly dependent on underground pressure and fracture systems, changes in groundwater conditions several miles away could significantly reduce or eliminate its flow.

We have filed formal complaints with the Office of the State Engineer (OSE) in Deming and have been advised that those complaints have been forwarded to the OSE General Counsel's Office in Santa Fe. We have also informed State Representative Jenifer Jones, State Senator Gabriel Ramos, and Luna County Commissioner Christie Ann Harvey of these concerns.

Another issue we encountered occurred just last night when the border was left completely open during construction. As you know, there is approximately a three-quarter-mile gap in the existing border wall on our ranch. This opening has been temporarily secured with Normandy barrier and barbed-wire fencing while construction of the permanent wall resumes.

In preparation for erecting the new wall, the Normandy barrier and fencing must be removed each day and replaced at the end of the workday to prevent cross-contamination of livestock between the United States and Mexico. Last night, however, we discovered several hundred yards of Normandy barrier had been removed, leaving our ranch completely open to the international border with no personnel present to monitor the area. We immediately brought the situation to the attention of the last three workers on site, who eventually returned and closed the opening.

Given the ongoing threat of New World Screwworm and other foreign animal diseases—not to mention the potential loss of livestock and the obvious security concerns—this situation is simply unacceptable. These actions could not only affect our operation, but the United States livestock industry as a whole.

Lastly, as Barnard-Spencer Joint Venture prepares to construct the secondary border wall, we are concerned about the manner in which this work is being performed. Where the wall borders private or state-owned land, it is being constructed within the existing 60-foot Roosevelt Reservation easement. However, where the wall adjoins federal land, construction extends approximately 180 feet farther north, with an additional 20 feet being cleared for a maintenance road.

We have not received an explanation as to why this additional land disturbance is necessary on federal lands when the project remains within the existing easement elsewhere. While 200 feet may appear insignificant, over the course of several miles it represents a substantial loss of productive grazing acreage. Additionally, we have observed contractors disturbing land beyond even these limits in order to facilitate construction activities.

We have spoken with the contractors and have repeatedly been told that U.S. Customs and Border Protection has authorized this work, including drilling water wells without state permits and clearing additional land for construction. Despite being directly affected landowners and

stakeholders, we have never been included in discussions regarding these decisions or given an opportunity to express our concerns.

The original border wall was constructed without the need for these additional high-capacity wells or the extensive land disturbance that is now occurring. We respectfully request that these actions be reviewed and all drilling and pumping be suspended to ensure they are both necessary and compliant with applicable federal and state laws and that the rights of neighboring landowners are fully considered.

Thank you again for your time and for taking these concerns seriously. We fully support efforts to secure our nation's border, but we also believe those efforts should be carried out in a manner that respects New Mexico law, existing water rights, private property, and the livelihoods of the families who have stewarded this land for generations.

Please feel free to share this letter and my contact information with anyone you believe should be involved in addressing these concerns. Should additional information or documentation be helpful, I would be happy to provide it.

Respectfully,

Russell Johnson

Johnson Ranches LLC

575-544-5891

CC: Joe Johnson Johnson Ranches LLC- 575-544-1059

Zay Clopton Victorio Ranch- 575-436-2501

Sent from Outlook

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

Virus-free.www.avast.com

**FIELD CHECK MEMORANDUM**
**OFFICE OF THE STATE ENGINEER**
**DISTRICT IV**

Date: July 27, 2026

To: Craig Cathey, Acting Water Rights Director

To: JR Hennessey, Acting District IV Manager

From: Darien Pruitt, Senior Water Resources Professional

Subject: **Field investigation to determine the completion of wells along the international border within District IV boundaries.**

---

**Date of Inspection:** July 24, 2026

**Field Check Conducted by:** Darien Pruitt & Carlos Benavides

**Reason for Inspection:**
The District IV office was made aware of potential well drilling sites to supply water for the border wall construction project without the benefit of a permit. Based on a map (Figure 1) supplied to the OSE by a contractor, four (4) wells are anticipated to be drilled within the District IV boundaries along the international boundary west of Sunland Park, NM.

**Potential Well Locations (Figure 1):**
<u>Well “BP #3”</u>
Latitude & Longitude (WGS84): 31°47'18.22"N, 106°58'2.59"W

<u>“Well #6”*</u>
Latitude & Longitude (WGS84): 31°47'3.69"N, 107° 0'6.73"W

***Note:** This estimated location is within NMSOE District III boundaries.

<u>“Well #7</u>
Latitude & Longitude (WGS84): 31°47'3.88"N, 106°54'20.44"W

<u>“Well #8”</u>
Latitude & Longitude (WGS84): 31°47'3.85"N, 106°49'15.15"W

<u>“Well #9”</u>
Latitude & Longitude (WGS84): 31°47'3.42"N, 106°45'8.94"W




**Figure 1.** Estimated locations of wells along the international border.

**Field Observations of Well "BP #3" & Correspondence with On-Site Drilling Supervisor:**
Staff arrived at potential well site "BP #3" at approximately 10:30am. The Roosevelt reservation was clearly defined by a dirt burm with "Warning" signs; the boundary is defined as 60 feet into the U.S. from the international boundary. Staff observed a Cascade Drilling, LP. drill rig in an area where the dirt burm was cleared. The drill rig was stabilized and prepared for drilling with a mud circulation machine operating at that time of arrival. Surrounding the drill location, materials were laid out in preparation for installation. These materials include, but are not limited to: approximately 2,200 feet of 8-inch, ¼-inch slotted steel casing in 20 foot sections, approximately 1,920 feet of 8-inch steel casing, ten (10) super sacks holding gravel approximatley 3/8 x 1/4-inch in size, multiple pallets of 50-pound Quick-Gel high yield betonite sacks, used drill bits, and other equipment related to drilling operations.

Staff were greeted by Bryant Jones, a licensed, NM drill rig supervisor under License No. WD-1918-Whitsell. Mr. Jones was asked for the his license and permit to drill the well. After some time, he provided staff with an electronic version of his license and the "Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigration Responsibility Act of 1996, as Amended" issued by the Department of Homeland Security (effective October 8, 2025). Mr. Jones was provided the documentation by his manager, who was not on-site at the time. This documentation was provided in leiu of an NMOSE permit. Further conversation with Mr. Jones indicated he and the crew were reaming the 16-inch borehole to a depth of 1,020 feet in preparation for installation of the 8-inch steel casing. Additionally, he stated that they would be on-site 24/7 until the well had been completed, and they have not begun well drilling east of this location. That includes Well's #7, #8, and #9 of the approximate well locations provided in Figure 1. He further stated that another drill site was located approximately 15 minutes east of the site. In the duration it took to supply staff with a license and permit documentation (≈ 1 hour), the boom of the drill rig was lifted and operations continued using mud rotary methodology.

**Observed Well Location (Figures 2 through 4):**
OSE staff observed one (1) well actively being drilled at the time of the investigation. This well is defined as "BP #3". The well is located within the Roosevelt reservation at approximately 53 feet from the current border wall.

GPS location in latitude & longitude (WGS84): 31°47'2.11"N, 106°57'30.80"W.

Mesilla Valley Administrative Area Guidelines
Well BP#3 was determined to be located within the High Impact Area (HIA) as defined within the OSE's Mesilla Valley Administrative Area Guidelines (MesillaValleyGuidelines-2007-01-05.pdf). Diversions from wells drilled within the HIA will result in additional depletions to the Rio Grande River.




**Figure 2.** Potential location and GPS location of "Well BP #3". District boundary is shown in green with the international boundary in direct proximity of the GPS location.







**Figures 3 & 4:** Location of borehole for "Well BP #3".

Property Owner: According to Doña Ana County Assessor's Office, the subject land the well is located on is owned by the United States of America – Bureau of Land Management (BLM). The subject account number and parcel number are R1700206 and 3005171264160, respectively.

**Imagery Related to Active Drill Site (Figures 5 through 16):**







**Figures 5 & 6:** Used drilling equipment located east of drilling operation.




**Figure 7:** Perforated steel casing in 20-foot sections.




**Figure 8.** Additional drilling equipment.




**Figure 9.** Additional perforated and non-perforated steel casing in 20-foot sections.




**Figure 10.** Additional drilling equipment.







**Figures 11 & 12.** Used drilling equipment (left) and two, engine-driven welders (right).




**Figure 13.** Drill site.







**Figures 14 & 15.** Cascade Drilling, LP. Rig (left) and mud circulation set up (right).




**Figure 16.** Active mud circulation.

**Additional Observations:**
Staff observed clearing of native vegetation from approximately 10-15 acres of land north of the drill site. With information supplied to staff, this land could be the potential site of a concrete batch plant. In response to conversation with Mr. Jones, staff traveled east into NMOSE District III to determine if “Well #6” was located where the site was approximated. Upon arrival to the estimated location of “Well #6”, staff observed no active drilling site or clearing of land as observed at the “BP #3” site. To verify Mr. Jones’ statements that no drilling activities or completed wells are located west of the “BP #3”, staff traveled west to the remaining approximate wells locations. There was no further drilling activity, nor completed wells in the areas of the approximate well locations. Further, staff traveled well maintained and well-traveled roads to verify that drilling operations were not taking place in the surrounding area outside of the Roosevelt reservation. No further activity was observed at the time.

**Additional Observations Images (Figures 17 through 24):**



**Figure 17.** Cleared land located north of drill site.




**Figure 18.** Cleared land located north of drill site.






**Figures 19 & 20.** Drill rig boom lifted (left), and potential location of "Well #6".




**Figure 21.** Potential location of "Well #6".




**Figure 22.** Potential location for “Well #7”.



**Figure 23.** Potential location for “Well 8”.



**Figure 24.** Potential location for “Well 9”.

# MESILLA VALLEY ADMINISTRATIVE AREA GUIDELINES FOR REVIEW OF WATER RIGHT APPLICATIONS

PREPARED BY

THE OFFICE OF THE NEW MEXICO STATE ENGINEER

FOR INTERNAL USE

THOMAS C. TURNEY

STATE ENGINEER

January 5, 1999

# TABLE OF CONTENTS


| | Page |
|---|---|
| INTRODUCTION | 1 |
| A. ADMINISTRATIVE OBJECTIVES | 2 |
| B. ADMINISTRATIVE STANDARDS | 3 |
| C. ADMINISTRATIVE CRITERIA | 4 |
| OFFSETS OF SURFACE WATER IMPACTS | 4 |
| APPLICATION REQUIRED FOR OFFSET | 5 |
| APPLICATIONS FILED PRIOR TO IMPLEMENTATION OF THESE CRITERIA | 5 |
| OPTION TO LEASE OFFSET RIGHTS FOR APPROPRIATIONS OUTSIDE OF HIA | 6 |
| CALCULATION OF SURFACE WATER DEPLETIONS | 6 |
| CALCULATION ON LOCAL DRAWDOWN IMPACTS | 8 |
| DRAWDOWNS DUE TO EXISTING WELLS | 9 |
| DIVERSION AND CONSUMPTIVE USE RATES FOR IRRIGATION WELLS | 9 |
| RETURN FLOW CREDIT | 9 |
| AVAILABLE TRANSFER AMOUNTS | 10 |
| SUPPLEMENTAL WELLS | 10 |
| CONSERVATION OF WATER | 11 |
| PUBLIC WELFARE | 11 |
| REASONABLE QUANTITY OF WATER SOUGHT | 11 |
| 40 YEAR WATER PLAN | 12 |

APPLICATIONS ASSOCIATED WITH
PRE-BASIN WATER RIGHTS .......................... 13
VERIFICATION OF OWNERSHIP OF
TRANSFERRED WATER RIGHTS ........................ 13
DECLARATIONS .................................... 14
72-12-1 WELLS ................................... 15
~~METERING ......................................... 15~~
ADJUDICATION .................................... 15
MAPS ............................................ 15
STATE ENGINEER OPTION TO REVISE GUIDELINES.... 16
REFERENCES ...................................... 17
EXAMPLE CONDITIONS OF APPROVAL .................. 18

FIGURES

1. MAP OF THE LOWER RIO GRANDE UNDERGROUND WATER BASIN
2. LOCATION OF THE MESILLA VALLEY ADMINISTRATIVE AREA AND HIGH IMPACT AREA
3. MODEL PREDICTED SURFACE WATER DEPLETIONS GRAPH


EXHIBIT 34

OFFICE OF THE STATE ENGINEER

# MESILLA VALLEY ADMINISTRATIVE AREA GUIDELINES FOR REVIEW OF WATER RIGHTS APPLICATIONS

FOR INTERNAL USE

## INTRODUCTION

These guidelines for water rights administration have been developed for a specific sub-area within the Lower Rio Grande underground water basin. These guidelines are intended to address both surface and groundwater administration within this sub-area.

This sub-area is called the Mesilla Valley Administrative Area (MVAA) and is shown in Figure 1. The purpose of this document is to provide guidelines to Office of the State Engineer (OSE) personnel on general procedures to follow for processing and acting on water rights applications filed within the MVAA, inclusive of applications submitted pursuant to NMSA Sections 72-12-1 et. seq. (1998), and is intended as a general guide for internal purposes to assist in reviewing applications; however, each water rights application will be evaluated on a case-by-case basis. Factual differences will exist from application to application, but through the guidelines, the OSE hopes to treat all applications fairly and equally.

These criteria apply to applications for new appropriations, applications for supplemental wells, and applications to change point of diversion, and/or place and/or purpose of use.



EXHIBIT 34

The State Engineer has developed administrative criteria in order to assure the orderly development of water resources within the MVAA, while meeting statutory obligations regarding non-impairment to existing water rights, availability of unappropriated water, conservation of water within the state, and public welfare of the state.

These guidelines begin with administrative objectives or water resource goals to be achieved. Administrative standards which quantify allowable surface water depletions and water level declines follow. The guidelines end by outlining the application evaluation procedure.

**A. ADMINISTRATIVE OBJECTIVES**

The State Engineer has identified the following administrative objectives.

1. The Rio Grande stream system is fully allocated and existing rights may not be impaired by proposed appropriations. The system within the MVAA includes the Rio Grande, irrigation canals and laterals, and drains and wasteways. The primary aquifer within the MVAA is recognized as a stream-connected system in which groundwater withdrawals will ultimately result in depletions of surface water sources.

2. Local water level decline rates resulting from proposed appropriations should not impair existing rights. Local water level declines refer to drawdown at nearby wells of other

ownership.

3. The appropriation of water and/or a change in place of use, purpose of use and/or point of diversion shall not be contrary to water conservation within the state nor be detrimental to the public welfare of the state.

4. A groundwater appropriation may be granted to the extent that unappropriated water is available to the well from the aquifer at the proposed point of diversion.

5. Existing water quality for domestic, municipal, agricultural, industrial and other beneficial uses may not be impaired.

6. The existing drains system will not be impaired.

**B. ADMINISTRATIVE STANDARDS**

To achieve the above objectives, quantitative standards have been selected. These standards are provided below.

1. A surface water depletion of less than 0.10 acre-foot in any year due to a proposed appropriation will be deemed acceptable and no offset of this impact will be required during that year.

2. An average annual local ground water level decline rate of 1.0 foot per year or less due to a proposed appropriation in combination with the exercise of existing water rights will be deemed acceptable when addressing impacts on existing wells of other ownership.

3. Wells completed into the flood plain alluvium or within

one mile of any surface water source can have large and immediate surface water impacts. Depths to groundwater within this area are generally less than 100 feet below land surface. This zone adjacent to the surface water system is referred to as the High Impact Area (HIA) and is shown in Figure 2. The boundaries of the HIA are coincident with the area in which the depth to water is 100 feet or less (New Mexico State Engineer Technical Report No. 43, Plate 16, Wilson and others, 1981).

C. **ADMINISTRATIVE CRITERIA**

Administrative criteria have been developed to serve as agency guidelines on how to process and evaluate pending applications for surface and groundwater appropriations within the MVAA. Each application will be reviewed on a case-by-case basis.

1. OFFSET OF SURFACE WATER IMPACTS - Applications within the MVAA for groundwater appropriations that impact the surface waters beyond acceptable depletions (see B.1.) must offset 100% of the surface water depletions caused by the appropriation. All wells used to appropriate water, other than wells permitted under NMSA Section 72-12-1 (1998), must meet these requirements. An offset is achieved by acquiring a volume of water through a water right or other contractual obligation in the affected water source and releasing that water to replenish the affected volume in the source that results from exercise of the permitted groundwater appropriation. Offsets must be made before groundwater withdrawals

commence tantamount to surface water effects associated with the full exercise of the permit. Because of the uncertainty in hydrogeologic characteristics, the State Engineer will not require offsets of surface water depletions when the proposed transfer of water rights results in an increased calculated depletion of less than 3% of the total amount of water diverted and consumed. If offset requirements are not achievable, the application will be denied.

2. APPLICATION REQUIRED FOR OFFSET - Offsets may be made by filing application to change point of diversion and/or place and/or purpose of use of valid existing water rights. The State Engineer may alternatively consider other methods for offsetting as proposed by an applicant. The amount credited to offset the surface water effect will be based on the historical use of the water right and the resulting surface water impact.

3. APPLICATIONS FILED PRIOR TO IMPLEMENTATION OF THESE CRITERIA - These criteria are intended to allow the numerous applications currently on file with the Office of the State Engineer to be processed. These applications may be approved if the OSE staff requires, prior to pumping, sufficient water rights to be transferred by permit to offset the additional depletion on the Rio Grande, and the proposed application does not impair existing water rights, is not contrary to conservation of water within the state, and is not contrary to the public welfare of the

State. The applicant shall proceed with due diligence in acquiring offsetting water rights and placing the water to beneficial use.

4. OPTION TO LEASE OFFSET RIGHTS FOR APPROPRIATIONS OUTSIDE OF HIA - Groundwater appropriations located outside of the HIA may have delayed surface water depletions. Due to these possible delays, the full amount of water rights acquired for offset purposes may not be needed for those purposes during early pumping time periods. Rights not immediately needed for offset purposes may be leased and used at a different location or for a different use as provided by statute and rules and regulations governing the appropriation and use of water. Alternately, the rights, if not immediately needed, can be left at the original place of use and may continue to be exercised pursuant to their original purpose.

5. CALCULATION OF SURFACE WATER DEPLETIONS - The calculation of surface water depletions are necessary for the following situations:

a) applications for new groundwater appropriations;

b) applications to transfer water rights;

c) applications to retire water rights for offset purposes;

d) applications for supplemental wells that result in a shift of the pumping center.

Stream effects from discontinuing appropriations in b or c above may persist as surface water impacts (residual impacts) associated with the recovery of the cone of depression. In the evaluation of

the application, calculations will be performed to determine whether the residual impacts plus the impacts from the move-to well maintain an allowable level of surface water depletion. The allowable surface water depletion is the amount up to the surface water depletions associated with the use of the retired water right if the water right had continued to be exercised at its original location (Figure 3). Surface water depletions will be estimated through the use of a superposition model based on a model presented in Frenzel-Kaehler (1992), using the procedures described in Barroll (1998), or such improved successor model and procedures as they become available. The calculated reduction in evapotranspiration (ET) will be treated as a surface water depletion because of the uncertainty in ET behavior. Within the HIA, the aquifer depletion for irrigation is the product of the irrigated acreage and recognized average consumptive irrigation requirement. For HIA groundwater appropriations other than irrigation, and appropriations for all purposes outside of the HIA, the aquifer depletion is assumed to be equal to the diversion rate until a return flow plan has been accepted by the State Engineer.

6. CALCULATION ON LOCAL DRAWDOWN IMPACTS - Local drawdown effects due to a proposed appropriation will be evaluated on a case-by-case basis to ensure that impacts on the nearest wells of other ownership are maintained at an average annual rate of decline of 1.0 foot or less (this includes drawdowns due to existing uses,

criterion 7). It will be the applicants burden to show that no impairment results when drawdowns exceed 1 foot per year. In the determination of whether local drawdowns are excessive, available water columns, impacts from existing and proposed uses, and the ability to deepen wells to sustain a freshwater supply will be considered as deemed necessary. Drawdown calculations may be performed using the superposition model, or the Theis equation. The method resulting in the greater impact will govern unless site specific information indicates that a particular method would be more realistic. Aquifer parameters used to calculate drawdowns on nearby wells may be obtained from available groundwater flow models or from site specific information as deemed reasonable. The pumping rate used in the calculations will be the aquifer depletion rate described in the last paragraph of criterion 5. Over 1 foot, average annual drawdown may be allowed based on the facts of the case and the applicant showing that there will be no impairment.

7. DRAWDOWNS DUE TO EXISTING WELLS - For the purpose of determining the water level decline due to existing rights, estimates included in Papadopulos (1987) or Lang and Maddock (1995) may be considered in addition to impacts from subsequently approved applications.

8. DIVERSION AND CONSUMPTIVE USE RATES FOR IRRIGATION WELLS [RESERVED]

9. RETURN FLOW CREDIT - Return flow credits, for other than

irrigation uses, permit a water right owner to divert waters beyond the consumptive use amount to the extent that water diverted over and above the recognized consumptive use amount returns back to the system. Return flow credits are only allowed if specifically requested through application. The return flow credit that the State Engineer may grant will be based on demonstration that waters are actually returning to the system. For groundwater appropriations in which credit is sought for returns back to the aquifer, the applicant will be required to address location, timing and quantification of flows back to the aquifer of origination. For surface water return flow credit, the location and amount measured by the applicant as return flows to the surface water source per method approved by the State Engineer may be considered for credits. Surface water return flow credits accrued may not be carried over to the following year.

10. AVAILABLE TRANSFER AMOUNTS - For applications to change point of diversion and/or place and/or purpose of use, the quantity of water that has been historically available and consumed for beneficial purposes will be taken as the amount which may be considered for transfer to the proposed use. For applications to transfer groundwater rights, the available offset amount will also be limited to the difference between the impacts resulting from the continued use of the move-from well and the residual impacts described in item 5. For applications to transfer rights from

irrigation to other purposes, the historical consumptive use will be considered available for transfer. If surface water rights are to be transferred long distances downstream or upstream, river losses or gains may be considered. Water uses developed from wells permitted under NMSA Section 72-12-1 (1998) shall not qualify as retirement rights.

11. SUPPLEMENTAL WELLS - Wells will be classified as supplemental only if the well is drilled in the same and only the same underground stream or channel, artesian basin, reservoir or lake and does not increase the appropriation of water to an amount above the existing water right. Application for supplemental well(s) may be granted if applicable criteria have been met. These include but are not limited to the issues of local drawdown effects, surface water depletions, conservation and public welfare. Applications for supplemental well(s) for declared water rights may be approved, but only as provided for in criteria 14 and 16 below. Application for supplemental well(s) for permitted water rights that have been perfected, or are currently in development, may be approved for the total permitted water right.

12. CONSERVATION OF WATER - The State Engineer will determine whether an application is contrary to the conservation of water in the state. Water conservation issues will be addressed on a case-by-case basis. Applications and water conservation plans, if any, will be reviewed to ensure that highest and best technology

practically available and economically feasible for the intended use will be utilized to ensure conservation of water.

13. PUBLIC WELFARE - The State Engineer will determine whether an application is detrimental to the public welfare of the state. The state water planning process, statewide and local issues of concern, water quality issues, and information submitted by parties in a protested application will be considered by the State Engineer in making the public welfare determination.

14. REASONABLE QUANTITY OF WATER SOUGHT - Each application will be reviewed to determine whether the well may reasonably obtain the quantity of water sought. A determination of the availability of water from a particular point in the aquifer will be based on the transmissivity/storativity of the aquifer at that location, the proposed well casing diameter, the water column in the well, and the freshwater thickness. In addition, it will be assumed that a well capacity of at least 6 gallons per minute is required per irrigated acre and that a pump can not run more than 60% of the time, unless the applicant demonstrates that a higher percentage is reasonable.

15. 40 YEAR WATER PLAN - Municipalities, counties, public utilities supplying water to municipalities or counties, and universities must file a 40 YEAR WATER DEVELOPMENT PLAN pursuant to NMSA Section 72-1-9 (1997), when submitting application to appropriate water or an application to change place and/or purpose

of use. The plan should support the applicant's request to acquire and hold, unused, water rights provided they can show reasonably projected additional needs within forty years. At a minimum, the plan should include a summary of water rights held by the applicant; quantities of water put to beneficial use; plan of development of water rights sought; conservation measures incorporated by the applicant; and public welfare issues. The State Engineer will review the plan to determine if the proposals appear reasonable.

16. APPLICATIONS ASSOCIATED WITH PRE-BASIN WATER RIGHTS - An application involving declared water rights for a supplemental well, replacement well, change of point of diversion, place of use, or purpose of use may be filed by the applicant. The State Engineer will entertain a proposed change only to the extent that beneficial use has occurred. At the time of action on the application, the State Engineer may characterize the amount of declared water rights recognized.

When characterizing the amount of declared water right recognized, considerations will be given to:

a) date of commencement of works relative to date of declaration of the basin;

b) capacities of diversion works and source of supply;

c) existence of a water development plan, including feasibility of projected demands, in effect prior

to declaration of the basin;

d) adherence to and diligence in following that water development plan;

e) the amount of water beneficially used;

f) continuity of actual beneficial use; and

g) period of time since the basin was declared.

17. VERIFICATION OF OWNERSHIP OF TRANSFERRED WATER RIGHTS - Determination of ownership of water rights is not within the jurisdiction of the State Engineer. Unless otherwise notified in writing, the State Engineer will proceed with application processing as if an applicant is the owner or has authorization of the owner of the water right that the applicant proposes to transfer. If a question of water right ownership or owner authorization is raised before final action by the State Engineer, the State Engineer will suspend his decision until the question is resolved by a court of competent jurisdiction or other appropriate legal authority.

18. DECLARATIONS - Any person, firm or corporation claiming to be the owner of a vested water right from any of the underground sources of the Lower Rio Grande Basin, by application of waters therefrom to beneficial use, may make and file a declaration on a form prescribed by the State Engineer. The declaration shall set forth the beneficial use to which said water has been applied; the date of first application to beneficial use; the continuity

thereof; the location of the well; if such water has been used for irrigation purposes, the description of the land upon which such water has been used for irrigation purposes; and the name of the owner. Such records or copies thereof officially certified are prima facie evidence of the truth of their contents. Declarations may be accompanied by affidavits of persons having personal knowledge of the history of the works or by other evidence tending to substantiate the claims and by copies of well logs, if available, but may be rebutted by other evidence. Beneficial uses cited in declarations will be inspected in the field by OSE staff and all works and beneficial uses will be documented.

19. 72-12-1 WELLS - The State Engineer will issue any qualified applicant a permit to drill and use a well as provided in NMSA Section 72-12-1 (1998). With the exception of wells for single household use or livestock use, all wells will be required to be metered and the permittee will be required to submit meter readings to the State Engineer. Permits issued for the drilling and use of wells pursuant to 72-12-1 are subject to such limitations as may be imposed by the courts and lawful municipal and county ordinances which are more restrictive than applicable State Engineer regulations.

20. METERING - As a condition of approval on all permits, with the exception of single household domestic permits and/or livestock use, a measuring device or meter is required and the

volume of water diverted must be reported to the State Engineer.

21. ADJUDICATION - Applications filed subsequent to the water rights being adjudicated by a court will also be subject to these criteria.

22. MAPS - Filing maps, conforming to the State Engineer's latest rules and regulation, will accompany all applications.

23. STATE ENGINEER OPTION TO REVISE GUIDELINES - As new data become available, or as conditions warrant, the State Engineer may revise these guidelines to best achieve the administrative objectives above. If any part of these guidelines is found by a court to be invalid, the remainder shall remain valid and will continue to be used for evaluation purposes.

Adopted this 5th day of January, 1999.

Thomas C. Turney

Thomas C. Turney
State Engineer

## REFERENCES

**Barroll, Peggy, 1998.** Maddock and Papadopulos Models of the Lower Rio Grande. State Engineer Office Memorandum.

**Frenzel, Peter F. and Charles A. Kaehler, 1992.** Geohydrology and Simulation of Ground-Water Flow in the Mesilla Basin, Dona Ana County, New Mexico, and El Paso County, Texas. U.S. Geological Survey Professional paper 1407-C.

**Hamilton, S.L. and T. Maddock III. 1993.** Application of a Ground-water Flow Model to the Mesilla Basin, New Mexico and Texas. Department of Hydrology and Water Resources, University of Arizona, HWR No. 93-020.

**Papadopulos, S.S. and Associates, 1987.** Hydrogeologic Evaluation of Proposed Appropriation of Ground Water from the Lower Rio Grande Underground Water Basin by the City of El Paso. Consultant report prepared for the NM State Engineer Office.

**Wilson, Clyde A., Robert R. White, Brennon R. Orr, and R. Gary Roybal, 1981.** Water Resources of the Rinçon and Mesilla Valleys and Adjacent Areas, New Mexico. State Engineer Technical Report 43.

# -Example Conditions of Approval-

## FOR APPLICATIONS IN THE LOWER RIO GRANDE BASIN

1. This permit shall not be exercised to the detriment of valid existing water rights, shall not be contrary to conservation of water within the state, and shall not be detrimental to the public welfare of the state of New Mexico.

2. The State Engineer recognizes ______ acre-feet per annum under declaration LRG-_______ and (all) (part) of said water rights are severed therefrom under this permit.

3. The diversion of water from well no(s). LRG ______ shall not exceed _________ acre-feet per annum for __________________ purposes, inclusive of ________ acre-feet per annum for consumptive use. If the permit is for irrigation purposes, the diversion shall be limited to the irrigation of _____ acres of land. In all applications to appropriate, the diversion of water shall be further limited to condition no. 4.

4. Water shall not be diverted under this permit until the permittee transfers ___________ acre-feet (sufficient water rights equivalent to the consumptive use anticipated to result in a surface water depletion caused by the exercise of this permit) to offset the anticipated surface water depletions. The permittee shall proceed with due diligence in acquiring offsetting water rights and placing the water to beneficial use.

5. Well no(s). LRG_______ shall be equipped with a totalizing meter(s) of a type and at a location approved by, and installed in a manner acceptable to the State Engineer. The permittee shall provide in writing, the make, model, serial number, date of installation, initial reading, units, and dates of recalibration of each meter, and any replacement meter used to measure the diversion of water. No water shall be diverted from any well unless equipped with a functional totalizing meter.

6. Records of the amount of water diverted from well no(s). LRG ______ shall be submitted, in writing to the State Engineer on or before the 10th day of the month for the preceding calendar month.

7. The permittee shall utilize the highest and best technology available and economically feasible for the intended use to ensure conservation of water to the maximum extent practical.

8. A well record for well no(s) shall be filed with the State Engineer within ten (10) days of drilling the well (s).

9. Proof of completion of Well(s) shall be filed with the State Engineer on or before (2 years).

10. Proof of Application of Water to Beneficial Use shall be filed with the State Engineer on or before (4 years).

11. Old well no(s). LRG_______ shall be plugged or capped in accordance with Article 4-14 of the Rules and Regulations Governing Drilling of Wells and Appropriation and Use of Ground Water in New Mexico. A written record of the plugging or capping shall be filed with the State Engineer within ten (10) days of completion of the plugging or capping.

# Maddock Model Predicted Surface Water Depletions

for Transfer of Groundwater Rights




A - Surface water depletion due to pumping well from which water rights will be transferred (move-from well)
B - Residual depletions due to turning off move-from well in year 40
C - Depletion due to the pumping from a new well to which rights were transferred (move-to well) in year 40
D - Total depletion due to the transfer (Curve B + Curve C)
E - Hypothetical depletion resulting from the continued use of the move-from well

FIGURE 3

EXHIBIT 34

## Figure 2: Location of the Mesilla Valley Administrative Area and High Impact Area




Prepared by Hydrology Bureau, 3/98

Legend

Lower Rio Grande Underground Water Basin

Mesilla Valley Administrative Area

High Impact Area (HIA)

EXHIBIT 34

N

Scale

5 0 5 10 Miles

# Figure 1: Lower Rio Grande Underground Water Basin




Prepared by Hydrology Bureau, 3/9

## Legend

- Lower Rio Grande Underground Water Basin
- Mesilla Valley Administrative Area
- High Impact Area (HIA)
- Rio Grande



EXHIBIT 34